**G. WARREN BLEEKER, CA Bar No. 210834**
wbleeker@lrrc.com
**DREW WILSON, CA Bar No. 283616**
dwilson@lrrc.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, CA  91203-1445**
**Telephone: (626) 795-9900**
**Facsimile: (626) 577-8800**

Attorneys for Plaintiff
EAST WEST BANK

**SCOTT G. LAWSON** (Bar No. 174671)
scottlawson@lawson2.com
**LISA G. LAWSON** (Bar No. 169503)
lisalawson@lawson2.com
**RYAN L. WERNER** (Bar No. 112181)
ryanwerner@lawson2.com
**LAWSON & LAWSON LLP**
**One Sansome Street, 35th Floor**
**San Francisco, CA  94104**
**Telephone: (415) 484-4345**
**Facsimile: (415) 480-6706**

Attorneys for Defendant
SUKEERT SHANKER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EAST WEST BANK, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SUKEERT SHANKER, an individual,<br><br>Defendant. | Case No. 3:20-cv-07364-WHO<br><br>**JOINT CASE MANAGEMENT STATEMENT AND [PROPOSED] ORDER**<br><br>**Case Management Conference:  January 19, 2021**<br>**Time:  2:00 p.m.**<br>**Courtroom:  2, 17th Floor**<br>**Phillip Burton Federal Building and United States Courthouse**<br><br>**Hon. William H. Orrick** |

The Parties to the above-entitled action submit this Joint Case Management Statement and [Proposed] Order pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.

**1. Jurisdiction and Service**

The Parties agree that the Court has subject matter jurisdiction over the complaint under the Defend Trade Secrets Act 18 U.S.C. § 1836. The Court has ancillary jurisdiction over the state law claims under 28 U.S.C. § 1367. The only defendant has been properly served in this matter.

**2. Facts**

   **a. Plaintiff:**

Chronology of the facts:

From December 22, 2017 until his voluntary termination date on April 30, 2019, Defendant was employed by Plaintiff (or "EWB") as a "Chief Operating Officer – Digital Banking." During his onboarding, on December 22, 2017, Defendant signed a "Confidential Information Notice" that required him to "keep confidential the confirmation information" (defined in the Confidential Information Notice) and use it only as required by his job for the benefit of EWB during or after his employment with the company. He was not allowed to remove or make copies of any EWB records, reports or documents without prior management approval. During his employment at EWB, Defendant had access to much of EWB's highly confidential and trade secret information. Shortly after he separated from EWB, Defendant signed a second "Confidential Information" agreement with similar requirements and responsibilities as the first.

After Defendant's departure, a dispute emerged regarding his salary and back pay. On June 11, 2019, Defendant signed a "Settlement Agreement and Release of Claims" wherein, in exchange for payment of money, he agreed to the following statement: "Employee agrees that Employee has turned over or will turn over to the Bank, all property belonging to the bank, including but not limited to documents concerning the Bank's customer and personnel matters,

any and all of the Bank's files, tapes, documents, keys, credit cards, telephone cards, books, software, passwords equipment, manuals, tools and written materials."

EWB understands that, after his departure, Defendant started one or more new companies which began development on a product that competed with EWB's Velo application, the very application that Defendant worked on during his tenure as an EWB employee.

EWB recently discovered that Defendant had also removed a number of highly confidential and trade secret documents from EWB without permission. Upon further investigation, it was determined that on March 13, 2019, the day Defendant's manager informed Defendant that he was going to be departing from the bank, Defendant sent to his personal email dozens of highly confidential and trade secret documents that belonged to EWB without permission.

  b. **Defendant:**

Defendant Sukeert Shanker was hired by EWB in 2017 to enhance EWB's digital banking offering to better serve its target customer base, which is primarily the Chinese diaspora. Shanker had previously been the head of Strategic Initiatives for Goldman Sachs, where he led the successful launch of Goldman Sachs's digital banking platform known as Marcus. Prior to that, for five years, he had been a principal at Booz & Company, rebuilding its Asian Financial Services practice, and for the five years previous to that was an Engagement Manager at McKinsey & Company.

During his employment with EWB, Shanker led the successful launch of Velo, EWB's new mobile application through which customers could access EWB's digital banking platform. Despite his exceptional performance and the commitment EWB had made at the time of Shanker's hiring, EWB refused to pay Shanker the bonus it had agreed to pay him, instead offering just 20% of the agreed-upon amount. This contract breach, Shanker understood, was orchestrated by EWB's then-Head of Consumer Banking, Catherine Zhou. Shanker believed that Zhou was conveying false information about him and his performance to EWB's CEO, Dominic Ng. In order to present to Ng a realistic view of his performance, his commitment to

the Velo project, and his value to the bank, on March 13, 2019, in the course of and consistent with his responsibilities for EWB, he forwarded to himself emails evidencing his central role in the success of the Velo program and the close relationships he had formed and respect he had earned within the digital-banking team at EWB. He intended to use these materials to convince Ng that, contrary to Zhou's misrepresentations, he was the individual principally responsible for the success of the Velo launch, had the support of the digital banking team, and deserved the full bonus promised him. On March 18, 2019, Shanker emailed Ng regarding his "whole hearted commitment to the bank," telling him that "my expertise is even more relevant at this stage," and asking Ng to ensure that he received "fair and professional treatment." Shortly thereafter, Shanker spoke with EWB's head of Human Resources, Gary Teo, and made a similar presentation. Ultimately, EWB paid Shanker the amount it owed him, but, on April 30, 2019, because of Zhou's insistence that she did not want to work with him, Shanker's employment with EWB was terminated.

After taking several months off to consider his employment options, on October 30, 2019, Shanker incorporated Aeldra, Inc., a start-up formed to develop a digital banking application directed to citizens of India. In developing this business and application, Shanker did not use any confidential or trade-secret material of EWB. In fact, the application was designed by an independent third-party vendor. The application does not contain, use or derive from any confidential or trade-secret information of EWB. More generally, other than the fact that, like dozens of other such products in the banking industry, Aeldra's offering facilitates remote digital banking, it bears little resemblance to Velo.

More generally, there is nothing unique or proprietary to EWB about the idea of a digital platform that permits users to open and manage bank accounts remotely. The information EWB here claims as its trade secrets was not proprietary intellectual capital and was easily available to people outside the bank. Indeed, dozens of banks have developed and employed such applications, all using the same third-party identity-verification tools that the industry has been using for at least the last ten years. Furthermore, EWB did not treat the information as

confidential and did not restrict access to it or take other steps that would reasonably be expected if the information were actually proprietary or confidential. Shanker has not used any EWB materials since his termination and has repeatedly offered to return to EWB any materials he possesses.

Contrary to EWB's assertion, Shanker's new business does not compete with EWB, as EWB's Velo product is targeted primarily to Chinese nationals (indeed, it confirms customer identity via a digital connection to the Chinese national identification database) and not to citizens of India, while Shanker's is directed to the Indian market. Notably, EWB has not identified any specific harm it has suffered as a result of Shanker's alleged retention of its information.

### 3. Legal Issues

#### a. Plaintiff:

At this time Plaintiff is not aware of any disputed points of law.

#### b. Defendant

At this time, Shanker is not aware of any disputed points of law.

### 4. Motions

#### a. Plaintiff:

Plaintiff does not currently have any pending motions before the Court. Plaintiff may file a motion for Summary Judgment on issues concerning Defendant's misappropriation of trade secrets, breach of fiduciary duty, unfair competition, breach of the implied covenant of good faith and fair dealing, and breach of contract.

#### b. Defendant:

Shanker does not currently have any pending motions before the Court. Shanker may file a Motion for Summary Judgment or Partial Summary Judgment on issues concerning EWB's claims for misappropriation of trade secrets, breach of fiduciary duty, unfair competition, breach of the implied covenant of good faith and fair dealing, and/or breach of contract.

/ / /

/ / /

5. **Amendment of Pleadings**

   a. **Plaintiff:**

   Plaintiff does not currently intend to amend the pleadings. However, Plaintiff does reserve the right to do so if new parties or causes of action are identified during the course of discovery.

   b. **Defendant:**

   Shanker does not currently intend to amend his answer.

6. **Evidence Preservation**

   The Parties hereby certify and confirm that they have reviewed the Guidelines Relating to the Discovery Electronically Stored Information and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding the reasonable and proportion steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7. *Disclosures*

   The parties exchanged their respective Initial Disclosures.

8. **Discovery**

   At this time, no discovery has been taken by either Party. Neither Party believes that modifications of the discovery rules are necessary at this time. The Parties are not aware of any conflicts concerning discovery at this time. The Parties anticipate filing a proposed protective order shortly. The Parties' proposed discovery plan is attached as Exhibit A.

   a. **Plaintiff:**

   The scope of discovery will concern:

   - Defendant's misappropriation of EWB's confidential information and/or trade secrets.
   - Defendant's breach of his fiduciary duty.
   - Defendant's breach of contract.
   - Defendant's use of EWB's confidential information and/or trade secrets for his own benefit.
   - How Defendant has benefited from his misappropriation of EWB's confidential information and/or trade secrets.

- The identity of third parties to whom Defendant has revealed EWB's confidential information and/or trade secrets.

    b. **Defendant:**

- The factual basis for EWB's claims.
- The extent to which EWB took reasonable steps to maintain the confidentiality of its claimed confidential information and trade secrets.
- The nature and development of EWB's Velo platform.
- The intended market for EWB's Velo platform.
- EWB's policies and practices with respect to employee's emailing documents to their personal email addresses.
- EWB's claimed damages, if any.
- EWB's efforts to mitigate its claimed damages, if any.

9. **Class Action**

This litigation is not a class action.

10. **Related Cases**

There are no related cases pending before this Court or another

11. **Relief**

    a. **Plaintiff:**

- Compensation for EWB's damages. EWB has not yet determined the full extent of the financial harm that it has suffered as a result of Defendants actions. A full calculation may require the completion of discovery and expert testimony.
- An injunction against Defendant using any information that he misappropriated from EWB for any purpose other than for the benefit of EWB.
- An order by the Court requiring Defendant to submit to a forensic evaluation of his files and documents to determine the full scope of Defendant's misappropriation and use of EWB's confidential and trade secret information.

- An order requiring Defendant to return the full amount of his payment from the Parties' Settlement Agreement as a result of Defendant's breach of the Settlement Agreement.
- An award of EWB's attorney's fees.
- Such other relief as the Court deems appropriate.

   b. **Defendant:**

- An award of Shanker's recoverable costs of suit.
- An award of Shanker's attorneys' fees.
- Such other relief as the Court deems appropriate.

12. **Settlement and ADR**

   a. **Plaintiff:**

Plaintiff believes that a settlement is possible. The Parties agree to appear before a mediator that is a member of the Northern District's mediation panel or such other private mediator the parties may agree upon, the timing of which is identified in Exhibit A.

Discovery as to the following topics may expedite settlement:

- The full scope of the confidential information and/or trade secrets that Defendant misappropriated from EWB, other than the confidential and/or trade secret documents that EWB has already discovered that Defendant misappropriated.
- The identity of third parties to whom Defendant has revealed EWB's confidential information and/or trade secrets.
- How Defendant has benefited from his misappropriation of EWB's confidential information and/or trade secrets.

   b. **Defendant:**

Shanker believes that a settlement is possible. The parties agree that, if they are unable otherwise to reach a resolution, they will appear before either a mediator who is a member of the Northern District's mediation panel or such other private mediator the parties may agree upon. Discovery as to the following subject may expedite settlement:

- The factual basis for EWB's claims.

- The extent to which EWB took reasonable steps to maintain the confidentiality of its claimed confidential information and trade secrets.
- The nature and development of EWB's Velo platform.
- The intended market for EWB's Velo platform.
- EWB's policies and practices with respect to employee's emailing documents to their personal email addresses.
- EWB's claimed damages, if any.
- EWB's efforts to mitigate its claimed damages, if any.

13. **Consent to Magistrate Judge For All Purposes**

____ YES   _X_ NO

14. **Other References**

The Parties do not believe that this case is appropriate for disposition by another method such as binding arbitration.

15. **Narrowing of Issues**

   a. **Plaintiff:**

Plaintiff believes that a number of issues may be narrowed by a motion for summary judgment, including Defendant's misappropriation of trade secrets, Defendant's breach of contract, Defendant's breach of fiduciary duty, Defendant's breach of the implied covenant of good faith and fair dealing, and Defendant's unfair competition. Plaintiff does not believe that bifurcation is necessary in this matter.

   b. **Defendant:**

Shanker believes that some issues may be narrowed by a Motion for Summary Judgment or Partial Summary Judgment, including EWB's claims for misappropriation of trade secrets, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, and/or unfair competition. Shanker does not currently believe that bifurcation is necessary in this matter.

### 16. Expedited Trial Procedure

The Parties do not believe that this is the type of case that is appropriate for Expedited Trial Procedure.

### 17. Scheduling

Please see the Parties' proposed list of dates which is attached as Exhibit A.

### 18. Trial

The Parties request that the case be tried before a jury. The Parties estimate that a trial will take 5-7 days.

### 19. Disclosure of Non-party Interested Entities or Persons

    a. **Plaintiff:**

Plaintiff has filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-5. East West Bancorp, Inc. Parent corporation of East West Bank is the only entity that Plaintiff is aware of that have either a financial interest in the subject matter in controversy or in a party to the proceeding or any other kind of interest that could be substantially affected by the outcome of the proceeding.

    b. **Defendant:**

Shanker certifies that, other than himself, no persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding

### 20. Professional Conduct

The attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 21. Other

N/A.

/ / /

| | |
|---|---|
| Dated:  January 12, 2021 | LEWIS ROCA ROTHGERBER CHRISTIE LLP |
| | By  /s/Drew Wilson |
| | Drew Wilson |
| | Attorneys for Plaintiff |
| | EAST WEST BANK |
| | |
| Dated:  January 12, 2021 | LAWSON & LAWSON LLP |
| | By  /s/Scott G. Lawson |
| | Scott G. Lawson |
| | Attorneys for Defendant |
| | SUKEERT SHANKER |

Pursuant to Civil L.R. 5-1(i)(3):
I attest that concurrence in the filing of this document
has been obtained from each of the other Signatories.

  /s/Drew Wilson

## CASE MANAGEMENT ORDER

This JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions.  In addition, the Court makes the further orders stated below:

**IT IS SO ORDERED.**

Dated: January ____, 2021

_____
WILLIAM H. ORRICK
United States District Judge

# Exhibit A

Case Name: East West Bank v. Sukeert Shanker          Case Number:   3:20          CV - 07364(WHO)

| PROPOSED DISCOVERY PLAN/SCHEDULING ORDER | | | | |
|---|---|---|---|---|
| | **DONE** | **NOT APPLICABLE** | **PLAINTIFF'S PROPOSED DATE** | **DEFENDANT'S PROPOSED DATE** |
| **B. SETTLEMENT PLAN** | | | | |
| 1. Plaintiff to make settlement demand | | | 9/17/21 | Same |
| 2. Defendant to make settlement offer | | | 10/01/21 | Same |
| 3. Referral to NDCA mediation program or private mediator (per party agreement) | | | 10/08/21 | Same |
| 4. Settlement Conference (proposed date) | | | 10/08/21 | Same |
| **C. PROPOSED DEADLINES** | | | | |
| 1. Motion to join new parties or amend pleadings | | | 4/14/21 | Same |
| 2. All fact discovery to be completed (including disclosure of medical records) | | | 8/27/21 | Same |
| 3. Joint status report certifying close of fact discovery and indicating whether expert discovery is needed | | | 9/03/21 | Same |
| 4. Expert discovery (only if needed)  *Check here if not applicable* ☐ | | | | |
| Plaintiff's expert proposed field(s) of expertise: | Damages | | | |
| Defendant's expert proposed field(s) of expertise: | Damages; digital banking industry, practices, markets and technology | | | |

113258055.1

|  | DONE | NOT APPLICABLE | PLAINTIFF'S PROPOSED DATE | DEFENDANT'S PROPOSED DATE |
|---|---|---|---|---|
| a. Affirmative expert reports due |  |  | 10/1/21 | Same |
| b. Rebuttal expert reports due |  |  | 11/12/21 | Same |
| c. Depositions of experts to be completed |  |  | 12/17/21 | Same |
| 5. Completion of ALL DISCOVERY (if different from C.3) |  |  | 1/7/21 | Same |
| 6. Joint status report certifying close of ALL DISCOVERY and indicating whether dispositive motion is anticipated |  |  | 1/7/22 | Same |
| 7. If any party seeks a **dispositive motion last date to file motion.** |  |  | 2/9/22 | Same |
| 8. Proposed Joint Pre-Trial Order due (if no dispositive motion filed) |  |  | 3/11/22 | Same |
| 9. Proposed Trial Dates |  |  | 5/2/22-5/9/22 | Same |
| **D. CONSENT TO MAGISTRATE JUDGE JURISDICTION** |  |  |  |  |
| 1. All parties consent to Magistrate Judge jurisdiction for dispositive motion? |  |  | ☐ Yes<br>☒ No | ☐ Yes<br>☒ No |
| 2. All parties consent to Magistrate Judge jurisdiction for trial? |  |  | ☐ Yes<br>☒ No | ☐ Yes<br>☒ No |

113258055.1