1  Ekwan E. Rhow - State Bar No. 174604
    erhow@birdmarella.com
2  Paul S. Chan - State Bar No. 183406
    pchan@birdmarella.com
3  Grace W. Kang - State Bar No. 271260
    gkang@birdmarella.com
4  Jonathan M. Jackson - State Bar No. 257554
    jjackson@birdmarella.com
5  Aharon B. Kaslow - State Bar No. 322769
    akaslow@birdmarella.com
6  BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
    DROOKS, LINCENBERG & RHOW, P.C.
7  1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
8  Telephone: (310) 201-2100
    Facsimile: (310) 201-2110
9
    Attorneys for Plaintiff East West Bank
10

11  **UNITED STATES DISTRICT COURT**

12  **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

13

| | |
|---|---|
| 14   EAST WEST BANK, a California corporation, | CASE NO. 3:20-cv-07364-WHO |
| 15               Plaintiff, | **PLAINTIFF EAST WEST BANK'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S PRELIMINARY INJUNCTION ORDER** |
| 16       vs. | |
| 17   SUKEERT SHANKER, an individual; | |
| 18   AELDRA FINANCIAL INC., a Delaware corporation; VENKAT | Date:     September 29, 2021 |
| 19   GOPALAKRISHNAN, an individual; BLUE RIDGE BANK, N.A., a Virginia corporation; | Time:     2:00 p.m. |
| 20   FS VECTOR LLC, a Delaware corporation; and DOES 1-7, | Court:   Courtroom 2, 17th Floor |
| 21               Defendants. | Assigned to Hon. William H. Orrick |
| 22 | |

23

24

25  **REDACTED VERSION OF DOCUMENT FILED PUBLICLY**

26

27

28

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

I.      INTRODUCTION .................................................................................1

II.     ARGUMENT .........................................................................................3

        A.      Legal Standard..........................................................................3

        B.      The Arbitration Provisions in the Employee Handbook Are Not Grounds
                For Reconsideration ..................................................................4

                1.      The Handbook's Arbitration Provisions Are Not Legally
                        Enforceable.....................................................................4

                2.      The Handbook's Arbitration Provisions Are Not A "New Material
                        Fact" and Defendants Have Waived Any Objections Based On
                        Them.................................................................................5

                3.      Reconsideration Is Not Warranted Under C.C.P. § 1281.8(b) ......................8

        C.      EWB's Patent Applications Are Not a Valid Ground for Reconsideration ...........10

                1.      The Law Is Clear That EWB Can Possess Trade Secrets Related To
                        Patented Technology ....................................................10

                2.      EWB's Patent Applications Do Not Disclose The Trade Secrets
                        Asserted In This Action.................................................12

                3.      The Timing of the Disclosure of EWB's Patent Applications Is
                        Irrelevant to the Preliminary Injunction Order...............................21

        D.      ████████████████████████████████████████████████

        E.      Defendants Are Violating the Court's Preliminary Injunction Order ....................23

III.    CONCLUSION ....................................................................................25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Adesa, Inc. v. Berkowitz*
    No. 14-CV-04022-VC, 2015 WL 11142869  (N.D. Cal. Jan. 21, 2015) ................................. 9

5

6

*Attia v. Google LLC*,
    983 F.3d 420 (9th Cir. 2020) ........................................................................................... 11

7

8

*Freaner v. Valle*,
    966 F. Supp. 2d 1068 (S.D. Cal. 2013) ............................................................................. 7

9

*Gonsalves v. Infosys Techs., Ltd.*,
    No. C 3:09-04112, 2010 WL 3118861 (N.D. Cal. Aug. 5, 2010) ........................................ 8

10

11

*Hebei Hengbo New Materials Tech. Co. v. Apple, Inc.*,
    344 F. Supp. 3d 1111 (N.D. Cal. 2018) ............................................................................. 7

12

*Kelly v. Pub. Util. Dist. No. 2*,
    552 F. App'x 663 (9th Cir. 2014) .................................................................................. 7, 8

13

14

*Kilopass Tech. Inc. v. Sidense Corp.*,
    No. C 10-02066 SI, 2012 WL 1901198 (N.D. Cal. May 24, 2012) ................................... 6, 8

15

16

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000) ............................................................................................. 4

17

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
    941 F.2d 970 (9th Cir. 1991) ........................................................................................... 11

18

19

*Life Spine, Inc. v. Aegis Spine, Inc.*,
    8 F.4th 531 (7th Cir. 2021) .............................................................................................. 11

20

21

*Love v. Permanente Med. Grp.*,
    No. C-12-05679 WHO (DMR), 2014 WL 721504 (N.D. Cal. Feb. 24, 2014) ........................ 8

22

*Martin v. Yasuda*,
    829 F.3d 1118 (9th Cir. 2016) ........................................................................................... 8

23

24

*Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*,
    No. 14-CV-03953-BLF, 2015 WL 1548833 (N.D. Cal. Apr. 7, 2015) .................................... 4

25

26

*Netlist, Inc. v. SMART Storage Sys., Inc.*,
    No. 13-CV-5962-YGR, 2014 WL 4380760 (N.D. Cal. Sept. 4, 2014) ................................. 10

27

*Newirth by & through Newirth v. Aegis Senior Communities, LLC*,
    931 F.3d 935 (9th Cir. 2019) ............................................................................................. 7

28

iii

*Parallel Synthesis Techs., Inc. v. DeRisi*,
    No. 5:13-CV-05968-PSG, 2014 WL 4748611 (N.D. Cal. Sept. 23, 2014)................ 10, 12, 13

*Rushing v. Williams-Sonoma, Inc.*,
    No. 16-CV-01421-WHO, 2020 WL 6787135 (N.D. Cal. Oct. 8, 2020) ...................................7

*Sch. Dist. No 1J, Multnomah County, Or. v. ACandS, Inc.*,
    5 F.3d 1255 (9th Cir. 1993)......................................................................................................4

*Sequoia Benefits & Ins. Servs., LLC v. Costantini*,
    No. C 20-08089 WHA, 2021 WL 3493734 (N.D. Cal. Aug. 9, 2021) ....................................7

*Sullivan v. SII Invs., Inc.*,
    No. 18-CV-00666-SI, 2018 WL 1367340 (N.D. Cal. Mar. 16, 2018) ......................................4

*Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc.*,
    609 F.3d 975 (9th Cir. 2010) . In the Preliminary Injunction Order, the Court .....................10

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009) ..............................................................................................11

*ViChip Corp. v. Tsu-Chang Lee*,
    No. C 04-2914 PJH, 2005 WL 8177966 (N.D. Cal. Mar. 7, 2005) ........................................11

*Vital State Canada, Ltd. v. DreamPak, LLC*,
    303 F. Supp. 2d 516 (D.N.J. 2003) .........................................................................................11

**State Cases**

*Ajamian v. CantorCO2e, L.P.*,
    203 Cal.App.4th 771 (2012).......................................................................................................5

*Cal. Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Est. Grp.*,
    193 Cal. App. 4th 849 (2011)....................................................................................................8

*Mitri v. Arnel Mgmt. Co.*,
    157 Cal. App. 4th 1164 (2007)..............................................................................................1, 5

*Romo v. Y-3 Holdings, Inc.*,
    87 Cal.App.4th 1153 (2001)......................................................................................................5

*Sparks v. Vista Del Mar Child & Fam. Servs.*,
    207 Cal. App. 4th 1511 (2012)..................................................................................................5

**Federal Statutes**

Fed. R. Civ. P. 54(b)...........................................................................................................................4

Local Rule 3-4(e) ...................................................................................................................... 11

Local Rule 7–9 ..................................................................................................................... passim

**State Statutes**

Cal. Code Civ. Proc. § 1281.8 ............................................................................................... 8, 9

1    I.       **<u>INTRODUCTION</u>**

2            Defendants' Motion for Reconsideration of the Court's Preliminary Injunction Order

3    ("Motion") is meritless.  Not only does Defendants' Motion fail to show a "material difference in

4    fact or law" or "new material facts" warranting reconsideration under Local Rule 7-9, Defendants'

5    Motion improperly raises new arguments that flatly contradict the arguments Defendants made in

6    the underlying motion papers that cannot now serve as the basis for reconsideration.  As detailed

7    below, the Court had jurisdiction to issue the Preliminary Injunction Order; injunctive relief was

8    warranted to restrain Defendants from using East West Bank's ("EWB") confidential, proprietary,

9    and trade secret information ("Confidential Information"); and recent discovery confirms

10   Defendants are violating the Preliminary Injunction Order.  Defendants' Motion should be denied

11   for multiple reasons:

12           *First*, Defendants' argument for reconsideration based on EWB's Employee Handbook

13   directly contradicts the argument asserted by Defendants themselves in the underlying motion

14   papers.  In Defendants' Opposition to EWB's Motion for Preliminary Injunction, Defendants

15   argued that EWB's Employee Handbook was ***not*** a binding agreement, and cited to *Mitri v. Arnel*

16   *Mgmt. Co.,* 157 Cal. App. 4th 1164, 1173 (2007) for the proposition that "acknowledgment of

17   employee handbook containing arbitration agreement did not constitute agreement to arbitrate

18   because 'conspicuously absent from the acknowledgment form is any reference to an agreement

19   by the employee to abide by the employee handbook.'"  (Dkt. 61-3 at 16:25-17:5.)  Defendants'

20   Motion now does an about-face and argues the direct opposite in a belated attempt to dissolve the

21   Preliminary Injunction Order.  But as explained in EWB's Opposition to Defendants' Motions to

22   Compel Arbitration (Dkt. 154), the arbitration provisions in the Employee Handbook do not

23   constitute an enforceable arbitration agreement and therefore cannot serve as the basis for

24   reconsideration.  By contrast, the "Binding Arbitration Agreement and Waiver of Jury Trial"

25   signed by Defendant Shanker on December 22, 2017—which is the only arbitration agreement

26   between EWB and Shanker (and studiously ignored in Defendants' Motion)—plainly authorizes

27   the current Preliminary Injunction Order.

28           The unenforceable arbitration provisions of the Employee Handbook also do not constitute

1    "newly discovered evidence," because Defendants have long known of these provisions and

2    waived any objections to the injunction proceedings based upon them.  It is undisputed that

3    EWB's Employee Handbook was produced in its entirety to Defendant Shanker on May 7, 2021—

4    **over one month prior to** the filing of Defendants' Opposition to EWB's Motion for Preliminary

5    Injunction on June 9, 2021.  But Defendant Shanker never objected to the injunction proceedings

6    based upon the arbitration provisions of the Employee Handbook; instead, Defendant Shanker

7    answered the complaint (without moving to compel arbitration) and proceeded to litigate EWB's

8    Motion for Preliminary Injunction on the merits.  Defendants therefore cannot demonstrate either

9    "newly discovered evidence" nor the "reasonable diligence" required under L.R. 7-9(b).

10        *Second,* Defendants' argument for reconsideration related to EWB's pending patent

11   application is based on the false premise that EWB's patent application number 16/914,363 and

12   provisional patent application number 62/914,363 (the "Patent Applications") disclose the trade

13   secrets claimed by EWB in this action.  They do not.  In this action, EWB has asserted 16 trade

14   secrets that fall into three broad categories relating to:  (i) the Velo software and platform; (ii)

15   EWB's proprietary anti-fraud and anti-money laundering systems and BSA/AML policies; and

16   (iii) EWB's strategic planning documents.  (Dkt. 50-4 at 5:13-16.)  By contrast, EWB's pending

17   patent application is entitled "Systems and Methods for Remotely Verifying Identity of Non-

18   Resident Aliens" and seeks patent protection for EWB's novel onboarding process for Non-

19   Resident Aliens ("NRAs") as embodied in EWB's onboarding flows depicted in the Patent

20   Applications.  Notably, **only 5 of the 16 trade secrets asserted in this action even relate to EWB's**

21   **NRA onboarding process**, and as to those trade secrets, the trade secret information claimed by

22   EWB in this litigation is **not** disclosed in EWB's Patent Applications.

23        *Third,* Defendants' August 27, 2021 document production in response to the Court's

24   August 6, 2021 Discovery Order (Dkt. 106) further proves that Defendants used EWB's

25   Confidential Information to develop the Aeldra platform — and **continue to use** EWB's

26   Confidential Information in violation of the Court's Preliminary Injunction Order.  Defendants'

27   recent document production includes numerous screen shots of the EWB documents stolen by

28   Defendant Shanker shortly prior to his termination, as well as Alpha Oak documents that were

created using EWB's Confidential Information and, subsequently, used by Defendants to develop the Aeldra platform.  Indeed, in an April 29, 2020 email, Defendant Gopalakrishnan (Aeldra's COO) candidly wrote to a potential investor:  "███████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████"[1]  (emphasis added.)  Defendants' document production also proves categorically that many of the Aeldra development documents were created months prior to Aeldra's engagement of any third-party vendors, thereby contradicting Defendants' primary defense argument that the Aeldra platform was independently created by third-party vendors (i2c, FS Vector, and Blue Ridge Bank).

In short, Defendants are seeking to dissolve the Preliminary Injunction Order because they are still violating it and wish to avoid its mandates.  That is not a valid basis for reconsideration. EWB respectfully requests that the Court deny Defendants' Motion for Reconsideration of the Court's Preliminary Injunction Order.

**II.**   **ARGUMENT**

    **A.**   **Legal Standard**

Under Local Rule 7-9, a party seeking leave to file a motion for reconsideration must specifically show "reasonable diligence in bringing the motion," and one of the following: (1) "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought" and "that in the exercise of reasonable diligence the party ... did not know such fact or law at the time of the interlocutory order," or (2) "[t]he emergence of new material facts or a change of law occurring after the time of such order," or (3) [a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." L.R. 7-9(b).  Local Rule 7-9 further prohibits a party seeking reconsideration from "repeat[ing] any oral or written argument … in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." L.R. 7-9(c).

_____

[1]   *See* Declaration of Grace W. Kang, dated September 22, 2021 ("Kang Decl."), Ex. 6.

1    Under Fed. R. Civ. P. 54(b), a district court may reconsider an order only if (1) it is

2   presented with newly discovered evidence, (2) it committed clear error or the initial decision was

3   manifestly unjust, or (3) if there is an intervening change in controlling law.  *See Sch. Dist. No 1J,*

4   *Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Sullivan v. SII Invs.,*

5   *Inc.*, No. 18-CV-00666-SI, 2018 WL 1367340, at *2 (N.D. Cal. Mar. 16, 2018) (denying

6   reconsideration, explaining that "a court should generally leave a previous decision undisturbed

7   absent a showing that it either represented clear error or would work a manifest injustice").

8   Reconsideration is an "'extraordinary remedy, to be used sparingly in the interests of finality and

9   conservation of judicial resources.'"  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890

10  (9th Cir. 2000) (internal citation omitted); *see also Monterey Bay Mil. Hous., LLC v. Pinnacle*

11  *Monterey LLC*, No. 14-CV-03953-BLF, 2015 WL 1548833, at *5 (N.D. Cal. Apr. 7, 2015)

12  (denying reconsideration of a preliminary injunction order, explaining that "a motion for

13  reconsideration should not be granted, absent highly unusual circumstances").

14      **B.    The Arbitration Provisions in the Employee Handbook Are Not Grounds For
            Reconsideration**

15

16          **1.    The Handbook's Arbitration Provisions Are Not Legally Enforceable**

17      Contrary to Defendants' contention, EWB is not "contractually prohibited from … seeking

18  provisional relief" in this Court.  (Dkt. 153 at 19:12-13.)  The "Binding Arbitration Agreement

19  and Waiver of Jury Trial" (hereinafter, "Arbitration Agreement") that Shanker acknowledged on

20  December 22, 2017—not the arbitration provisions in the Employee Handbook—is the only

21  binding and enforceable arbitration agreement between EWB and Shanker.  That Arbitration

22  Agreement expressly provides that "[n]either party is prohibited from making an application for

23  injunctive relief to a court of relevant jurisdiction."  (Dkt. 154-6 at 3, Declaration of Jill

24  Teitelbaum, dated September 2, 2021 ("Teitelbaum Decl."), Ex. A.)

25      The arbitration provisions in the Employee Handbook are not an enforceable arbitration

26  agreement under the Federal Arbitration Act or California law because they were never

27  acknowledged by Shanker.  (*See* Dkt. 154-7, Teitelbaum Decl., Ex. B.)  As explained in EWB's

28  Opposition to Defendants' Motions to Compel Arbitration, the "Acknowledgment of Receipt of

1 Employee Handbook" signed by Shanker does not specifically reference the arbitration provisions.

2 (Dkt. 154 at 6:9-24).  As such, the Employee Handbook's arbitration provisions are not legally

3 enforceable and cannot serve as the basis for reconsideration.  *See, e.g., Mitri*, 157 Cal.App.4th at

4 1173 (explaining that the acknowledgement "lacked any reference to an agreement by the

5 employee to abide by the employee handbook's arbitration agreement provision" and, as such,

6 "*[w]e cannot and will not* create a term of a contract between the parties that the evidence does

7 not show was ever agreed upon by the parties") (emphasis added)); *see also Sparks v. Vista Del*

8 *Mar Child & Fam. Servs.*, 207 Cal. App. 4th 1511, 1519 (2012) (invalidating arbitration provision

9 in Employee Handbook "because defendant failed to point out or call attention to the arbitration

10 requirement in the acknowledgment"); *Romo v. Y-3 Holdings, Inc.*, 87 Cal.App.4th 1153, 1159-60

11 (2001) (holding employee did not agree to binding arbitration because employee did not sign

12 section regarding arbitration in employee handbook); *Ajamian v. CantorCO2e, L.P.*, 203

13 Cal.App.4th 771, 805 (2012) ("[W]hile Ajamian did have the Handbook containing the company's

14 policy of arbitrating disputes, she never signed or agreed to the actual arbitration agreement in the

15 Handbook . . . .")).

16        Indeed, Defendants themselves argued the same in opposing EWB's Motion for

17 Preliminary Injunction, noting that the provisions in the Employee Handbook are "not binding

18 agreements," because "'any reference to an agreement by the employee to abide by the employee

19 handbook'" was "'conspicuously absent from the acknowledgment form.'" (Dkt. 61-2 at 16:25-

20 17:5 (quoting *Mitri* , 157 Cal.App.4th at 1173)).  Having lost that motion, Defendants now

21 improperly argue the exact opposite in seeking to dissolve the Preliminary Injunction.  (Dkt. 153

22 at 16:10-11)  Defendants provide no new facts or law warranting such a reversal.

23        **2.      The Handbook's Arbitration Provisions Are Not A "New Material
                     Fact" and Defendants Have Waived Any Objections Based On Them**

24

25        Reconsideration is also inappropriate because Defendants have shown neither the existence

26 of a "new material fact" as required under Local Rule 7-9(b)(2), nor their exercise of "reasonable

27 diligence" required for reconsideration under Local Rule 7-9(b)(1).  Local Rule 7-9(b)(2) "does

28 not apply where [the] 'new material fact' is merely a party's attempt to undo a strategic position

1    for which it has been penalized." *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2012

2    WL 1901198, at *4 (N.D. Cal. May 24, 2012) (denying reconsideration where the movant

3    attempted to adopt two separate, inconsistent interpretations of its patent). Yet, that is precisely

4    what Defendants seek to do here.

5         The Employee Handbook's unenforceable arbitration provisions do not constitute a "new

6    material fact" because Defendants have long been aware of them and have waived any objections

7    based upon them. It is undisputed that EWB produced both the Employee Handbook and the

8    Arbitration Agreement to Defendant Shanker's counsel on May 7, 2021, ***over one month before***

9    the filing of Defendants' Opposition to EWB's Motion for Preliminary Injunction on June 9, 2021.

10   (Kang Decl., ¶¶ 7-10.) Thereafter, Defendant Shanker never objected to this action nor the

11   injunction proceedings based upon the arbitration provisions of the Employee Handbook. Instead,

12   Defendant Shanker elected to litigate the action on the merits, answering EWB's First Amended

13   Complaint (without moving to compel arbitration) on May 27, 2021 (*see* Dkt. 54); serving

14   discovery requests; filing opposition papers to EWB's Motion for Preliminary Injunction on June

15   9, 2021 (*see* Dkt. 61)[2]; and submitting a joint statement regarding the sufficiency of Shanker's

16   discovery responses (*see* Dkt. No. 73)—all without once demanding arbitration. Defendants'

17   argument that Aeldra did not obtain a copy of EWB's Employee Handbook until after the

18   Preliminary Injunction hearing is unavailing. The Arbitration Agreement is between Shanker and

19   EWB and Aeldra could not have demanded arbitration from EWB until after Shanker made a

20   demand for arbitration.

21        Despite having EWB's Employee Handbook and the Arbitration Agreement in his

22   possession prior to the filing of EWB's Motion for Preliminary Injunction, Defendant Shanker did

23   not make a demand for arbitration until after the Court's Preliminary Injunction Order. By their

24   own conduct, Defendants have waived any objections based upon the arbitration provisions in the

25

26   _____

     [2]    There is no dispute that Defendants were aware of the arbitration provisions in the Employee
27   Handbook; they cited the acknowledgement page of the Employee Handbook—which appears on
     the next page after the arbitration provisions—in their Opposition to EWB's Motion for
28   Preliminary Injunction. (*See* Dkt. 64 at 17:5)

1    Employee Handbook.  *See Kelly v. Pub. Util. Dist. No. 2*, 552 F. App'x 663, 663–64 (9th Cir.

2    2014) (finding waiver where defendants "waited eleven months after the lawsuit was filed to

3    demand arbitration, actively litigating the case in district court," during which time "[t]he parties

4    conducted discovery and litigated … a preliminary injunction" motion); *Freaner v. Valle*, 966 F.

5    Supp. 2d 1068, 1086 (S.D. Cal. 2013) (finding that an answer that "failed to assert arbitration as

6    an affirmative defense" was inconsistent with the right to arbitrate); *cf. Rushing v. Williams-*

7    *Sonoma, Inc.*, No. 16-CV-01421-WHO, 2020 WL 6787135, at *3 (N.D. Cal. Oct. 8, 2020) (filing

8    answer and asserting arbitration as affirmative defense was consistent with the moving party's

9    right to arbitrate).

10         Furthermore, the fact that Defendants demanded arbitration only ***after*** receiving an adverse

11   judicial ruling makes their request for reconsideration based upon the Employee Handbook's

12   unenforceable arbitration provisions especially meritless.  The law is clear that a party waives its

13   arbitration rights where it delays in seeking arbitration until after it has already received an

14   adverse judicial ruling.  *See Newirth by & through Newirth v. Aegis Senior Communities, LLC*,

15   931 F.3d 935, 944 (9th Cir. 2019) (finding waiver of arbitration rights where defendants "did not

16   file a motion to compel arbitration ***until after receiving an adverse ruling***") (emphasis added);

17   *Kelly*, 552 F. App'x at 664 (finding waiver, explaining that "the untimely exercise of an arbitration

18   clause would allow [defendants] to evade future rulings of a federal judge which it fears will be

19   unfavorable"); *Sequoia Benefits & Ins. Servs., LLC v. Costantini*, No. C 20-08089 WHA, 2021

20   WL 3493734, at *7 (N.D. Cal. Aug. 9, 2021) (finding waiver, explaining that when "the former-

21   employee defendants saw which way the wind was blowing in the action, they reversed course and

22   now move to compel arbitration" for "the primary reason of forum shopping in an attempt to

23   evade a potentially adverse ruling from this Court"); *Hebei Hengbo New Materials Tech. Co. v.*

24   *Apple, Inc.*, 344 F. Supp. 3d 1111, 1125-26 (N.D. Cal. 2018) (finding waiver, explaining that "[t]o

25   let [defendant] … pursue a forum it clearly perceives as more favorable at this point would be

26   prejudicial") (citation omitted).

27         Defendants cannot show either the existence of a "new material fact" or that they have

28   exercised the "reasonable diligence" required for reconsideration under Local Rule 7-9(b)(1).  *See*

*Love v. Permanente Med. Grp.*, No. C-12-05679 WHO (DMR), 2014 WL 721504, at \*2 (N.D. Cal. Feb. 24, 2014) (denying reconsideration, explaining that "[t]he facts that Defendants seek to introduce now are facts that they could have put before the court in the exercise of reasonable diligence before the [court's] Order").  Defendants have long been in possession of the Employee Handbook, but elected to litigate this case on the merits, rather than seek arbitration.  Having now lost the Motion for Preliminary Injunction, Defendants belatedly ask this Court to dissolve the injunction based upon the same Employee Handbook that they themselves argued was "not binding" because they want a second bite at the apple in a different forum.  "This type of gamesmanship is not the purpose for which Civil Local Rule 7–9 allows for reconsideration." *Kilopass Tech. Inc.*, 2012 WL 1901198, at \*4.[3]

### 3.    Reconsideration Is Not Warranted Under C.C.P. § 1281.8(b)

The Preliminary Injunction Order was—and is—clearly authorized under the terms of the Arbitration Agreement, the only binding agreement to arbitrate between Shanker and EWB.  But even assuming *arguendo* that the arbitration provisions of the Employee Handbook were enforceable (and they are not), neither those provisions nor Section 1281.8(b) of the California Code of Civil Procedure ("C.C.P.") provide any basis to reconsider the Preliminary Injunction Order.

Under C.C.P. § 1281.8, the Court may grant a "provisional remedy" where "the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." C.C.P. § 1281.8(b).  The "ineffectual relief" requirement is "similar to irreparable harm" in the preliminary injunction context.  *Cal. Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Est. Grp.*, 193 Cal. App. 4th 849, 857, 122 Cal. Rptr. 3d 614, 620 (2011) (quoting Sen. Com. on

---

[3]    Moreover, if the Preliminary Injunction Order were dissolved, EWB would "have to relitigate a key legal issue on which the district court has ruled in [its] favor," effectively giving Defendants a "mulligan on a legal issue [they] chose to litigate in court and lost." *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir. 2016); *Kelly*, 552 F. App'x at  664 ("A late shift to an arbitrator would … require the appellees to relitigate matters decided by the district judge."); *Gonsalves v. Infosys Techs., Ltd.*, No. C 3:09-04112, 2010 WL 3118861, at \*4, n.3 (N.D. Cal. Aug. 5, 2010) (declining to allow defendants "to seek a redetermination from an arbitrator of issues on which [defendants] failed to prevail before this court").

1   Judiciary, analysis of Sen. Bill No. 1394 (1989–1990 Reg. Sess.) May 16, 1989, p. 2).  Here, the

2   Court has already determined that EWB established a likelihood of irreparable harm with respect

3   to its misappropriation of trade secret and breach of contract claims eliminating any doubt as to

4   whether EWB could meet the "ineffectual relief" requirement.  (*See* Dkt. 101 at 21:7-15) ("[T]here

5   is likelihood of irreparable harm in this case because absent a preliminary injunction, EWB will

6   likely suffer loss of market position, loss of current and prospective customers, and increased risk

7   of further disclosure of EWB's Confidential Information to third parties.")  Defendants' argument

8   that "provisional relief" under Section 1281.8 encompasses a TRO, but not a preliminary

9   injunction, lacks merit.  Section 1281.8 expressly defines "provisional remedy" to include

10  "preliminary injunctions and temporary restraining orders."  C.C.P. § 1281.8(a)(3).  Therefore,

11  even if the arbitration provisions of the Employee Handbook applied here, there would be no basis

12  to reconsider the Court's Preliminary Injunction Order.

13          Defendants' reliance on *Adesa, Inc. v. Berkowitz* to argue that EWB's "delay" in seeking

14  injunctive relief warrants reconsideration is wholly misplaced.  No. 14-CV-04022-VC, 2015 WL

15  11142869  (N.D. Cal. Jan. 21, 2015).  In *Adesa*, the plaintiff was aware that the defendants had

16  been misusing the company's confidential information when it filed its original complaint.  *Id.* at

17  *4-*5.  By contrast, here, EWB first obtained evidence of Defendants' use of EWB's Confidential

18  Information on April 5, 2021 when Shanker produced emails forwarding EWB documents to

19  Aeldra's COO (*see* Dkt. 51-5, ¶ 2).  Thereafter, EWB immediately attempted to negotiate a

20  stipulated preliminary injunction (*id.* ¶¶ 6-9), and filed its Motion for Preliminary Injunction just

21  two weeks after those negotiations failed (*see* Dkt. 51).[4]  There was no undue delay.  Defendants'

22  argument that EWB could have received effective provisional relief in arbitration is likewise

23  unpersuasive.  Although "parties ordinarily choose to arbitrate, *inter alia*, to … increase efficiency

24

_____

25  [4]    *Adesa* is inapplicable for the independent reason that the employment agreements containing
    arbitration provisions there "unquestionably appl[ied] to the dispute."  *Id.* at *1.  Unlike in *Adesa*,
26  and as discussed above, the arbitration provisions in the Employee Handbook on which
    Defendants' entire argument rests are unenforceable under well-settled law.  For the same reason,
27  Defendants' other cases cited in which the court compelled arbitration or declined to grant
    provisional relief are also inapposite.
28

1   and speed … arbitration's promised speed and efficiency frequently do not materialize in

2   practice."  *Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 980-81,

3   983 (9th Cir. 2010) (reversing denial of preliminary injunction, explaining that "the selection of

4   arbitrators and the constitution of the arbitral panel necessarily takes time" and "parties would be

5   without remedy when, as here, the delay associated with securing an arbitration panel's ruling on

6   interim relief could defeat any ultimate award").  In the Preliminary Injunction Order, the Court

7   itself explained that "***the delay here does not outweigh the other evidence in support of***

8   ***concluding that absent a preliminary injunction, EWB will likely be irreparably harmed***."  (Dkt.

9   101 at 21:5-7) (emphasis added.)  Defendants' Motion for Reconsideration provides no reason to

10  revisit this conclusion.

11          **C.**       **EWB's Patent Applications Are Not a Valid Ground for Reconsideration**

12                      **1.**       **The Law Is Clear That EWB Can Possess Trade Secrets Related To**

13                                **Patented Technology**

14          Defendants' argument that the publication of EWB's Patent Applications extinguished the

15  secrecy of EWB's trade secrets is wrong.  As detailed in the accompanying Declarations of

16  Rakesh Nambiar and Angela Mao, EWB's Patent Applications do *not* disclose any of the 16 trade

17  secrets in EWB's Identification of Trade Secrets.  *See* Declaration of Rakesh Nambiar, dated

18  September 22, 2021 ("Nambiar Decl."), ¶¶ 4-6 ; Declaration of Angela Mao, dated September 22,

19  2021 ("Mao Decl."), ¶¶ 4-32.  Courts have routinely held that a plaintiff is entitled to maintain

20  trade secrets related to novel technology that is also the subject of a patent application, so long as

21  the latter does not disclose the "specific details" of the claimed trade secrets.  "Where a patent

22  application does not contain specific details about the product seeking to be protected, that

23  information remains a trade secret and is not considered to be within the public domain."  *Parallel*

24  *Synthesis Techs., Inc. v. DeRisi*, No. 5:13-CV-05968-PSG, 2014 WL 4748611, at *10 (N.D. Cal.

25  Sept. 23, 2014) (rejecting defendants' argument that plaintiff's patent application disclosed

26  plaintiff's asserted trade secrets); *Netlist, Inc. v. SMART Storage Sys., Inc.*, No. 13-CV-5962-

27  YGR, 2014 WL 4380760, at *3 (N.D. Cal. Sept. 4, 2014) (sustaining trade secret misappropriation

28  claims related to patented technology, explaining that "[plaintiff] sufficiently alleges that the latter

trade secrets are distinct from the information disclosed in the patent and patent applications").

Courts have also routinely issued preliminary injunctions restraining the use and disclosure of trade secrets even where there was a related patent or patent application pending.  *See Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 975 (9th Cir. 1991) (affirming issuance of a preliminary injunction, explaining that "[a]lthough the shape of the blade and the slicing process" was disclosed in a patent application, "the specifications, materials and manufacturing process for making the blade were still trade secrets because they were not included in the patent applications"); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531 (7th Cir. 2021) (affirming issuance of preliminary injunction where information sought to be protected by trade secret had not been publicly disclosed in a related patent, explaining that a "company can maintain trade secret protection in the undisclosed aspects of a product, even if it has publicly disclosed other aspects of the same product").

Defendants' reliance upon *ViChip Corp. v. Tsu-Chang Lee*, No. C 04-2914 PJH, 2005 WL 8177966 (N.D. Cal. Mar. 7, 2005) is misguided.  *First*, *ViChip Corp. v. Tsu-Chang Lee* is a "NOT FOR CITATION" case that Defendants are prohibited from citing under Local Rule 3-4(e) ("Any order or opinion that is designated: 'NOT FOR CITATION,' pursuant to Civil L.R. 7-14 … may not be cited to this Court, either in written submissions or oral argument").  *Second*, *ViChip Corp. v. Tsu-Chang Lee* is inapposite, because in *ViChip Corp.*, it was undisputed that plaintiff's trade secret information was disclosed in the provisional patent application.  *See* 2005 WL 8177966, at *4 ("ViChip concedes that the once-proprietary information is now readily available to the public and thus has now irrevocably lost its trade secret status, but claims that it is still entitled to an injunction").  As explained in Section II.C.2 below, here the exact opposite is true.[5]

---

[5]   For the same reasons, the other cases cited by Defendants in their Motion are inapposite.  *See, e.g., Attia v. Google LLC*, 983 F.3d 420, 426 (9th Cir. 2020) (plaintiff "admits" its trade secrets were "disclosed in Google's published patent applications"); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) ("undisputed" that plaintiff's trade secret information was disclosed in patent); *Vital State Canada, Ltd. v. DreamPak, LLC*, 303 F. Supp. 2d 516, 524 (D.N.J. 2003) (plaintiff "did not refute" that patent applications disclosed its trade secrets).

1

2

        **2.**      **EWB's Patent Applications Do Not Disclose The Trade Secrets**
                 **Asserted In This Action**

3

        EWB's pending patent application seeks to patent the "Systems and Methods for Remotely

4

Verifying Identity of Non-Resident Aliens" as embodied in EWB's onboarding flows depicted in

5

the Patent Applications.  These onboarding flows are high-level diagrams that broadly describe the

6

"series of steps" involved in EWB's NRA customer onboarding process.  However, they do not

7

disclose the "specific details" of EWB's 16 trade secrets and thus, this trade secret information

8

remains secret.  *See Parallel Synthesis Techs., Inc.,* 2014 WL 4748611, at *10.  As explained in

9

the Motion for Preliminary Injunction, EWB has asserted 16 trade secrets that fall into three broad

10

categories relating to:  (i) the Velo software and platform; (ii) EWB's proprietary anti-fraud and

11

anti-money laundering systems and BSA/AML policies; and (iii) EWB's strategic planning

12

documents.  (Dkt. 50-4 at 5:13-16.)  Only 5 of these 16 trade secrets relate even generally to its

13

NRA customer onboarding process.  To be clear, EWB does not claim "onboarding," the

14

"onboarding flows," or the "series of steps" as trade secrets in this action.

15

        Defendants' Motion grossly mischaracterizes what is disclosed in EWB's Patent

16

Applications.  While Defendants make conclusory claims that EWB's Patent Applications disclose

17

"a product roadmap, onboarding methods, fraud and money laundering prevention systems,

18

KYC/AML policies, and decision trees," Defendants do not actually identify the information in

19

EWB's Patent Applications that purportedly disclose EWB's Velo Product Roadmap (Trade

20

Secret 1); Fraud Prevention Systems (Trade Secret 7); Compliance Policies (Trade Secret 10); or

21

Decision Trees (Trade Secret 8).  (Dkt. 152-5, at 15:2-3.)  Instead, Defendants attempt to conflate

22

the "onboarding flows," the "series of steps," and the block diagrams depicted in the Patent

23

Applications with EWB's 16 trade secrets claimed in the action.

24

        In their Motion, Defendants cite the following excerpts of EWB's provisional application

25

as allegedly disclosing EWB's trade secrets (without actually identifying which of EWB's trade

26

secrets are allegedly disclosed):

27

28

**Onboarding:**

This is high level onboarding flow which depicts the customer journey starting from entering email address & phone #, selection of product, validation of ID along with OCR extraction for populating the personal information, then verify address for proper address correction, and submit the application.  The process by which a customer establishes a relationship with the bank and provides all the necessary information for the bank to open an account.

There are a series of steps involved in onboarding a customer:

1. Email-id & phone #, which basically verifies using OTP transactions.
2. Shadow account creation in Token Generator.
3. Product selections [Checking, saving, pre-paid card, etc.].
4. Document Scan or Manual Entry of personal information.
5. Id Authentication.
6. Address verification.
7. Fraud Detection.
8. Personal ID validations
9. KBA Validation if transaction status from IDV is pending.
10. Name Screening / OFAC Check.
11. Perform PEP Check [Politically exposed person]
12. If all the above steps are successful, case status is "Approved".
    - Submission for account creation in Risk Management System (e.g., FIS),
    - Case created case management system with approved status.
13. If any of the steps unsuccessful, case is "Pending" or "Declined".
    - Case is created in case management system and reviewed manually.
    - Case can be approved after review.

**OnBoarding Flows**

**WEB UI NRA FLOW**

This flow is for Chinese customers, KYC for this flow includes ID verification, OFAC, PEP check. Once all this check is validated, account is created along with a case



(Dkt. 152-5, at 11) (citing Dkt. 152-1, LeGolvan Decl., Ex. A at 7-9.)

By their own descriptions in the provisional application, these are "***high level onboarding flows***."  (*Id.*) (emphasis added.)  While the first "flow" cited by Defendants in their Motion sets forth a "series of steps" for EWB's NRA customer onboarding, it does ***not*** disclose the "specific details" of those steps.  *See Parallel Synthesis Techs., Inc.,* 2014 WL 4748611, at *10.  For example, step 7 lists "Fraud Detection" as one of the "series of steps," but importantly, it does ***not*** disclose EWB's Fraud Prevention Systems (Trade Secret 7).  As explained in the Mao

PLAINTIFF EAST WEST BANK'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

1 Declaration, Trade Secret 7 consists of EWB's highly proprietary fraud and money laundering

2 prevention systems, which include EWB's "straight through processing" method and the specific

3 fraud rules and criteria using "Red/Yellow/Green" developed internally by EWB and its

4 consultants:



28 (Mao Decl., ¶¶ 6-9.)

1       EWB does not claim the fact that it performs "Fraud Detection" as its trade secret.  Rather,

2     EWB claims the highly proprietary fraud and money laundering prevention systems (depicted

3     above) that EBW developed with its consultants as Trade Secret 7 (Fraud Prevention Systems).

4     As a practical matter, EWB would never disclose its Fraud Prevention Systems in a patent

5     application, or anywhere else, because that would create significant security vulnerabilities and

6     allow for fraudsters and money launders to circumvent EWB's fraud and money laundering

7     prevention systems on the Velo platform.  (*Id.,* at ¶ 12.)

8       Similarly, the second "flow" cited by Defendants in their Motion depicts a very high level

9     KYC "flow" that lists "ID verification, OFAC, PEP check" as steps of the NRA onboarding

10    process.  (Dkt. 152-5, at 11) (citing Dkt. 152-1, LeGolvan Decl., Ex. A at 7-9.)  Yet, EWB has not

11    claimed its "onboarding flow" as a trade secret in this action.  Nor has EWB claimed as a trade

12    secret the fact that it performs ID verification, OFAC, and PEP checks (standard screening checks

13    performed by all banks) as part of its KYC process.  The only trade secret asserted by EWB that is

14    remotely related to this KYC flow is Trade Secret 9 (KYC Review Strategies).  Yet, EWB's Trade

15    Secret 9 (KYC Review Strategies) consist of EWB's competitive research and benchmark

16    analysis, vendor selection and integration, and analysis of customer due diligence questions related

17    to its customer verification methods.  (Mao Decl., ¶ 20.)  EWB's KYC Review Strategies are not

18    disclosed in this KYC flow or anywhere else in the Patent Applications.  (*Id.,* at ¶ 24.)

19      Defendants' Motion also cites an onboarding "workflow" from EWB's provisional

20    application that is—yet another—high level depiction of EWB's NRA onboarding flow.  (*See* Dkt.

21    152-5, at 12) (citing Dkt. 152-1, LeGolvan Decl., Ex. A at 29-36.)  While the workflow depicts a

22    high level overview of EWB's NRA onboarding process, it does ***not*** disclose the 16 trade secrets

23    claimed by EWB in this action.  (*Id.*)  In their Motion, Defendants do not identify any specific

24    trade secrets allegedly disclosed by this workflow because EWB has not claimed the onboarding

25    "workflow" as a trade secret in this action.  (*Id.*)

26      Defendants next cite to the following two equations in EWB's patent application and

27    assert, without any explanation, that they "disclos[e] a portion of the algorithm … claimed in

28    Trade Secret 4[.]"  (Dkt. 152-5, at 13.)  The cited equations, however, are universally known

statistical equations from third-party sources that may be used to calculate "data sample sizes" (equation 1), and "maximum error rate[s]" (equation 2), in connection with certain "threshold risk score[s]."  (Nambiar Decl., ¶¶ 22-25.)  *EWB has never claimed these equations as its trade secrets*, nor could it because they are publicly known statistical equations in the public domain:

[0093]   Equation 1:

$$n = \frac{LN(\alpha)}{LN(1 - p_{ex})}$$

[0094]   Where α corresponds to a statistical confidence interval, $p_{ex}$ corresponds to risk tolerance rate for the provider institution, and n corresponds to a number of observations (e.g., sample size).

[0095]   The maximum error rate (f(k, n, p)) may be determined using Equation 2.

[0096]   Equation 2:

$$f(k, n, p) = \binom{n}{k} p^k (1-p)^{n-k}$$

(Dkt. 152-5, at 13) (citing LeGolvan Decl., Ex. B, at 39.)

Equation 2 is a Binomial Distribution error rate calculation formula used to calculate maximum error rates and *appears on the Wikipedia page* for "Binomial distribution, Probability mass function"[6]:

## Definitions  [ edit ]

**Probability mass function**   [ edit ]

In general, if the random variable X follows the binomial distribution with parameters $n \in \mathbb{N}$ and $p \in [0,1]$, we write X ~ B(n, p). The probability of getting exactly k successes in n independent Bernoulli trials is given by the probability mass function:

$$f(k, n, p) = \Pr(k; n, p) = \Pr(X = k) = \binom{n}{k} p^k (1-p)^{n-k}$$

(Nambiar Decl., ¶ 24.)

While these two statistical equations are related to EWB's OFAC verification check, they do not disclose the algorithms claimed by EWB in Trade Secret 4.  (*Id.,* at 25.)  As the provisional application makes clear, "OFAC and PEP have [a] universal scoring system, *East West Bank ('EWB') has calculated 'sweet spots' for passing scores[.]*"  (LeGolvan Decl., Ex. A, at 22) (emphasis added.)  The Patent Applications do ***not*** disclose these highly proprietary "sweet spots" developed by EWB.

---

[6]   https://en.wikipedia.org/wiki/Binomial_distribution (last accessed Sept. 22, 2021).

1       In sum, Defendants' conclusory allegation that EWB's Patent Applications disclose "most"

2  of the trade secrets at issue in this action are simply false.  Notably absent from Defendants'

3  Motion is *any* substantive discussion of the representative trade secrets (Trade Secrets 1, 2, 7, 8,

4  11, 12) briefed by the parties in the underlying motion papers[7], argued by counsel at the Motion

5  for Preliminary Injunction hearing, and addressed in the Court's Preliminary Injunction Order:

6               a.      Velo Product Roadmap (Trade Secret 1).  EWB's Velo Product Roadmap is

7  a highly proprietary, internal organizational document with detailed information identifying all of

8  EWB's planned product features and milestones for the Velo platform.  (Nambiar Decl., ¶¶ 8-10;

9  *see also* Dkt. 50-11, ¶ 22(a).)  EWB's Velo Product Roadmap is not related to its NRA onboarding

10  process, and Defendants have not identified any aspects of EWB's Patent Applications where

11  EWB's Velo Product Roadmap is allegedly disclosed—apart from Defendants' conclusory claim

12  that EWB's patent application discloses "a product roadmap."  (Dkt. 152-5, at 15:2.)  EWB did

13  not and would not disclose its Velo Product Roadmap in its Patent Applications because it is not

14  directly related to EWB's NRA onboarding process and would allow competitors to easily

15  replicate and release a similar product and feature set.  (Nambiar Decl., ¶ 10.)

16       It is undisputed that Shanker forwarded a copy of the Velo Product Roadmap to Aeldra's

17  COO, Defendant Gopalakrishnan, on April 14, 2020.  (Dkt. 86, Shanker Decl., ¶ 56(c).)  On July

18  14, 2021, shortly before the hearing on EWB's Motion for Preliminary Injunction, Defendant

19  Aeldra produced a copy of the Aeldra Product Roadmap to EWB.  (Dkt. 101, at 8:8-17.)  The

20  Aeldra Product Roadmap was created on April 24, 2020 (according to its metadata) and includes a

21  verbatim copy of EWB's Velo Product Roadmap, as well as other trade secret information,

22  including EWB's Velo Value Proposition and Roadmaps (Trade Secret 5) and EWB's Velo

23  Product Features and Designs (Trade Secret 6), none of which is disclosed in EWB's patent

24  application.  (*See* Kang Decl., Ex. 7) (Aeldra Product Roadmap.)  Defendants unlawfully used

25  EWB's Velo Product Roadmap in the development of the Aeldra platform.

26               b.      Digital Banking Architecture Diagrams (Trade Secret 2).  EWB's Digital

27

28  [7]   (*See* Dkt. 50-4, at 5-7; Dkt. 61-3, at 13-16; Dkt. 74-4, at 9-11.)

1    Banking Architecture Diagrams provide an overview of the technical architecture of the Velo

2    platform, including specific components, layers, functions, and even the vendors retained to

3    perform certain functions.  (Nambiar Decl., ¶¶ 11-13; *see also* Dkt. 50-11, ¶ 22(b).)  EWB's

4    Digital Banking Architecture Diagram is not related to its NRA onboarding process, and

5    Defendants have not identified any aspects of EWB's Patent Applications where EWB's Digital

6    Banking Architecture Diagrams are allegedly disclosed.  EWB did not and would not disclose its

7    Digital Banking Architecture Diagrams in its patent application because they are not directly

8    related to EWB's NRA onboarding methods and it would allow competitors to bypass the time

9    and effort in the design, vendor, and technology selection of the competitors' own product

10   development process.  (Nambiar Decl., ¶ 13.)  It is undisputed that Shanker forwarded copies of

11   EWB's digital banking architecture diagrams to his personal email account on March 13, 2019.

12   (Dkt. 86, Shanker Decl., ¶ 23.)  Defendants unlawfully used EWB's Digital Banking Architecture

13   Diagrams in the development of the Aeldra platform.

14          c.    Fraud Prevention Systems (Trade Secret 7):  EWB's Fraud Prevention

15   Systems consist of the highly proprietary fraud and money laundering prevention systems, which

16   include EWB's "straight through processing" method and the specific fraud rules and criteria

17   using "Red/Yellow/Green" developed internally by EWB and its consultants.  (Mao Decl., ¶ 6; *see*

18   *also* Dkt. 51-2, ¶ 15(a).)  While EWB's Fraud Prevention Systems generally relate to EWB's

19   onboarding process, the trade secret information comprising its Fraud Prevention Systems are not

20   disclosed in the Patent Applications.  (Mao Decl., ¶ 11.)  It is undisputed that Defendant Shanker:

21   (i) forwarded copies of EWB's "Financial Crime Controls for Digital Bank" and "Digital Bank

22   Fraud Management Approach" to his personal email account on March 13, 2019; (ii) forwarded

23   copies of EWB's IBM Pinpoint and Azure Rules (which discloses specific, proprietary fraud rules

24   using "Red/Yellow/Green") to his personal email account on March 13, 2019; and (iii) retained a

25   hard copy of EWB's "Financial Crime Controls for Digital Bank" at his home following his

26   termination.  It is also undisputed that Defendant Shanker forwarded copies of EWB's "IBM

27   Pinpoint Decision Flow and Azure Logic" describing Velo's fraud rules using

28   "Red/Yellow/Green" and EWB's "Digital Bank Fraud Management Approach" to Rohit Mehtani

1   on August 24, 2019.  (Dkt. 86, Shanker Decl., ¶¶ 23, 56(a), 57.)

2          In addition, Defendant Shanker's August 27, 2021 document production included multiple

3   photos of the hard copy "Financial Crime Controls for Digital Bank," including EWB's

4   proprietary "straight through processing" key metrics, as well as multiple screen shots of EWB's

5   "IBM Pinpoint Decision Flow and Azure Logic," which includes detailed information concerning

6   EWB's fraud review process and "Red/Yellow/Green" fraud detection rules.  (*See* Kang Decl., ¶

7   20.)  Defendants unlawfully used EWB's Fraud Prevention Systems in the development of the

8   Aeldra platform.

9          d.   Decision Trees (Trade Secret 8):  EWB's Decision Trees determine whether

10  flags for fraudulent activity should stop a transaction immediately, allow the activity to continue,

11  or require manual review by EWB's fraud department.  (Mao Decl., ¶ 13; *see also* Dkt. 51-2, ¶

12  15(b).)  While EWB's Decision Trees generally relate to its onboarding process, the trade secret

13  information comprising its Decision Trees are not disclosed in the Patent Applications.  (Mao

14  Decl., ¶ 16.)  While certain figures in the patent application refer to an applicant "passing" or

15  "failing" certain verification checks, these figures do not disclose EWB's Decision Trees,

16  including the vendors EWB has selected to perform each verification check, the detailed rules for

17  each step, or the threshold criteria and scoring developed by EWB to determine whether an

18  applicant passes, fails, or requires further analysis and/or manual review.  (*Id.,* at ¶¶ 16-18.)  The

19  Patent Applications do not disclose EWB's Decision Trees.  (*Id.,* at ¶ 19.)  It is undisputed that

20  Defendant Shanker forwarded a copy of EWB's Decision Trees to his personal email account on

21  March 13, 2019.  (Dkt. 86, Shanker Decl., ¶ 23.)  EWB's Decision Trees would have been

22  extremely useful to Defendants in developing Aeldra's Red/Amber/Green decision-making

23  process, allowing Defendants to shortcut the research and development process by seeing what

24  EWB did at each step, deciding which EWB processes Defendants would incorporate, and thereby

25  saving Defendants significant time and financial resources in developing the Aeldra platform.

26  Defendants unlawfully used EWB's Decision Trees in the development of the Aeldra platform.

27          e.   Digital Banking Expense Forecasts (Trade Secret 11):  EWB's Digital

28  Banking Expense Forecasts detail EWB's vendors and pricing for projects and staffing to develop

1   and build aspects of the Velo platform.  (Nambiar Decl., ¶ 31; *see also* Dkt. 50-11, ¶ 23(a).)

2   EWB's Digital Banking Expense Forecasts are not related to its NRA onboarding process, and

3   Defendants have not identified any aspects of EWB's Patent Applications where EWB's Digital

4   Banking Expense Forecasts are allegedly disclosed.  (Nambiar Decl., ¶ 32.)  It is undisputed that

5   Defendant Shanker forwarded copies of EWB's Digital Banking Expense Forecasts to his personal

6   email accounts on March 13, 2019.  (Dkt. 86, Shanker Decl., ¶ 23.)  In addition, Defendant

7   Shanker's August 27, 2021 document production included screen shots of EWB's Digital Banking

8   Expense Forecasts that disclosed EWB's costs, budgets, and projected forecasts, including

9   forecasts for employee overhead and staffing.  (*See* Kang Decl., ¶ 20.)  Defendants unlawfully

10   used EWB's Digital Banking Expense Forecasts in the development of the Aeldra platform.

11         f.   <u>Target Customer Strategies (Trade Secret 12)</u>:  EWB's Target Customer

12   Strategies disclose EWB's internal strategies for targeting customer segments and its plans for

13   future product features and versions to attract new customers.  (Nambiar Decl., ¶ 33; *see also* Dkt.

14   50-11, ¶ 23(b).)  EWB's Target Customer Strategies are not related to its NRA onboarding

15   process, and Defendants have not identified any aspects of EWB's Patent Applications where

16   EWB's Target Customer Strategies are allegedly disclosed.  (Nambiar Decl., ¶ 35.)  It is

17   undisputed that Defendant Shanker forwarded copies of EWB's Target Customer Strategies to

18   Defendant Gopalakrishnan (Aeldra's COO) on August 14, 2019.  (Dkt. 86, Shanker Decl., ¶

19   56(d).)  In addition, Defendants' August 27, 2021 document productions included screen shots of

20   EWB's target customer strategies.  (*See* Kang Decl., ¶ 20.)  Defendants unlawfully used EWB's

21   Target Customer Strategies in the development of the Aeldra platform.

22         The Court's Preliminary Injunction Order, specifically, examined Trade Secrets 1, 2, 7, 8,

23   11, and 12 and concluded that EWB had adequately identified its trade secrets and was likely to

24   "succeed on the merits of its misappropriation of trade secrets claim."  (*See* Dkt. 101, at 14:14-

25   19:2.)  EWB's Patent Applications do not change the merits of the Court's findings with respect to

26   EWB's Motion for Preliminary Injunction.  Defendants' Motion has not proven "new material

27   facts" warranting reconsideration.

28

**3.    The Timing of the Disclosure of EWB's Patent Applications Is Irrelevant to the Preliminary Injunction Order**

Finally, Defendants' claims of impropriety relating to the disclosure of EWB's Patent Applications are baseless.  As the Court noted at the July 14, 2021 hearing, "***we're at the beginning of this case***."  (Kang Decl., Ex. 2 at 18:24-25) (emphasis added.)  When EWB filed its Motion for Preliminary Injunction, discovery had only recently commenced.  (Kang Decl., ¶¶ 3-9.)  At the time of the July 14, 2021 hearing, Defendants themselves had produced no discovery relating to the development of the Aeldra platform.  (*Id.,* at ¶ 11.)  Defendants' argument that EWB should have produced discovery relating to its Patent Applications prior to filing its Motion for Preliminary Injunction is, therefore, baseless.  EWB filed its Motion for Preliminary Injunction shortly after Defendant Shanker made his first document production, which included emails from Shanker forwarding EWB's documents to Shanker's business partners, Defendant Gopalakrishnan and Rohit Mehtani.  (*Id.,* at ¶ 5.)

EWB's Patent Applications are irrelevant to EWB's Motion for Preliminary Injunction, because EWB's claim for misappropriation of trade secrets is based upon the 16 trade secrets asserted by EWB in this action, none of which are disclosed in EWB's Patent Applications. Shortly after the Court's issuance of the Preliminary Injunction Order, the action (including discovery) was stayed pending resolution of Defendants' Motions to Compel Arbitration.  (*Id.,* at ¶ 19.)  EWB did not intentionally withhold any discovery relating to its Patent Applications.

Furthermore, Defendants' Motion acknowledges that Defendants discovered EWB's Patent Applications while conducting a prior art search.  (Dkt. 153-1, ¶ 3) ("Before the Court granted the temporary stay … Defendants began its expert investigation and related prior art search regarding EWB's alleged trade secrets."  In fact, EWB's patent application was publicly available as of ***April 15, 2021*** and Defendants' opposition to EWB's Motion for Preliminary Injunction was not filed until ***June 9, 2021***.  While EWB strongly disagrees with Defendants' suggestion that its Patent Applications are relevant to EWB's Motion for Preliminary Injunction, Defendants, by their own admission, could have conducted their own prior art search of the public records before the filing of their opposition papers on June 9, 2021.  Therefore, the existence of EWB's Patent

21

PLAINTIFF EAST WEST BANK'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

1   Applications is not a "new material fact" warranting reconsideration under L.R. 7-9.

2           **D.**   ████████████████████████████████

3

4           Defendants' Motion improperly argues that reconsideration is warranted because ████

5   ███████████████████████████████████   (Dkt. 152-7, Shanker Decl., ¶¶ 2-3.)

6   This is not a basis for reconsideration under L.R. 7-9.  At the July 14, 2021 hearing, Defendants'

7   counsel represented to the Court that Defendants did not oppose entry of a preliminary injunction;

8   rather, they only expressed concern regarding the scope of a preliminary injunction order:

9           THE COURT:  All right.  And so if you were prohibited from using any of the
            confidential information, alleged trade secrets that wouldn't – are you telling me
10          that wouldn't impact your company at all because you're not using them?

11          AELDRA's COUNSEL:  Yes …. And *so if the injunction is simply, 'Do not use*
            *East West Bank materials,' and that really is it, we're, quite frankly, fine with*
12          *that*.

13   (Kang Decl., Ex. 2, at 8:11-24 ) (emphasis added.)

14          THE COURT:   And you don't – and you believe that hasn't been using or
15          possessing the – any trade secrets of East West Bank, so you would be happy to
            stipulate to an injunction that he not do that.
16
            SHANKER'S COUNSEL:  Well, but what – the answer to that is *partially, yes*…
17
18   (*Id.*, at 13:18-23) (emphasis added.)

19          The Preliminary Injunction Order confirms that "***Defendants assert that the preliminary***

20   ***injunction will not harm them***."  (Dkt. 101, at 24:2) (emphasis added.)  The Court expressly

21   provided Defendants seven days to submit a declaration attesting to any business disruption

22   caused by the Preliminary Injunction Order.  (*Id.*, at 26:10-17.)  Yet, Defendants declined to

23   submit any such declaration.  (Kang Decl., ¶¶ 12-13.)

24          Defendants' newly-alleged ██████████████████████ is likely

25   attributable to the fact that Defendants unlawfully used EWB's Confidential Information to

26   develop the Aeldra platform.  Defendants' belated request for relief ██████████████ is

27   particularly inappropriate given that Defendants clearly disclosed EWB's Confidential

28   Information to potential investors during their first round of investor funding:



(*See* Kang Decl., Exs. 6, 8, 9) (emphasis added.)

**E.   Defendants Are Violating the Court's Preliminary Injunction Order**

Recently-produced discovery confirms Defendants are seeking to dissolve the Preliminary Injunction Order because Defendants know they have violated its terms and continue to do so. Defendants' August 27, 2021 document production included ***additional documents containing EWB's Confidential Information*** that were not previously returned to EWB, including but not limited to, screenshots of EWB's "Financial Crime Controls for Digital Bank" which sets forth EWB's "straight through processing" key metrics (Trade Secrets 7, 10); screenshots of EWB's fraud rules using "Red/Yellow/Green" (Trade Secret 7); screenshots of EWB's Digital Banking Expense Forecasts (Trade Secret 11); and screenshots of EWB's Target Customer Strategy documents (Trade Secret 12).  (Kang Decl., ¶ 20.)

Many of these documents conclusively prove that Defendants used EWB's Confidential Information after Shanker was terminated from EWB.  For example, the screen shot of EWB's "IBM Pinpoint Decision Flow and Azure Logic" describing Velo's fraud rules using "Red/Yellow/Green" displays in the bottom right corner the date and time when the screen shot was taken – ***May 8, 2019*** at 3:46 p.m.  (*See* Kang Decl., Ex. 10.)  On August 24, 2019, Shanker forwarded these screenshots of EWB's fraud rules to Rohit Mehtani, who was working with Shanker on his fintech startup Alpha Oak.  (Dkt. 86, Shanker Decl., ¶ 56(a).)

1    Furthermore, Defendants' August 27, 2021 document production directly contradicts many

2 of the arguments made by Defendants in their Opposition to EWB's Motion to Preliminary

3 Injunction.  For example, in their opposition papers, Defendants argued that the Aeldra platform

4 was independently created by third-party vendors (i2c, FS Vector, and Blue Ridge Bank) and

5 therefore, Defendants could not have used EWB's Confidential Information in the development of

6 the Aeldra platform.  At the hearing, Aeldra's counsel similarly argued:  "And certainly, the

7 Aeldra platform was created, as well as its policies and procedures which sort of create the key

8 aspects of East West Bank's trade secret information, *all of that was created by third-party*

9 *vendors* working with Aeldra; and that's your i2c's, your FS Vectors, and your Blue Ridge

10 Banks…"  (Kang Decl. Ex. 2, at 7:22-8:2) (emphasis added.)

11    However, Defendants' August 27, 2021 document production proves categorically that

12 Aeldra development documents were created many months prior to Aeldra's engagement of any

13 third-party vendors.  It is undisputed that Aeldra was incorporated on October 29, 2019.  *One*

14 *month later*, Defendants had an Aeldra development document titled "

PLAINTIFF EAST WEST BANK'S OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

(Kang Decl., Ex. 11.)

In their opposition to EWB's Motion for Preliminary Injunction, Defendants argued that Aeldra's Red/Amber/Green decisioning was developed by FS Vector.  (*See* Dkt. 61-2, at 8:5-15.) Yet, Aeldra did not retain FS Vector until February 5, 2020 – ***three months later***.  (Dkt. 86, Shanker Decl. ¶ 38 & Ex. E.)

Similarly, in a December 17, 2019 email, Defendant Shanker provided the following status update on the development of the Aeldra platform:



(Kang Decl., Ex. 12.)  These tasks, which were "done" by December 2019, obviously could not have been performed by vendors only retained months later.[8]  This is yet further evidence that Defendants used EWB's Confidential Information in connection with the Aeldra platform and that EWB will suffer irreparable harm if the Preliminary Injunction Order is dissolved.

## III.    CONCLUSION

For the foregoing reasons, EWB respectfully requests that the Court deny Defendants' Motion for Reconsideration of the Court's Preliminary Injunction Order.

---

[8]    FS Vector, who Defendants allege to have developed Aeldra's compliance policies and anti-fraud/AML systems, was retained by Aeldra on February 5, 2020.  Aeldra entered into an agreement with i2c (who Defendants allege to have designed the Aeldra platform) on May 27, 2020.  (Shanker Decl. ¶ 46 & Ex. B.)  Aeldra entered into an agreement with Blue Ridge Bank on August 13, 2020.  (Dkt. 86, Shanker Decl. ¶ 37 & Ex. G.)

1  DATED:  September 22, 2021          Ekwan E. Rhow
2                                      Paul S. Chan
                                       Grace W. Kang
3                                      Jonathan M. Jackson
                                       Aharon B. Kaslow
4                                      Bird, Marella, Boxer, Wolpert, Nessim,
                                       Drooks, Lincenberg & Rhow, P.C.
5

6                                 By:  _____/s/ Grace W. Kang_____
7                                           Grace W. Kang
                                      Attorneys for Plaintiff East West Bank
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28