YAR R. CHAIKOVSKY (SB#175421)
yarchaikovsky@paulhastings.com
DAVID M. FOX (SB# 330074)
davidfox@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Avenue
Palo Alto, California 94304
Telephone: 1(650) 320-1800
Facsimile: 1(650) 320-1900

JAMES PEARL (SB# 198481)
jamespearl@paulhastings.com
ANDY LEGOLVAN (SB# 292520)
andylegolvan@paulhastings.com
PAUL HASTINGS LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: 1(310) 620-5700
Facsimile: 1(310) 620-5899

Attorneys for Defendants
SUKEERT SHANKER and
AELDRA FINANCIAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EAST WEST BANK,<br><br>Plaintiff,<br><br>vs.<br><br>SUKEERT SHANKER, et al.,<br><br>Defendants. | CASE NO. 3:20-cv-07364-WHO<br><br>**DEFENDANTS SUKEERT SHANKER AND AELDRA FINANCIAL, INC.'S MOTION FOR ATTORNEYS' FEES**<br><br>Date:   December 15, 2021<br>Time:   2:00 p.m.<br>Ctrm:   2 (17th Floor)<br><br>Assigned to Hon. William H. Orrick |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 2

II.   FACTUAL AND PROCEDURAL BACKGROUND ....................................... 3

    A.   EWB Filed this Action in Violation Its Own Employee Handbook and in Violation of EWB's Newly Identified Arbitration Agreement .............................. 3

    B.   EWB Improperly Sought and Obtained the Preliminary Injunction in Violation the Arbitration Agreement and Withheld Highly Material Evidence ............................................................................... 4

    C.   Defendants' Good Faith Attempt to Meet and Confer with EWB Was Met with EWB's Bad Faith Legal Positions ................................. 5

    D.   Despite Defendants' Meet-and-Confer Efforts, EWB Proceeded to Oppose Dissolution of the Preliminary Injunction in Bad Faith ............ 8

    E.   The Court's Order Compelling Arbitration and Dissolving the Preliminary Injunction: Finding No Merit in Any of EWB's Arguments ............................... 10

    F.   Status of the Parties Meet-and-Confer Efforts ....................................... 13

III.  LEGAL STANDARD ................................................................................... 13

IV.   ARGUMENT ................................................................................................ 14

    A.   Attorneys' Fees Are Warranted under the EWB Employee Handbook Because Defendants Were Forced to Compel EWB to Participate in Arbitration ................................................................................. 14

    B.   Attorneys' Fees Are Warranted under the DTSA Because of EWB Opposed Termination of the Preliminary Injunction in Bad Faith ....................... 16

    C.   Counsel's Rates and Hours Are Reasonable Under the Lodestar Method ........... 21

    D.   Defendants Are Entitled to Fees for Bringing the Instant Motion ....................... 25

V.    CONCLUSION ............................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amazon.com, Inc. v. Personalweb Techs., LLC*,
   No. 5:18-cv-05619-BLF, Dkt. No. 132 (N.D. Cal. Apr. 19, 2021)..........................................25

*Banas v. Volcano Corp.*,
   47 F. Supp. 3d 957 (N.D. Cal. 2014) ...................................................................................22

*Bonner v. Redwood Mortg. Corp.*,
   No. 10-cv-00479-WHA, 2010 U.S. Dist. LEXIS 69625 (N.D. Cal. June 17,
   2010) ....................................................................................................................................15

*Gemini Aluminum Corp. v. Cal. Custom Shapes*,
   95 Cal. App. 4th 1249 (2002) ..............................................................................................21

*Monster Cable Prods. v. Feldman*,
   No. 12-cv-0250 RS, 2013 U.S. Dist. LEXIS 208011 (N.D. Cal. Feb. 27, 2013) ....................14

*In re Ncaa Ath. Grant-In-Aid Cap Antitrust Litig.*,
   No. 14-md-02541-CW (NC), 2019 U.S. Dist. LEXIS 237969 (N.D. Cal. Dec.
   6, 2019) ................................................................................................................................22

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   No. 16-cv-00236-WHO, 2020 U.S. Dist. LEXIS 241035 (N.D. Cal. Dec. 22,
   2020) ...............................................................................................................................22, 23

*RBC Bearings Inc. v. Caliber Aero, LLC*,
   No. 12-cv-1442 FMO, 2016 U.S. Dist. LEXIS 100521 (C.D. Cal. Aug. 1,
   2016) ....................................................................................................................................21

*Resolute Forest Prods. v. Greenpeace Int'l*,
   No. 17-cv-02824-JST, 2020 U.S. Dist. LEXIS 251914 (N.D. Cal. Apr. 22,
   2020) ....................................................................................................................................25

*Rosenfeld v. United States DOJ*,
   904 F. Supp. 2d 988 (N.D. Cal. 2012) .................................................................................25

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal. 2020)........................................................................................22

*Swarmify, Inc. v. Cloudflare, Inc.*,
   No. 17-cv-06957-WHA, 2018 U.S. Dist. LEXIS 168317 (N.D. Cal. Sept. 28,
   2018) ....................................................................................................................................16

*Taft v. Henley Enters.*,
   No. 15-cv-1658-JLS, 2016 U.S. Dist. LEXIS 193641 (C.D. Cal. Mar. 2, 2016) ....................15

*Vargas v. Berkeley Unified Sch. Dist.*,
    No. 16-cv-06634-WHO, 2017 U.S. Dist. LEXIS 199126 (N.D. Cal. Dec. 4,
    2017) ......................................................................................................................21, 22, 23

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
    556 F.3d 815 (9th Cir. 2009)....................................................................................22

**Statutes**

35 U.S.C. § 285.............................................................................................................25

Cal. Civil Code § 1717..................................................................................................15

Defense of Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D)...........................1, 2, 3, 13, 16

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 15, 2021 at 2:00 p.m., or as soon thereafter as this motion may be heard before the Honorable William H. Orrick, in Courtroom 2, 17th Floor of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Aeldra Financial, Inc. ("Aeldra") and Sukeert Shanker (collectively, "Defendants") will and hereby do move for recovery attorneys' fees from Plaintiff East West Bank ("EWB").

The Motion is made pursuant to Local Rule 54-5; the attorneys' fees provision in the EWB Employee Handbook, Dkt. No. 193, EWB0001597, § 11 (providing for recovery of attorneys' fees incurred "to compel the other party's participation in arbitration"); and the attorneys' fees provision of the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3)(D) (providing for recovery of attorneys' fees where "a motion to terminate an injunction is . . . opposed in bad faith").

The Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Andy LeGolvan, the Proposed Order, and any oral argument as may be presented at the hearing, all other papers, records, and pleadings on file in this action, and on such additional evidence and argument as the Court may allow prior to and during the hearing on this motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff East West Bank ("EWB") aggressively litigated this case for nearly a year without disclosing to the Court either its own binding arbitration agreement or its pending patent applications which compromised the validity of many of the alleged trade secrets for which EWB sought injunctive-relief protection.  This is textbook bad faith.  The price this bad faith conduct imposed on Mr. Shanker and Aeldra Financial, Inc. (collectively "Defendants") has been nothing short of devastating.  Now, the same law and the same written agreement EWB invoked to pursue its claims and course of conduct—the Defense of Trade Secrets Act and the EWB Employee Handbook—compel EWB to pay the attorneys' fees it wrongly forced Defendants to incur in response to EWB's bad faith conduct.

This conduct includes: (1) filing this action in federal court in the first instance and disregarding its obligations to arbitrate, imposed by the same Employee Handbook it forces each of its ~3,000 employees to sign as a condition of employment; (2) obtaining an injunction in clear violation of its own Employee Handbook and based on a knowingly incomplete record by withholding its own published patent applications that effectively disclosed a "how to" guide on much of the same technology and documents its declarants represented to this Court to be nonpublic; (3) baselessly resisting arbitration under the EWB Employee Handbook, requiring unnecessary motion practice to compel arbitration under the proper agreement; and (4) opposing, in bad faith, termination of the injunction even when it was clear the circumstances plainly warranted it and there was no good faith argument to assert otherwise.

Defendants' basis for attorneys' fees is two-fold.  First, the Employee Handbook provides: "should either party be forced to incur fees and/or costs to compel the other party's participation in arbitration as provided [under the Employee Handbook], the moving party shall be entitled to recover its fees, costs, and all other reasonable expenses of such action."  Dkt. No. 193, EWB0001597, § 11.  Due to EWB's baseless objections, Defendants were forced to incur fees to compel EWB's participation in arbitration pursuant to the EWB Employee Handbook.  Second, the Defense of Trade Secrets Act ("DTSA") provides for recovery of fees where "a motion to

terminate an injunction is . . . opposed in bad faith." 18 U.S.C. § 1836(b)(3)(D).  EWB's response to the Court's OSC re dissolution was made in bad faith and was filled with specious positions— many of which the Court described as "[n]onsense," "glaring," "weak," "misleading," "procedurally [im]proper," "surprising[]," "irrelevant," and "misguided."

In response to the OSC, EWB simply ignored the OSC standard, choosing instead to argue over the "reconsideration" factors the Court already found to be met.  In an attempt to avoid the arbitration agreement that precluded the injunctive relief EWB sought, EWB took the remarkably flawed and bad faith position that its own Employee Handbook, which it forces upon all of its employees as a condition of employment, cannot be enforced against it.  Finally, EWB failed entirely to justify its wrongful withholding of its own published patent applications from the parties and the Court during discovery and the preliminary injunction proceedings.  EWB's only response was that its published patent applications were irrelevant, despite also conceding that they relate to the Velo App NRA onboarding process, which is the very same subject matter of at least five of the 16 asserted trade secrets.  As the Court found in its Order compelling arbitration and dissolving the preliminary injunction, "had EWB disclosed the arbitration agreements and the published patent applications [the Court] would not have issued the preliminary injunction in its current form, if at all."  Dkt. No. 190 ("Order") at 1:28–2:2.

Therefore, in addition to fees entitlement pursuant to the Employee Handbook, EWB's bad faith conduct in failing to disclose the arbitration agreement to the Court; failing to disclose its pending patent application to the Court; raising baseless arguments regarding the enforceability of its own Employee Handbook; and refusing to dissolve the wrongfully obtained preliminary injunction justify an award of fees under the DTSA.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  EWB Filed this Action in Violation Its Own Employee Handbook and in Violation of EWB's Newly Identified Arbitration Agreement

Despite the existence of *two* signed arbitration agreements between EWB and Shanker, EWB filed this action in federal court in complete disregard of the arbitration obligations it forces upon its own employees as a condition of employment.  Order at 8:3–5.  In particular, as the

Court noted, "[i]nstead of seeking arbitration" of its claims against Defendants, EWB "filed a complaint in federal court, sought damages demanding a jury trial, represented to the court that the action was not appropriate for arbitration, sought discovery, and delayed for eleven months before [] arguing that the case should be subject to arbitration."  Order at 6:14–17.  EWB made essentially no attempt to justify its actions.  In particular, while EWB's *counsel* maintained that it was unaware of the arbitration agreements, EWB *itself* notably did not dispute prior knowledge of the arbitration agreements when it filed this action.  Order at 6:7–12, n.2.

### B.  EWB Improperly Sought and Obtained the Preliminary Injunction in Violation the Arbitration Agreement and Withheld Highly Material Evidence

Despite filing this action in violation of the same arbitration agreements EWB forces upon all of its employees, EWB then sought and obtained a preliminary injunction in violation of the arbitration agreement in the EWB Employee Handbook and based on a knowingly incomplete record by withholding from the Court and the parties its own published patent applications relating to the same subject matter claimed in several of its claimed trade secrets (facts, which, throughout these proceedings, were known only to EWB, its counsel, and its declarants).

*First*, the arbitration agreement in the Employee Handbook bars injunctive relief in court, but provides "a narrow, time-limited opportunity for emergency-based provisional relief where arbitrable relief would be ineffective."  Order at 11:4–7 (articulating the "rendered ineffectual" standard).  EWB's injunctive relief fell far short of this standard.  Order at 11:21–23.  Despite its clear relevance to the preliminary injunction proceedings, EWB withheld the Employee Handbook for seven months after filing this action, and delayed in producing it in discovery until mere days before filing for the preliminary injunction.  Order at 2:25–3:1; *see also* LeGolvan Decl., Ex. A, OSC Hr'g Tr. 5:23–25 ("You [] didn't say a thing about the arbitration [agreement], and [] the requirements that you had about bringing this to arbitration.") (Sept. 29, 2021).

*Second*, EWB withheld from Defendants and the Court the existence of its own published patent applications, which EWB conceded relate to the same subject matter as several of its asserted trade secrets—*i.e.*, the NRA onboarding process.  *See* Order at 12:18–20 ("But EWB did not disclose the published patent applications during the preliminary injunction briefing. It asserts

1   that it did not have to because the applications are irrelevant to its preliminary injunction motion.

2   But at the same time, it admits that five of the 16 asserted trade secrets relate to its non-resident

3   alien onboarding process, which is the subject of its patents." (citation omitted)).

4          As the Court noted in its Order, EWB's withholding of this relevant information was

5   "[s]urprising," "glaring," and "misleading" considering (1) the overlapping subject matter

6   between the patent applications and the asserted trade secrets; (2) all three of the named inventors

7   of the patents are current or former employees of EWB; (3) two of the named inventors, Rakesh

8   Nambiar and Angela Mao, were declarants in the preliminary injunction proceedings, and one of

9   the named inventors, Catherine Zhou, was Shanker's former boss who terminated his

10  employment; and (4) EWB's counsel of record in this action, Lewis Roca Rothgerber Christie

11  LLP, prosecuted the patent applications and represented EWB in this action until it withdrew

12  mere weeks before the patent applications would publish.  Order at 3:28–4:6; *see also* LeGolvan

13  Decl., Ex. A, Sept. 29, 2021 OSC Hr'g Tr. 3:3–6 ("[EWB] had an obligation to reference the

14  patent applications, which address five of the 16 trade secrets. The record before me during the

15  injunction proceeding was misleading. And it would have been different. Any injunction, if I had

16  entered one, would have been different than the broad one I entered at [EWB's] request."); *id*. at

17  5:16–22 ("[Y]our office had an obligation to [] inform me of those patents. And you had two

18  declarants who were responsible for the patent, and they didn't mention a thing about them. And

19  they're clearly at least related, and they would have been useful to have known about at the time

20  of the preliminary injunction.").

21         Upon discovery of these facts, counsel for Defendants attempted at length to meet and

22  confer with counsel for EWB to see if agreements could be reached to avoid unnecessary motion

23  practice.  What resulted from the various meet-and-confer efforts among counsel can only be

24  described as bad faith factual and legal positions articulated by EWB.

25  **C.  Defendants' Good Faith Attempt to Meet and Confer with EWB Was Met with
        EWB's Bad Faith Legal Positions**

26

27         Defendant Shanker promptly raised the arbitration agreement in the Employee Handbook

28  to EWB on August 9, 2021, upon discovering it in EWB's document productions.  Order at 3:7–

15.  The next day, EWB's counsel responded by claiming to be unaware of the agreement, *id.*, and asserted that it had to confer with its client (EWB) on the issue, Dkt. No. 115-5.  Thereafter, EWB embarked on a remarkable campaign wherein it (1) refused to provide its position as to the arbitration agreements for weeks and (2) refused to provide the Employee Handbook to Aeldra's counsel for over a week, but at the same time (3) continued to demand discovery from Defendants as if the parties did not just discover an arbitration agreement raising questions as to whether the case never should have been filed in this Court.[1]  To that end, Defendants made the reasonable request to EWB for the parties to stipulate to a temporary stay of the action until the arbitration question was resolved.  However, EWB refused and again demanded more discovery from Defendants.  *See* Dkt. No. 124-2 (email correspondence on Aug. 19, 2021).

Thereafter, on August 20, 2021, nearly two weeks after first raising the arbitration agreement, having heard no response from EWB regarding its position on the arbitration agreement, and at the same time facing burdensome discovery demands from EWB, Defendants filed their motions to compel arbitration.  *See* Dkt. Nos. 114-4, 116-4.  Defendants thereafter again implored EWB to articulate its position on the arbitration agreement and again asked EWB to agree to a temporary stay.  *See* Dkt. No. 124-2 (email correspondence on Aug. 23, 2021). Counsel for EWB responded that asking for a temporary stay was "entirely premature" given the purported ongoing need to confer with their client (EWB) about the arbitration agreement.  *Id*. (email correspondence on Aug. 24, 2021).  Defendants therefore advised they would file a motion for a temporary stay and ask that it be heard on shortened time; EWB indicated it would oppose both requests.  *Id*. (email correspondence on Aug. 24 and Aug. 25, 2021).

Defendants filed their motion for a temporary stay on August 24, 2021, Dkt. No. 120-4, and a motion to shorten time on August 25, 2021, Dkt. No. 124.  EWB opposed the motion to shorten time based on a variety of misplaced procedural objections, Dkt. No. 129, and the Court granted shortened briefing on the motion for a temporary stay, Dkt. No. 137.  Thereafter, EWB

---

[1] EWB finally produced the Employee Handbook to Defendant Aeldra's counsel on August 18, 2021, *id.*, after withholding it from Aeldra's counsel for months based on dubious "confidentiality" grounds, Dkt. No. 116-4 at 11:24–13:3; Dkt. No. 152-5 at 7:13–8:1.

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1   ultimately did not oppose the temporary stay, Dkt. No. 138, and so the Court issued an order

2   temporarily staying the action, Dkt. No. 141.

3          After several weeks had passed, EWB finally articulated its position regarding arbitration

4   on August 27, 2021.  Well, sort of.  What EWB did was respond to Defendants by identifying a

5   new, never-before-identified arbitration agreement between Shanker and EWB, and asserted that

6   it should govern instead of the arbitration agreement in the Employee Handbook.  Order at 3:13–

7   15.  In addition to demanding that Defendants accept this new arbitration agreement as governing

8   over the Employee Handbook, EWB also demanded that Defendants agree to the following terms:

9   (1) that the Court retain jurisdiction over the preliminary injunction; (2) that the Court's discovery

10  orders in this action govern discovery in the arbitration proceedings; and (3) that Defendants

11  waive their right to recover attorneys' fees regarding the pending arbitration motions.  Dkt. No.

12  153-13 (Aug. 27, 2021 email correspondence).

13         In response, Defendants asked EWB to articulate the basis for its demands, including

14  EWB's basis for asserting that the newly identified arbitration agreement should govern over the

15  Employee Handbook and EWB's basis for asserting the preliminary injunction was properly

16  obtained in view of the "rendered ineffectual" standard relating to provisional relief in the

17  Employee Handbook.  Dkt. No. 153-13 (Aug. 31, 2021 email correspondence).  EWB responded

18  by confusing the issues, inexplicably maintaining that "a preliminary injunction constitutes a

19  provisional remedy," *id*. (Aug. 31, 2021 email correspondence), but EWB otherwise ignored

20  entirely the topic of EWB's lack of diligence in seeking relief in arbitration—a prerequisite for

21  satisfying the "rendered ineffectual" standard.  In the same correspondence, EWB also introduced

22  the flawed argument that its own Employee Handbook is not an enforceable contract,

23  disregarding its own prior positions in this case and relying on inapposite case law finding

24  arbitration agreements unenforceable by employers against employees where the employer failed

25  to give the employees adequate notice of the arbitration agreement.  *Id*. (Aug. 31, 2021 email

26  correspondence).

27         Defendants attempted once again to dissuade EWB from proceeding with the specious

28  arguments it intended to present to this Court, including (1) pointing out that the case law EWB

relied on is plainly inapplicable to the present circumstances where an employer is attempting to evade arbitration obligations in its own employment agreements, (2) explaining that EWB is estopped from arguing against the enforceability of the Employee Handbook in view of its prior litigation positions, which included arguing successfully for specific enforcement of the Employee Handbook, and (3) again explaining that the propriety of the preliminary injunction must be viewed in the context of the "rendered ineffectual" standard.  Dkt. No. 153-13 (Sept. 1, 2021 email correspondence).

At this point in time, Defendants had also discovered EWB's published patent applications relating to the NRA onboarding process for the Velo App.  To that end, Defendants disclosed this troubling revelation to EWB, noted that the patent applications disclose much of the technology claimed in many of EWB's trade secrets, and asked that EWB stipulate to dissolution of the preliminary injunction without prejudice to EWB's ability to seek provisional relief in arbitration.  Dkt. No. 153-13 (Sept. 1, 2021 email correspondence).  EWB did not directly address either of these issues, but instead simply asserted, without support, that (1) the arbitration agreement in the Employee Handbook is not enforceable and (2) that the patent applications do not disclose any of EWB's asserted trade secrets.  *Id*. (Sept. 2, 2021 email correspondence).

### D.  Despite Defendants' Meet-and-Confer Efforts, EWB Proceeded to Oppose Dissolution of the Preliminary Injunction in Bad Faith

Due to EWB's several-week delay in articulating its position regarding arbitration, Defendants filed their motions to compel arbitration under the Employee Handbook without knowledge of EWB's yet-to-be-disclosed position that a newly identified arbitration agreement should govern.  Moreover, given Defendants substantial efforts to meet and confer with EWB's counsel to explain the clear error in its positions, Defendants had hoped EWB would reverse course and not present those flawed arguments to the Court.  However, on September 3, 2021, EWB filed its opposition brief to the arbitration motions, pursuing the very same flawed arguments articulated during the parties' meet and confer, and some new ones as well (*e.g.*, EWB's newly minted, but unsubstantiated, waiver argument).

In particular, EWB argued: (1) the arbitration motions were "premature and unnecessary"

1   purportedly because EWB made an offer to arbitrate under the arbitration agreement it preferred

2   (coupled with several other onerous demands, described above), Dkt. No. 154 at 1:4–5, 5:14–20;

3   (2) the arbitration agreement in the Employee Handbook is unenforceable purportedly because

4   the Employee Handbook is "lengthy and distributed to all employees" and, although all

5   employees are required to sign it as a condition of employment and agree to be bound by it, the

6   signature page does not specifically reference the arbitration agreement (relying on case law

7   exhibiting the exact opposite circumstances here, *i.e.*, where the employer cannot enforce

8   arbitration where the employee is prejudiced by lack of notice), *id*. at 6:9–24; and (3) that

9   Defendants purportedly intended to waive the right to compel arbitration by defending themselves

10   in this action (focusing on defensive litigation positions that plainly pre-dated Defendants'

11   knowledge of the arbitration agreement), *id*. 2:6–7, 3:2–4:5, 5 n.5, 10:13–14.

12          On the same day EWB filed its opposition brief to Defendants' arbitration motions,

13   Defendants filed their motion for leave to seek reconsideration of the preliminary injunction in

14   view of the prohibition of injunctive relief the arbitration agreement in the Employee Handbook

15   and the EWB patent applications, which published a month before EWB sought a preliminary

16   injunction.  Dkt. No. 152-5.  The Court found reconsideration was warranted based on "new

17   material facts," Dkt. No. 166 ("Because there are new material fact that have been brought to my

18   attention after the Order, Defendants' motion is GRANTED."), and the Court also ordered EWB

19   to show cause why the preliminary injunction should not be dissolved, *id*. ("I ORDER EWB TO

20   SHOW CAUSE why the preliminary injunction order should not be dissolved[.]").  The Court set

21   an OSC hearing on the same hearing for the arbitration motions.  *Id*.

22          Despite this clear OSC, whether through confusion or otherwise, EWB entirely ignored

23   that portion of the Court's order and filed a brief styled "opposition to Defendants motion for

24   reconsideration," Dkt. No. 167, and proceeded to argue why reconsideration was unwarranted

25   under Local Rule 7-9 despite the fact that the Court had already ordered it and separately issued

26   an OSC.  To that end, arguing in the context of the wrong standard of review, EWB asserted

27   many of the same baseless arguments it asserted in opposition to Defendants' arbitration motions.

28   In addition, EWB attempted to walk back many of its prior broad trade secret claims in view of

the published patent applications.  Dkt. No. 175-3 at 8:7–21:6.  Moreover, EWB attempted to justify its withholding of the patent applications by arguing they are irrelevant, despite acknowledging that at least five of the trade secrets relate to the same subject matter of the patent applications.  *Id*. at 22:20–24:9.  Defendants thereafter filed a responsive brief within five days, per the Court's OSC.

### E.   The Court's Order Compelling Arbitration and Dissolving the Preliminary Injunction: Finding No Merit in Any of EWB's Arguments

On the arbitration motion, the Court first identified the only issue in dispute: whether arbitration should be compelled under the Employee Handbook or instead under the newly-identified arbitration agreement EWB preferred.  *See* Order at 5:3–4.  The Court rejected each of the arguments EWB asserted much in the same way that Defendants had implored EWB not to assert them in the first instance.  First, as a threshold matter, the Court found that EWB's attempt to compel arbitration in its opposition brief was procedurally improper because affirmative relief can only be sought in a motion, and not in an opposition brief.  Order at 5:20–24.  Second, the Court found that EWB waived its right to arbitration under its preferred agreement because EWB knew of its purported arbitration rights, EWB acted inconsistently with that right by filing and aggressively litigating in federal court, and EWB's inconsistent actions prejudiced of Defendants.  Order at 5:24–7:1.

In finding the "knowledge" element met, the Court flatly rejected EWB's contradictory argument that it purportedly did not "believe" the arbitration agreements governed when it filed the action, but now purportedly "believes" one governs—though obviously nothing about EWB's claims or the "explicit[]" terms of the agreement had changed to justify EWB's purported change in position.  Order at 6:9–12 ("[EWB] does not explain why it believes now that arbitration applies when the claims or the agreements' terms have not changed. Both agreements explicitly apply to any claims for breach of contract and civil tort claims; it is unclear how EWB could have believed that the Agreement did not apply." (citations omitted)).

Third, the Court rejected EWB's argument that the arbitration agreement in the Employee Handbook is unenforceable.  Order at 7:2–9:22.  Specifically, the Court noted that the arbitration

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1    portion of the Employee Handbook "is found immediately before the signature page" of the

2    Employee Handbook, and EWB's argument regarding alleged "adequate notice" shows EWB

3    "misunderstands the law."  Order at 7:5–6.  In particular, the Court noted that the "cases on which

4    [EWB] relies hold that an employer cannot enforce an agreement where it failed to give adequate

5    notice about the arbitration; they do not conclude that an employer can evade an arbitration

6    agreement that it drafted, as EWB tries to do so here."  Order at 7:6–9.  The Court then rejected

7    what it described as "another weak attempt" against enforceability of the arbitration agreement in

8    the Employee Handbook: "Whether EWB has ever sought to compel arbitration under the

9    [Employee Handbook as to other employees] is irrelevant to the question of whether the

10   agreement is enforceable."  Order at 7:19–24.

11        The Court then applied black letter California law—what it described as "well-established

12   contract principles"—to confirm, without any serious dispute, that the arbitration agreement in

13   the Employee Handbook is an enforceable contract.  The Court noted California law confirms an

14   agreement to arbitrate can be express or implied, and relevant precedent confirms enforceability

15   of an arbitration agreement based on continued employment.  Order at 7:24–8:1.  The Court then

16   found the Employee Handbook "expressly provides that it 'is a condition of employment with the

17   Bank' and '[i]f Employee accepts or continues employment with the Bank, both Employee and

18   the Bank will be bound by its terms.'"  Order at 8:3–5.  The Court next found "[t]here is no

19   dispute that Shanker signed the Employee Handbook during the commencement of his

20   employment and that he continued his employment with EWB."  Order at 8:5–7.  Moreover,

21   citing "[w]ell-settled principles of contract law" and the "express[]" language of the Employee

22   Handbook, the Court found that the later-signed agreement "supersedes" the prior-signed

23   agreement EWB preferred.  Order at 8:7–14.  Finally, due to EWB's prior litigation positions,

24   including its successful specific enforcement of the Employee Handbook in the preliminary

25   injunction proceedings, the Court found EWB is both judicially and equitably estopped from

26   arguing the Employee Handbook is unenforceable.  Order at 8:15–9:11.

27        The Court quickly rejected EWB's half-baked argument that Defendants had waived its

28   right to compel arbitration, describing EWB's attempted argument as "[n]onsense."  Order at

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

9:12–22.  Of the three elements required for waiver—knowledge, inconsistent acts, and prejudice—EWB notably did not even attempt to argue it had suffered prejudice, and EWB failed to establish knowledge and inconsistent acts because the record showed that Defendants engaged in defensive litigation conduct *before* it knew of its right to arbitration, which Defendants only learned of after EWB recently produced the arbitration agreement.  Order at 9:16–21.

Having found that the arbitration agreement in the Employee Handbook governs the dispute—there being no serious argument to the contrary—the Court next turned to whether EWB showed cause why the arbitration agreement should not be dissolved.  Order at 10:1–10.  Given the OSC standard, the Court articulated the inquiry as follows: "(1) whether EWB has shown cause that the preliminary injunction would have issued in its current form had the parties and I been aware of the Second Arbitration Agreement; and (2) whether EWB has shown cause that the preliminary injunction would have issued in its current form had the parties and I been aware of EWB's patent applications."  *Id*. at 10:5–9.  The Court found that "EWB failed on both questions."  *Id*.  Notably, "[i]nstead of showing cause, EWB largely focused on opposing Defendants' motion for reconsideration even though I had already granted it."  *Id*. at 10:2–4.

The Court next addressed whether it would have issued the preliminary injunction had it been aware of the arbitration agreement in the Employee Handbook.  The Court concluded it would not have done so because the "rendered ineffectual" standard incorporated into the agreement "assumes all relief requests go to the arbitrator, but presents a narrow, time-limited opportunity for emergency-based provisional relief where arbitrable relief would be ineffective."  Order at 11:5–7.  The Court rejected EWB's attempt to satisfy this standard, particularly in view of the fact that EWB never even attempted to initiate arbitration:

> EWB delayed in the initiation of arbitration proceedings, despite knowing about the arbitration agreements, filed a complaint in federal court but did not seek provisional relief, and now seeks arbitration eleven months later. If EWB "had exercised even the most minimal diligence in initiating arbitration proceedings, its [] motion for a preliminary injunction could easily have been before the arbitrator by now. By definition, therefore, there is no need for a court to consider an application for provisional relief to preserve the status quo pending arbitration."

Order at 11:21–12:3.

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

Finally, while the Court generally found EWB failed to carry its OSC burden on "both questions," *id.* at 10:8–10—*i.e.*, whether the preliminary injunction would have issued in view of the arbitration agreement and the patent applications—the Court appropriately declined to invade the province of the arbitrator by entertaining EWB's additional arguments that certain details of the trade secrets were purportedly not disclosed in EWB's patent applications. *Id.* at 12:26–18 ("Because the arbitrator should have resolved the preliminary injunction question in the first place, the arbitrator should also resolve these merits questions in light of the published patent applications."). The Court, however, made clear that EWB's "irrelevance" argument simply had no merit given the admitted overlap in subject matter between several of the trade secrets and patent applications. *See* Order at 12:18–20; *see also* LeGolvan Decl., Ex. A, Sept. 29, 2021 OSC Hr'g Tr. 3:3–6, 5:16–22.

###    F.  Status of the Parties Meet-and-Confer Efforts

Before Paul Hastings began representing Defendant Shanker in addition to Defendant Aeldra, Defendant Shanker initially made a request for attorneys' fees in his motion to compel arbitration. *See* Dkt. No. 161-4 at 15, n.4. Given the multiple motions and the concurrent and overlapping OSC proceedings, and adhering to guidance from other district courts applying Local Rule 54-5 in similar circumstances, Defendants withdrew this request in favor of filing a separate, combined motion for attorneys' fees after the Court's ruling issues, consistent with the timing and meet-and-confer requirement of Local Rule 54-5. *Id.*

Following the Court's ruling on the arbitration and dissolution motions, the parties met and conferred by phone on October 25, 2021, and thereafter by follow-up email correspondence, in an attempt to resolve the instant dispute relating to attorneys' fees; however, the parties were unable to reach an agreement to avoid motion practice. LeGolvan Decl. ¶ 3.

## III.   LEGAL STANDARD

Defendants here request fees under both contract and statute: (1) under the EWB Employee Handbook, Dkt. No. 193, EWB0001597, § 11 (providing for recovery of costs and attorneys' fees incurred "to compel the other party's participation in arbitration"), and (2) under the DTSA, 18 U.S.C. § 1836(b)(3)(D) (providing for recovery of attorneys' fees where "a motion

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

to terminate an injunction is . . . opposed in bad faith").

This motion is appropriately brought in this Court and the instant fees dispute should be resolved in this Court.  Where an arbitration agreement provides for recovery of attorneys' fees for having to seek a court order compelling a party to arbitration, the ensuing motion for attorneys' fees should be brought to the district court that heard and ruled on the motion to compel arbitration.  *See, e.g.*, *Monster Cable Prods. v. Feldman*, No. 12-cv-0250 RS, 2013 U.S. Dist. LEXIS 208011, at *7 (N.D. Cal. Feb. 27, 2013) (finding it appropriate for district court to address attorneys' fees motion following order compelling arbitration) (citing *Acosta v. Kerrigan*, 150 Cal. App. 4th 1124, 1130 (2007) ("Given the trial court is responsible for deciding a petition to compel arbitration, the trial court also should be responsible for resolving a claim for attorney fees *made in connection with that petition to compel arbitration*." (emphasis in original)).

The same logic compels the conclusion that the Court should similarly resolve the question of whether fees are warranted under the DTSA in view of EWB's opposition to dissolution of the preliminary injunction.  This Court issued the preliminary injunction, this Court ordered reconsideration of the preliminary injunction, this Court issued an OSC why the preliminary injunction should not be dissolved, and this Court received briefing and heard argument from EWB on the OSC re dissolution—and therefore this Court should determine whether EWB made a bad faith opposition to termination of the preliminary injunction so as to warrant fees under the DTSA.

## IV.   **ARGUMENT**

### A. **Attorneys' Fees Are Warranted under the EWB Employee Handbook Because Defendants Were Forced to Compel EWB to Participate in Arbitration**

The arbitration agreement in the EWB Employee Handbook provides for recovery of attorneys' fees and costs incurred to compel the other party to participate in arbitration:

> Compelling Arbitration/Enforcing Award. Either party may bring an action in court to compel arbitration under this Agreement and to enforce an arbitration award. Unless prohibited by applicable law, **should either party be forced to incur fees and/or costs to compel the other party's participation in arbitration as provided herein, the moving party shall be entitled to recover its fees, costs, and all other reasonable expenses of such action**.

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1    Dkt. No. 193, EWB0001597, § 11 (emphasis added).

2        Defendant Shanker is a signatory to the Employee Handbook and therefore has the right to

3    seek attorneys' fees under this provision.  Likewise, as EWB does not dispute, while Defendant

4    Aeldra is not a signatory, it may invoke the arbitration agreement under the doctrine of equitable

5    estoppel to the same extent as Defendant Shanker.  *See* Order at 5:4–6 (noting EWB does not

6    "dispute that this case and all of [EWB's] asserted claims against Defendants are subject to

7    arbitration or that Aeldra, despite being a nonsignatory, can compel arbitration of the trade secret

8    and UCL claims against it"); *see also* Dkt. No. 116-4 at 15:3–22:8.[2]

9        To that end, given that Aeldra undisputedly has the right to invoke the arbitration

10   agreement in the Employee Handbook—effectively standing in Shanker's shoes (with Shanker)—

11   Aeldra may invoke the arbitration provisions, including the enforcement provisions and the

12   attorneys' fees provision, to the same extent as Shanker.  Moreover, in terms of mutuality under

13   Civil Code § 1717, had EWB successfully opposed Defendants' arbitration motions on the

14   grounds that Employee Handbook is unenforceable, EWB would have been entitled to fees

15   against Defendants under the same agreement.  *See Taft v. Henley Enters.*, No. 15-cv-1658-JLS

16   (JCGx), 2016 U.S. Dist. LEXIS 193641, at *19-20 (C.D. Cal. Mar. 2, 2016) (provision providing

17   recovery of attorneys' fees for compelling arbitration interpreted such that fees are recoverable

18   for successfully opposing arbitration on the grounds that the agreement is unenforceable).  Thus,

19   because EWB would similarly be entitled to fees if it prevailed, the principles of mutuality under

20   Civil Code § 1717 compel the conclusion that Aeldra can recover fees for having to compel

21   EWB's participation in arbitration under the Employee Handbook.  *See Bonner v. Redwood*

22   *Mortg. Corp.*, No. 10-cv-00479-WHA, 2010 U.S. Dist. LEXIS 69625, at *8–9 (N.D. Cal. June

23   17, 2010) (nonsignatory entitled to attorneys' fees under fees provision of a contract where

24   signatory would be entitled to fees if the signatory had prevailed).

25       Because of EWB's frivolous objections to the enforcement of its own Employee

26   Handbook, which EWB had previously enforced, Defendants were "forced to incur fees and[]

27   ───────────────

28   [2] Not only did EWB not dispute that Aeldra can compel arbitration, but EWB actually sought to
     compel Aeldra to arbitration under the later-signed arbitration agreement. *E.g.* Dkt. No. 154-8.

1    costs to compel the [EWB's] participation in arbitration as provided" under the Employee

2    Handbook.  Defendants are therefore "entitled to recover [their] fees, costs, and all other

3    reasonable expenses of such action."  Dkt. No. 193, EWB0001597, § 11.

4        **B.  Attorneys' Fees Are Warranted under the DTSA Because of EWB Opposed
             Termination of the Preliminary Injunction in Bad Faith**
5

6        The DTSA provides for recovery of attorneys' fees if a party successfully moves to

7    terminate an injunction and the opposing party opposes the motion in bad faith:

8            Remedies. In a civil action brought under [the DTSA], a court may— . . . if a
             claim of the misappropriation is made in bad faith, which may be established by
9            circumstantial evidence, **a motion to terminate an injunction is made or
             opposed in bad faith**, or the trade secret was willfully and maliciously
10           misappropriated, **award reasonable attorney's fees to the prevailing party**.

11   18 U.S.C. § 1836(b)(3)(D) (emphasis added).  In other words, fees are recoverable if (1) a party

12   moves for termination of an injunction, (2) the nonmoving party opposes the motion in bad faith,

13   and (3) the moving party prevails in terminating the injunction.  Bad faith under the DTSA is

14   shown by "objective speciousness" in the opposing party's position and "subjective bad faith" in

15   asserting or maintaining the position.  *See Swarmify, Inc. v. Cloudflare, Inc.*, No. 17-cv-06957-

16   WHA, 2018 U.S. Dist. LEXIS 168317, at *5 (N.D. Cal. Sept. 28, 2018).

17       EWB asserted many specious arguments in opposition to dissolution of the preliminary

18   injunction.  The Court rejected *all* of EWB's arguments, finding no merit in *any* of EWB's

19   positions, and describing many of them as "[n]onsense," "glaring," "weak," "procedurally

20   [im]proper," "surprising[]," "irrelevant," and "misguided."  What is worse, this is not a situation

21   where the party preparing to present specious arguments to the Court (EWB) was not first warned

22   that the arguments had no merit.  Rather, Defendants met and conferred at length on many of the

23   very same arguments EWB intended to, and ultimately did, present to the Court; and Defendants

24   implored EWB not assert them on the very same grounds that the Court ultimately rejected them.

25   The below list comprises the primary EWB positions that can only be described as evincing

26   "objective speciousness" and "subjective bad faith," in that they objectively lacked any legal or

27   factual merit and were asserted solely to confuse the parties and the Court, to obfuscate on the

28   relevant legal standards and burden of proof, and to achieve the desired end of continuing the

                                        16        DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1    wrongfully obtained injunctive relief that never should have been sought in this Court.

2        **EWB's attempt to evade the OSC standard.**  After the Court already granted

3    reconsideration of the preliminary injunction and issued an OSC why the preliminary injunction

4    should not be dissolved, EWB attempted to confuse the relevant standard by arguing whether

5    reconsideration was warranted (which the Court already included was warranted under the Local

6    Rules) and EWB entirely ignored the OSC standard clearly set by the Court.  Dkt. No. 166

7    (granting reconsideration based on "new material facts" and *separately* issuing an OSC: "I

8    ORDER EWB TO SHOW CAUSE why the preliminary injunction order should not be

9    dissolved"); Order at 10:1–4 ("Instead of showing cause, EWB largely focused on opposing

10   Defendants' motion for reconsideration even thought I had already granted it."); LeGolvan Decl.,

11   Ex. A, Sept. 29, 2021 OSC Hr'g Tr. 2:22–3:2 ("The plaintiff did not attempt to show cause why I

12   shouldn't dissolve it. That's what my most recent order was. It just argued about whether leave to

13   reconsider was appropriate, after I'd granted it. But I'm not sure that there was much that they

14   could argue, anyway.").  EWB's attempt at misrepresenting the proper standard of review was a

15   bad faith attempt at disregarding and flouting the Court's OSC.

16       **EWB's argument that its own Employee Handbook is unenforceable.**  EWB

17   speciously asserted that the arbitration agreement in the Employee Handbook, which EWB forces

18   all of its employees to sign as a "condition of employment," cannot be enforced *against EWB*,

19   relying on inapposite case law designed to protect *employees* from the prejudicial effects lack of

20   notice of arbitration obligations.  *See* Order at 7:6–9 ("EWB misunderstands the law. The cases

21   on which it relies hold that an employer cannot enforce an agreement where it failed to give

22   adequate notice about the arbitration; they do not conclude that an employer can evade an

23   arbitration agreement that it drafted, as EWB tries to do so here.").[3]

24       Moreover, in what the Court described a "weak" and "irrelevant" argument, the Court

25   rejected EWB's assertion that it had not sought to compel arbitration under the Employee

26   Handbook against other employees.  Order at 7:19–24.  Additionally, EWB's unenforceability

27   _____

28   [3] The Court generously described this as a "misunderstand[ing]," but the reality is that Defendants explained the plain error in EWB's reasoning before it made this specious argument to the Court.

1   position was plainly inconsistent with its prior position in the preliminary injunction proceedings

2   that Employee Handbook is an enforceable contract, which resulted in a finding that EWB was

3   estopped from now taking an unenforceability position.  Order at 8:15–9:11.  And, finally,

4   EWB's unenforceability argument blatantly disregarded black letter California law compelling

5   the conclusion that the Employee Handbook is enforceable based on the parties' express assent

6   (*i.e.*, Shanker's signature and language in the arbitration agreement stating it is "condition of

7   employment") and the parties' implied assent (*i.e.*, Shanker's continued employment and

8   language in the arbitration agreement stating, "If Employee accepts or continues employment

9   with the Bank, both Employee and the Bank will be bound by its terms"), *id*. at 7:24–8:7.  In sum,

10  EWB's unenforceability arguments were objectively specious.

11       **EWB's argument that Defendants waived arbitration.**  The Court rejected as

12  "nonsense" EWB's argument that Defendants waived their right to arbitration.  The Court

13  emphatically rejected waiver because (1) EWB made no attempt whatsoever to establish the

14  "prejudice" element to support a claim of waiver, and (2) the undisputed record showed

15  Defendants did not know of their right to compel arbitration, let alone act inconsistently with that

16  right, until they had reviewed EWB's Employee Handbook, which EWB produced mere days

17  before the preliminary injunction proceedings.  *See* Order at 9:12–22.

18       **EWB's attempt to enforce the earlier-signed arbitration in an opposition brief.**  EWB

19  improperly sought to enforce the newly identified arbitration agreement by way of an opposition

20  brief, which the Court found to be procedurally improper.  Order at 5:20–24.  EWB provided no

21  justification for this procedural impropriety.

22       **EWB's argument that the earlier-signed agreement can be enforced despite clear**

23  **facts showing EWB had waived its right to compel arbitration.**   Even putting aside the

24  procedural impropriety of seeking to compel arbitration by way of an opposition brief, EWB

25  attempted to enforce the newly identified arbitration agreement despite clear facts show that EWB

26  had waived its right to compel arbitration under any view of the facts and relevant standard.  In

27  particular, EWB clearly knew two arbitration agreements governed the matter and yet EWB

28  nevertheless filed the action in federal court, sought damages and a jury trial, and represented to

18

the Court that the case is not appropriate for arbitration, sought substantial discovery, and delayed eleven months before raising the newly identified arbitration agreement.  Order at 6:7–22.  EWB doubled down on this position by inconsistently claiming it purportedly did not "believe" the arbitration agreement governed when it filed the action, but eleven months later now purportedly "believes" it does, despite there being no change in the language of the agreement, no change in change in the nature of the claims, and no other possible facts that could warrant the purported change in "belief" EWB argued to the Court.  *See id*. at 6:7–12 ("[A]lthough EWB claims that it did not believe that the dispute was subject to arbitration, EWB does not contest that it knew the arbitration agreements existed. It does not explain why it believes now that arbitration applies when the claims or the agreements' terms have not changed. Both agreements explicitly apply to any claims for breach of contract and civil tort claims; it is unclear how EWB could have believed that the Agreement did not apply." (citations omitted)).

**EWB's argument that the earlier-signed agreement governs over the later-signed Employee Handbook.**  EWB simply did not respond to black letter case law confirming that the later-signed arbitration agreement (the Employee Handbook) governed over the earlier-signed agreement from a temporal standpoint, or that the express terms of the Employee Handbook confirm that it "supersedes" the earlier-signed agreement.  Order at 8:7–14.

**EWB's argument that injunction would be proper under the Employee Handbook.** The arbitration agreement in the Employee Handbook plainly prohibits injunctive relief except for "a narrow, time-limited opportunity for emergency-based provisional relief where arbitrable relief would be ineffective."  Order at 11:4–7.  The circumstances under which EWB sought injunctive relief fell far outside of the circumstances permitted under this standard.  In particular, EWB never initiated arbitration, failed to demonstrate diligence in initiating arbitration, and similarly failed to demonstrate diligence in seeking provisional relief.  Under the circumstances, and considering the relevant standard, the preliminary injunction EWB sought simply would not have been available in this Court.  *Id*. at 11:21–12:3 ("EWB delayed in the initiation of arbitration proceedings, despite knowing about the arbitration agreements, filed a complaint in federal court but did not seek provisional relief, and now seeks arbitration eleven months later. If EWB 'had

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1    exercised even the most minimal diligence in initiating arbitration proceedings, its [] motion for a

2    preliminary injunction could easily have been before the arbitrator by now. By definition,

3    therefore, there is no need for a court to consider an application for provisional relief to preserve

4    the status quo pending arbitration.'")  EWB's only response was a confusing attempt to

5    "conflate[] the 'irreparable harm' and 'rendered ineffectual' standards," *id*. at 10:25–11:7.

6         **EWB's argument that the patent applications were irrelevant to the preliminary**

7    **injunction proceedings.**  In response to the OSC, EWB maintained the specious argument that

8    the patent applications (published a month prior to EWB's filing of a preliminary injunction)

9    were irrelevant to the preliminary injunction proceedings, despite the fact that EWB also

10   conceded that the patent applications relate to the same subject matter as at least five of the trade

11   secrets in the preliminary injunction proceedings (*i.e.*, the NRA onboarding process).  Of course,

12   the Court rejected this argument, and found EWB's withholding of this relevant information was

13   "[s]urprising," "glaring," and "misleading" considering (1) the overlapping subject matter (NRA

14   onboard process); (2) the overlapping declarants and inventors (Nambiar and Mao); and (3) the

15   overlapping prosecution counsel and counsel of record.  *See id*. at 3:28–4:6; *id*. at 12:19–20 ("But

16   at the same time, [EWB] admits that five of the 16 asserted trade secrets relate to its non-resident

17   alien onboarding process, which is the subject of its patents."); *see also* LeGolvan Decl., Ex. A,

18   Sept. 29, 2021 OSC Hr'g Tr. 3:3–8 ("[EWB] had an obligation to reference the patent

19   applications, which address five of the 16 trade secrets. The record before me during the

20   injunction proceeding was misleading. And it would have been different. Any injunction, if I had

21   entered one, would have been different than the broad one I entered at [EWB's] request."); *id*. at

22   5:16–22 ("[Y]our office had an obligation to [] inform me of those patents. And you had two

23   declarants who were responsible for the patent, and they didn't mention a thing about them. And

24   they're clearly at least related, and they would have been useful to have known about at the time

25   of the preliminary injunction.").

26        Based on the forgoing, the reality is that EWB simply had no good faith basis to oppose

27   the termination of the injunction.  Given the new revelations, the only reasonable position for

28   EWB to take was to agree to stipulate to dissolution of the preliminary injunction without

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1    prejudice to seeking provisional relief in arbitration—which is precisely what Defendants offered

2    to EWB before resorting to the ensuing motion practice.  Instead of taking this reasonable off

3    ramp, EWB chose to proceed with objectively specious argument in opposition to the termination

4    of the preliminary injunction, consisting of the above-described "nonsense," inconsistent, and

5    otherwise fundamentally flawed arguments.

6         In other words, in view of the Employee Handbook's express terms and the publication of

7    EWB's patent applications a month prior, the basis for the preliminary injunction was

8    "objectively specious, if not frivolous, from its inception," *see Gemini Aluminum Corp. v. Cal.*

9    *Custom Shapes*, 95 Cal. App. 4th 1249, 1263 (2002), and as demonstrated from EWB's response

10   to the OSC, there was simply no good faith basis to oppose termination of the injunction.

11   Moreover, EWB's subjective bad faith is demonstrated by its decision to proceed with objectively

12   specious arguments even after Defendants thoroughly articulated the frivolity of doing so. *See*

13   *RBC Bearings Inc. v. Caliber Aero, LLC*, No. 12-cv-1442 FMO (PLAx), 2016 U.S. Dist. LEXIS

14   100521, at *23 (C.D. Cal. Aug. 1, 2016) ("Bad faith may be inferred where the specific

15   shortcomings of the case are identified by opposing counsel, and the decision is made to go

16   forward despite the inability to respond to the arguments raised.").  The Court should therefore

17   find that EWB opposed termination of the preliminary injunction in bad faith and award fees

18   pursuant to the DTSA.

19        **C.  Counsel's Rates and Hours Are Reasonable Under the Lodestar Method**

20        "District courts typically employ the 'lodestar method' to calculate an appropriate amount

21   of attorneys' fees," which requires the Court to "multiply 'the number of hours the prevailing

22   party reasonably expended on the litigation by a reasonable hourly rate.'" *Vargas v. Berkeley*

23   *Unified Sch. Dist.*, No. 16-cv-06634-WHO, 2017 U.S. Dist. LEXIS 199126, at *2–3 (N.D. Cal.

24   Dec. 4, 2017) (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)).  "In

25   determining whether an hourly rate is reasonable, courts consider the 'prevailing market rates in

26   the relevant community,' and 'the experience, skill, and reputation' of the attorney." *Id*. at *3

27   (quoting *Gonzalez*, 729 F.3d at 1205–06).  The Court may also consider other factors, such as

28   "(1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3)

1  the quality of representation; and (4) the results obtained." *Id.*.[4]

2  **Paul Hastings' hourly rates are reasonable.**  Here, Paul Hastings's charged

3  approximately $671.50–$748.00 per hour for junior associates; $916.00–$973.25 per hour for

4  senior associates; and $1,160.00–$1,232.50 per hour for senior partners.  LeGolvan Decl. ¶¶ 4, 5.

5  Decision in this district confirm that these rates are comparable to the prevailing market rates

6  charged by Paul Hastings' peer firms in California and nationwide for similar services.  *See, e.g.*,

7  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236-WHO, 2020

8  U.S. Dist. LEXIS 241035, at *13, n.4 (N.D. Cal. Dec. 22, 2020) (approving senior partner rates at

9  $1,280, $1,150, and $1,115 per hour; senior associate rates at $910; and junior associate rate at

10  $675); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. 2020)

11  (approving senior partner rates at $1,275, and citing to case approving partner rate as high as

12  $1,600); *In re Ncaa Ath. Grant-In-Aid Cap Antitrust Litig.*, No. 14-md-02541-CW (NC), 2019

13  U.S. Dist. LEXIS 237969, at *24 (N.D. Cal. Dec. 6, 2019) (approving partner rate at $1,515, and

14  senior associate rate at $825, *see* Dkt. No. 1169-1 at p. 11).

15  Moreover, Paul Hastings' rates charged in this case are in line with intellectual property

16  (IP) litigation rates in the San Francisco Bay Area, as confirmed by the American Intellectual

17  Property Law Association's 2021 Report of the Economic Survey (the "AIPLA Survey") and the

18  Valeo Partners database for Bay Area partners and associates.[5]  On the hourly rates for IP partners

19  in the Bay Area, the 2021 AIPLA Survey reports that the third quartile of IP partners in the Bay

20  Area charge $903 an hour.  *See* LeGolvan Decl., Ex. K.  Moreover, the 2019 Valeo Partners

21  database for Bay Area partners (a two-year-old report) shows a partner with twenty years of

22  experience billing $1,395, and a partner with thirteen years of experience billing $1,045.  *See*

23  LeGolvan Decl., Ex. L.  Therefore, Paul Hastings' IP partner rates in this case, which includes

24  partners with 23 and 28 years of IP litigation experience, LeGolvan Decl. ¶ 4(a), (b), are

25  _____

26  [4] Recovery also includes work performed by paralegals and other legal support staff.  *See*
   *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 823 (9th Cir. 2009).

27  [5] These survey reports are appropriately considered for purposes of the lodestar inquiry, in
   addition to the Court's own knowledge and experience.  *See Banas v. Volcano Corp.*, 47 F. Supp.

28  3d 957, 965–66 (N.D. Cal. 2014).

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1   reasonable in view of the prevailing market rates and recent decisions from this district.

2   　　　On the hourly rates for IP associates in the Bay Area, the 2021 AIPLA Survey reports the

3   median hourly rate for partner-track associates is $910 and a mean hourly rate of $737.  *See*

4   LeGolvan Decl., Ex. K.  Likewise, the 2019 Valeo Partners database for Bay Area associates (a

5   two-year-old report) shows a senior associate billing $940, and a junior associate billing $770.

6   *See* LeGolvan Decl., Ex. L.  Therefore, Paul Hastings' IP associate rates in this case, which

7   includes two junior associates (two and three years of experience, billing at $671.50–$748.00 per

8   hour) and one senior associate (eight years of experience, billing at $916.00–$973.25 per hour),

9   LeGolvan Decl. ¶ 4(c), (d), (e), are similarly reasonable in view of the prevailing market rates and

10  recent decisions from this district.  Lastly, Paul Hastings' paralegal assigned to this case has over

11  25 years of experience working in the legal profession, including 17 years specializing in

12  intellectual property litigation and his customary billing rate is $475 per hour.  LeGolvan Decl. ¶

13  4(f).  This Court has found comparable billing rates reasonable for paralegals.  *E.g.*, *Planned*

14  *Parenthood*, 2020 U.S. Dist. LEXIS 241035, at *10 (finding $390–405 for paralegals to be

15  reasonable).

16  　　　Finally, the remaining factors—"the experience, skill, and reputation of the attorney[s], . .

17  . the novelty and complexity of the issues[,] the special skill and experience of counsel[,] the

18  quality of representation[,] and [] the results obtained," *Vargas* , 2017 U.S. Dist. LEXIS 199126,

19  at *2–3—favor upholding Paul Hastings' rates in this case as reasonable.  Paul Hastings attorneys

20  and staff who worked on this cases are all highly accomplished attorneys, many of whom

21  graduated from prestigious universities and law schools and have received acknowledgment and

22  awards for their legal skills.  *See* LeGolvan Decl. ¶ 4, Exs. C, D, E, F, G, H (bios and resumes).

23  This case, and the legal and factual issues presented in it, have been both novel and complex,

24  involving an emerging and complex industry and subject matter—*i.e.*, technology in the

25  international challenger bank space supporting NRAs in compliance with AML and KYC laws.

26  The Paul Hastings attorneys staffed on this case have specialized skill and experience (over half a

27  century of combined experience) of relevant complex commercial litigation, trade secret

28  litigation, and patent litigation.  *Id*.  And, finally, Defendants' representation by Paul Hastings

1   throughout the arbitration motion and dissolution/OSC proceedings has been of exceptional

2   quality, and resulted in the best possible outcome for Defendants—dissolution of the wrongfully

3   obtained preliminary injunction and rightful enforcement of the arbitration agreement.

4         Therefore, all factors warrant upholding as reasonable Paul Hastings' hourly rates.

5         **The hours worked by Paul Hastings attorneys were reasonably expended.**  As

6   described above, EWB refused to stipulate to any of Defendants reasonable offers following

7   discovery of the Employee Handbook and the EWB patent applications.  This included EWB's

8   refusal to stipulate to a temporary stay (while at the same time demanding substantial discovery),

9   EWB's refusal to stipulate to shortened time on the motion for a temporary stay, EWB's refusal

10  to stipulate to arbitration under the Employee Handbook, and EWB's refusal to stipulate to

11  dissolution of the preliminary injunction without prejudice to reasserting such relief in arbitration.

12  These unreasonable refusals, in turn, required Defendants to file no less than eight briefs, many of

13  which were highly complex, fact intensive, and extraordinarily technical.  *See* Dkt. Nos. 114-4

14  (Shanker's motion to compel arbitration), 116-6 (Aeldra's motion to compel arbitration), 120-4

15  (Defendants' motion for a temporary stay), 124 (Defendants' motion for an order shortening time

16  on the motion for a temporary stay), 152-4 (Defendants' motion for leave to seek

17  reconsideration), 161-4 (Defendants' reply in support of motions to compel arbitration), 163

18  (Defendant Gopalakrishnan's joinder to Aeldra's motion to compel arbitration), 175-3

19  (Defendants responsive brief regarding OSC re dissolution).[6]

20        As a result, Paul Hastings reasonably expended the following hours on these proceedings:

21  (1) arbitration motion-related work: 14.9 partner hours, 163.6 associate hours, 14.9 paralegal

22  hours; (2) reconsideration/dissolution/OSC-related work: 27.2 partner hours, 209.3 associate

23  hours, 13.9 paralegal hours; and (3) work relating to the arbitration/OSC re dissolution hearing:

24  11.8 partner hours, 38.2 associate hours, 3.7 paralegal hours.  LeGolvan Decl. ¶¶ 5–8, Exs. I, J.

25  Given the circumstances, the time expended was justified, particularly in view of the nature of

26

27  [6] Additionally, due in part to EWB's refusal to de-designate the Employee Handbook as Highly
Confidential – Attorneys' Eyes Only (maintaining that the arbitration agreement constitutes a
28  trade secret), Defendants were required to file various administrative motions to seal.

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1   EWB's litigation conduct and the ultimate result obtained—notably in less than three months

2   since Paul Hastings first entered its appearance.

3       Based on the foregoing hours and rates, the sum total of attorneys' fees incurred by

4   Defendants related to these proceedings is $427,742.98.  Not only is this total sum reasonable and

5   justified in view of the nature and extent of briefing required throughout this litigation, but

6   comparable decisions in this district have found similar fee awards reasonable for briefing and

7   argument conducted in a complex proceeding such as the arbitration/OSC/dissolution proceedings

8   at issue here.  *See, e.g.*, *Resolute Forest Prods. v. Greenpeace Int'l*, No. 17-cv-02824-JST, 2020

9   U.S. Dist. LEXIS 251914, at *15 (N.D. Cal. Apr. 22, 2020) ($545,572.36 in fees for anti-SLAPP

10  motion); *Amazon.com, Inc. v. Personalweb Techs., LLC*, No. 5:18-cv-05619-BLF, Dkt. No. 132

11  (N.D. Cal. Apr. 19, 2021) ($425,958.45 in fees for preparing motion for attorneys' fees under 35

12  U.S.C. § 285).

13      **D.  Defendants Are Entitled to Fees for Bringing the Instant Motion**

14      A party entitled to recover attorneys' fees "may recover [] fees for time reasonably

15  expended on a motion for attorney fees and costs."  *Rosenfeld v. United States DOJ*, 904 F. Supp.

16  2d 988, 1008 (N.D. Cal. 2012) (citing *Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990)).  As

17  of the end of the billable month of October 2021, Defendants had incurred approximately

18  $86,702.98 for time reasonably expended by Paul Hastings attorneys on the instant motion for

19  attorneys' fees.  LeGolvan Decl. ¶ 5.  Defendants will supplement this number for the month of

20  November 2021 with the reply brief or shortly thereafter to present a full accounting of fees for

21  time reasonably expended on briefing and arguing the instant motion.

22  **V.    CONCLUSION**

23      Based on the foregoing, Defendants request that the Court order EWB to pay Defendants'

24  attorneys' fees pursuant to the arbitration agreement in the Employee Handbook and under the

25  DTSA as calculated herein and in the LeGolvan Declaration.

26

27

28

DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1   DATED:  November 3, 2021                    YAR R. CHAIKOVSKY
                                                PAUL HASTINGS LLP
2

3
                                                By: _/s/ Yar R. Chaikovsky_____
4                                                         YAR R. CHAIKOVSKY

5                                               Attorneys for Defendants
                                                SUKEERT SHANKER and
6                                               AELDRA FINANCIAL, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR ATTORNEYS' FEES