Ekwan E. Rhow - State Bar No. 174604
  erhow@birdmarella.com
Paul S. Chan - State Bar No. 183406
  pchan@birdmarella.com
Grace W. Kang - State Bar No. 271260
  gkang@birdmarella.com
Jonathan M. Jackson - State Bar No. 257554
  jjackson@birdmarella.com
Aharon B. Kaslow - State Bar No. 322769
  akaslow@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Plaintiff East West Bank

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| EAST WEST BANK, a California corporation,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>SUKEERT SHANKER, an individual; AELDRA FINANCIAL INC., a Delaware corporation; VENKAT GOPALAKRISHNAN, an individual; BLUE RIDGE BANK, N.A., a Virginia corporation; FS VECTOR LLC, a Delaware corporation; and DOES 1-7,<br><br>　　　　　　Defendants. | CASE NO. 3:20-cv-07364-WHO<br><br>**EAST WEST BANK'S OPPOSITION TO DEFENDANTS SUKEERT SHANKER AND AELDRA FINANCIAL INC.'S MOTION FOR ATTORNEYS' FEES**<br><br>Date:　　December 15, 2021<br>Time:　　2:00 p.m.<br>Court:　　Courtroom 2, 17th Floor<br><br>Assigned to Hon. William H. Orrick |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................................................1

II.     RELEVANT BACKGROUND............................................................................................2

III.    ARGUMENT .......................................................................................................................4

     A.      Defendant Shanker's Request For Attorneys' Fees Pursuant To The
       Employee Handbook's Arbitration Provision Should Be Denied............................4

        1.      Defendant Shanker Was Not "Forced To Incur Fees" To Compel
          EWB's Participation In Arbitration.................................................................4

        2.      Defendant Shanker's Request For Contractual Attorneys' Fees Is
          Grossly Excessive..........................................................................................5

     B.      Defendant Aeldra Does Not Have A Statutory Or Contractual Right to
       Request Attorneys' Fees In Connection With Its Motion To Compel
       Arbitration. ..............................................................................................................5

        1.      The Doctrine of Equitable Estoppel Does Not Authorize An Award
          of Attorneys' Fees. .........................................................................................6

        2.      Defendant Aeldra Is Not Entitled To Attorneys' Fees Under Cal.
          Civ. Code § 1717............................................................................................8

     C.      The DTSA Does Not Authorize Defendants' Request for Attorneys' Fees. ...........11

        1.      Defendants Are Not a "Prevailing Party" Under the DTSA. .......................11

        2.      The Legislative History of the DTSA Does Not Support Defendants'
          Request For Attorneys' Fees. .......................................................................13

        3.      Defendants Fail To Meet Their Burden of Proving "Bad Faith." ...............14

     D.      Defendants' Request For Attorneys' Fees Fails The Reasonableness
       Requirement. ..........................................................................................................16

        1.      Defendants Have Failed To Establish That They Are Entitled To An
          Award of Attorneys' Fees. ...........................................................................16

        2.      Defendants' Request For Attorneys' Fees Fails To Satisfy The
          Reasonableness Requirement........................................................................17

           a.      Defendants' Request For Fees In Excess of $500,000 Is
            Outrageously Unreasonable And Should Be Denied In Its
            Entirety. .........................................................................................18

           b.      Defendants' Claimed Hours Are Unreasonable. ..............................20

           c.      Defendants' Attorneys' Billing Rates Are Unreasonable. ...............24

IV.     CONCLUSION ..................................................................................................................25

EAST WEST BANK'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allied Pros. Ins. Co. v. Anglesey*,
    No. CV 14-00665 CBM, 2018 WL 6219926, at *10 (C.D. Cal. Aug. 10, 2018),
    *aff'd and remanded*, 952 F.3d 1131 (9th Cir. 2020) ................................................. 9

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975) ........................................................................................ 1, 16

*Artext, Inc. v. Angelica Corp.*,
    No. CV 12-6050 FMO (RZX), 2014 WL 12883275 (C.D. Cal. Dec. 30, 2014) ................... 20

*Ashker et al. v. Cate et al.*,
    No. 09-CV-05796-CW (RMI), 2021 WL 4310608 (N.D. Cal. May 6, 2021) ......................... 9

*Banas v. Volcano Corp.*,
    47 F. Supp. 3d 957 (N.D. Cal. 2014) ................................................................... 23

*Bonner v. Redwood Mortg. Corp.*,
    No. C 10-00479 WHA, 2010 WL 2528962 (N.D. Cal. June 18, 2010) ................................. 11

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*,
    532 U.S. 598 (2001) ........................................................................................... 16

*Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*,
    No. CV 11-303 PSG, 2012 WL 12883819 (C.D. Cal. June 12, 2012) ................................. 20

*Cancio v. Fin. Credit Network, Inc.*,
    No. C04-03755 TEH, 2005 WL 1629809 (N.D. Cal. July 6, 2005) ..................................... 22

*In re Carrier IQ, Inc. Consumer Priv. Litig.*,
    No. C-12-MD-2330 EMC, 2014 WL 1338474 (N.D. Cal. Mar. 28, 2014) ............................ 7

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*,
    No. 819CV00642JLSJDE, 2020 WL 620294 (C.D. Cal. Jan. 9, 2020) ................................. 8

*Dunster Live, LLC v. LoneStar Logos Mgmt. Co., LLC.*,
    908 F.3d 948 (5th Cir. 2018) ................................................................................. 12

*Farris v. Cox*,
    508 F. Supp. 222 (N.D. Cal. 1981) .............................................................. 18, 19, 20

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir.1992) ................................................................................ 20

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................... 18, 20

*In re Henson*,
  869 F.3d 1052 (9th Cir. 2017) ........................................................................................... 7

*Houston v. Inland Marine Indus.*,
  No. C-81-3115 RPA, 1982 WL 459 (N.D. Cal. June 25, 1982) ........................................ 18

*E.E.O.C. v. Inland Marine Indus.*,
  729 F.2d 1229 (9th Cir. 1984) ......................................................................................... 18

*Jordan v. Multnomah Cty.*,
  815 F.2d 1258 (9th Cir. 1987) ......................................................................................... 25

*Keith v. Volpe*,
  644 F. Supp. 1312 (C.D. Cal. 1986) ................................................................................. 23

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ........................................................................................... 6

*Kranson v. Fed. Express Corp.*,
  No. 11-CV-05826-YGR, 2013 WL 6503308 (N.D. Cal. Dec. 11, 2013) ............................ 25

*Monster Cable Prod., Inc. v. Feldman*,
  No. C 12-0250 RS, 2013 WL 12444309 (N.D. Cal. Feb. 27, 2013) ................................... 10

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ........................................................................................... 6

*Muniz v. United Parcel Serv., Inc.*,
  No. C 09-01987 CW, 2011 WL 1113492 (N.D. Cal. Mar. 25, 2011) ................................. 18

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ........................................................................................... 6

*Nadarajah v. Holder*,
  569 F.3d 906 (9th Cir. 2009) ........................................................................................... 23

*Oren Enterprises, Inc. v. Stefanie Cove & Co.*,
  No. CV 17-3619 PA, 2017 WL 8220230 (C.D. Cal. June 2, 2017) ..................................... 7

*In re Penrod*,
  802 F.3d 1084 (9th Cir. 2015) ........................................................................................... 9

*Physician's Surrogacy, Inc. v. German*,
  311 F. Supp. 3d 1190 (S.D. Cal. 2018) ............................................................................. 12

*In re Point.360*,
  846 F. App'x 507 (9th Cir. 2021) ....................................................................................... 9

*RBC Bearings Inc. v. Caliber Aero, LLC*,
No. SACV121442FMOPLAX, 2016 WL 6562068 (C.D. Cal. Aug. 1, 2016) ...................... 16

*San Bruno Mountain Watch v. U.S. Fish & Wildlife Serv.*,
No. C 00-2485 PJH, 2006 WL 2844538 (N.D. Cal. Sept. 29, 2006) ..................................... 16

*Soares v. Lorono*,
No. 12-CV-05979-WHO, 2015 WL 1743882 (N.D. Cal. Apr. 16, 2015) ............................. 18

*Swarmify, Inc. v. Cloudflare, Inc.*,
No. C 17-06957 WHA, 2018 WL 4680177 (N.D. Cal. Sept. 28, 2018) ................................ 14

*Taft v. Henley Enters., Inc.*,
No. SACV151658JLSJCGX, 2016 WL 9448485 (C.D. Cal. Mar. 2, 2016) ......................... 11

*VBS Distribution, Inc. v. Nutrivita Lab'ys, Inc.*,
No. SACV1601553CJCDFMX, 2018 WL 6177245 (C.D. Cal. Oct. 22, 2018) .................... 16

*Vistan Corp. v. Fadei, USA, Inc.*,
No. C-10-04862 JCS, 2013 WL 1345023 (N.D. Cal. Apr. 2, 2013) ......................................... 9

*VMG Salsoul, LLC v. Ciccone*,
No. CV1205967BROCWX, 2014 WL 12585798 (C.D. Cal. Apr. 28, 2014)......................... 25

*Yeager v. Bowlin*,
No. CIV 2:08-102 WBS JFM, 2010 WL 1689225 (E.D. Cal. Apr. 26, 2010)........................ 23

*Zeetogroup, LLC v. Fiorentino*,
No. 19-CV-458 JLS (NLS), 2020 WL 886866 (S.D. Cal. Feb. 24, 2020)............................. 12

**State Cases**

*Acosta v. Kerrigan*,
150 Cal. App. 4th 1124 (2007)............................................................................................... 10

*DisputeSuite.com, LLC v. Scoreinc.com*,
2 Cal. 5th 968 (2017)............................................................................................................. 10

*Frog Creek Partners, LLC v. Vance Brown, Inc.*,
206 Cal. App. 4th 515 (2012)................................................................................................ 10

*Gemini Aluminum Corp. v. California Custom Shapes, Inc.*,
95 Cal. App. 4th 1249 (2002)................................................................................................ 16

*Harris v. Rojas*,
66 Cal. App. 5th 817 (2021) .................................................................................................... 9

*Hsu v. Abbara*,
9 Cal. 4th 863 (1995).............................................................................................................. 10

*Santisas v. Goodin*,
    17 Cal. 4th 599 (1998)........................................................................................... 8

*Serrano v. Unruh*,
    32 Cal. 3d 621 (1982)......................................................................................... 19

**Federal Statutes**

18 U.S.C. § 1836 ...............................................................................................*passim*

**State Statutes**

Cal. Bus. Code § 17500............................................................................................ 9

Cal. Civ. Code § 1717 ......................................................................................*passim*

**Treatise**

10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2667
    (4th ed. 2021) .................................................................................................... 12

10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2675
    (4th ed. 2021) .................................................................................................... 16

**Other Authorities**

H.R. Rep No. 114-529 (Apr. 26, 2016) .......................................................... 13

Senate Rep No. 114-220 (Mar. 7, 2016) ......................................................... 13

Unif. Trade Secrets Act § 4 cmt. (1979) ......................................................... 13

## I.     <u>INTRODUCTION</u>

Defendants Sukeert Shanker and Aeldra Financial Inc.'s request for attorneys' fees ***in excess of $500,000*** is outrageous and unreasonable. The law is clear that "absent statute or enforceable contract," parties pay their own attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975). In their Motion for Attorneys' Fees ("Fee Motion"), Defendants claim that they are entitled to attorneys' fees based on: (1) the Employee Handbook; and (2) the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3)(D).

However, as explained below, Defendants' Fee Motion fails as a matter of law. *First,* Defendant Shanker's request for attorneys' fees pursuant to the Employee Handbook should be denied in its entirety, because the Employee Handbook authorizes an award of attorneys' fees only where a party is "forced to incur fees and/or costs to compel the other party's participation in arbitration…" and here, East West Bank ("EWB") voluntarily agreed to arbitrate its claims against Defendants. Furthermore, Defendant Shanker withdrew his request for attorneys' fees in connection with his Motion to Compel Arbitration. *Second,* Defendant Aeldra's request for attorneys' fees pursuant to the Employee Handbook must be denied in its entirety, because Aeldra does not have a contractual right to attorneys' fees under the Employee Handbook or elsewhere. *Third,* Defendants' request for attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) must be denied in its entirety, because the DTSA authorizes an award of reasonable attorneys' fees only to a "prevailing party" in whose favor judgment on the merits has been entered. Defendants are not entitled to the attorneys' fees requested in their Fee Motion.

In addition, Defendants have failed to meet their burden of establishing that their grossly excessive fee request is reasonable. Defendants, as a matter of law, cannot recover the attorneys' fees requested in their Fee Motion on behalf of Defendant Aeldra or under the DTSA. Defendant Shanker's Motion to Compel Arbitration did not involve novel or complex issues, and the majority of such motion was prepared by his original counsel. The outrageousness of Defendants' Fee Motion is evidenced by comparing Defendants' fee request in excess of $500,000 with Defendant Shanker's original fee request of $7,400 in his Motion to Compel Arbitration. Defendants' fee request is simply not reasonable or justified. EWB respectfully requests that the Court deny

1  Defendants' Fee Motion in its entirety.

2  **II.      RELEVANT BACKGROUND**

3         EWB filed this action on October 20, 2020, alleging (among other things) that Defendant

4  Shanker misappropriated EWB's confidential, proprietary, and trade secret information related to

5  its "Velo by East West Bank" digital banking platform.  (Dkt. 1.)  EWB filed a motion for leave to

6  amend the complaint to add Aeldra as a defendant on April 2, 2021, which was granted on May

7  11, 2021.  (Dkt. 34, 43.)  In April 2021, EWB and Shanker both commenced their document

8  productions.  (Dkt. 168-3, ¶¶ 5-6.)  On May 7, 2021, EWB served a document production

9  including the Employee Handbook and the standalone Arbitration Agreement at issue in the

10  underlying Motions to Compel Arbitration.  (*Id.,* at ¶ 7.)  On May 19, 2021, EWB filed a Motion

11  for Preliminary Injunction.  (Dkt. 51.)  Defendants filed their Opposition to EWB's Motion for

12  Preliminary Injunction on June 9, 2021.  (Dkt. 64.)  The Court granted EWB's Motion for

13  Preliminary Injunction on July 22, 2021.  (Dkt. 101.)

14         On August 11, 2021, Shanker's original counsel sent a letter to EWB's counsel raising, for

15  the first time, the issue of arbitration.  Thereafter, the parties began to meet and confer regarding

16  the arbitrability of EWB's claims.  (*See* Dkt. 129-1, ¶¶ 2-3.)  On August 16, 2021, EWB filed its

17  Second Amended Complaint ("SAC"), pursuant to the Court's prior order granting leave to

18  amend.  (Dkt. 105, 108.)  The next day, on August 17, 2021, EWB's counsel informed

19  Defendants' counsel that EWB had agreed to extend the deadline for Defendants' responses to the

20  SAC to allow the parties to meet and confer in good faith regarding the issues of arbitrability

21  raised in the August 11, 2021 letter.  (Dkt. 129-1, ¶ 2.)  On August 18, 2021, counsel for EWB and

22  Aeldra met and conferred regarding (among other things) arbitrability and the potential terms of a

23  stipulation.  EWB's counsel then circulated a draft stipulation on August 20, 2021.  (*Id.* at ¶¶ 3-4.)

24  That same day, despite previously agreeing to an extension of Defendants' response deadline to

25  allow the parties to meet and confer regarding arbitration, Defendants refused to enter into the

26  proposed stipulation and instead filed separate Motions to Compel Arbitration.  (*Id.*, ¶¶ 5-7; Dkt.

27  114-117.)  In his Motion to Compel Arbitration, Shanker requested attorneys' fees in the amount

28  of $7,400.  (Dkt. 115, at 7.)  Defendant Aeldra's Motion to Compel Arbitration did not include a

request for attorneys' fees.  (Dkt. 117.)

After the filing of Defendants' Motions to Compel Arbitration, EWB continued to meet and confer with Defendants regarding a stipulation to arbitrate EWB's claims.  On August 26, 2021, EWB's counsel notified Defendants that EWB voluntarily **_agreed_** to arbitration, and sent Defendants' counsel a proposed stipulation.  (*See* Dkt. 154, at 5.)  Defendants rejected EWB's proposed stipulation.  (*Id*.)  On September 1, 2021, Paul Hastings filed Notices of Appearance on behalf of Defendant Shanker.  (Dkt. 143-46.)  On September 3, 2021, EWB filed its response to Defendants' Motions to Compel Arbitration.  (Dkt. 154.)  As EWB explained in its papers, "EWB already has agreed to arbitrate this dispute[.]"  (*Id*., at 5.)  The only remaining dispute between the parties was which arbitration agreement applied, the standalone Arbitration Agreement or the arbitration provision of the Employee Handbook.  On September 10, 2021, Defendants filed their joint reply in support of their Motions to Compel Arbitration.  (Dkt. 162.)  In their joint reply papers, Defendants withdrew Shanker's request for attorneys' fees.  (*Id.*, at 15 n. 4.)[1]

On October 20, 2021, the Court issued its order granting Defendants' Motions to Compel Arbitration, staying the case, and dissolving the Preliminary Injunction Order (the "October 20 Order").  (Dkt. 190.)  The Court's October 20 Order stated:

> The only dispute regarding the motion to compel arbitration is whether the First or Second Arbitration Agreement controls.  ***The parties do not dispute that this case and all of its asserted claims against Defendants are subject to arbitration** …. **The parties also do not dispute that the arbitration terms are materially the same*** in both agreements, except for the limitation in the Second Agreement to provisional relief….

(*Id*., at 5) (emphasis added.)  The Court's October 20 Order also noted that:  "Shanker originally requested attorney fees in his motion to compel arbitration pursuant to the terms in the Second Arbitration Agreement …. EWB opposed but in the joint Defendants' reply brief, Shanker withdrew his request…"  (*Id*., at 5 n. 1.)

---

[1]   Defendants purported to reserve the right to file a successive motion for attorneys' fees.  (*See id*.)

III.   **ARGUMENT**

    A.   **Defendant Shanker's Request For Attorneys' Fees Pursuant To The Employee Handbook's Arbitration Provision Should Be Denied.**

        1.   **Defendant Shanker Was Not "Forced To Incur Fees" To Compel EWB's Participation In Arbitration.**

The Employee Handbook's arbitration provision states:

> <u>Compelling Arbitration/Enforcing Award</u>.  Either party may bring an action in court to compel arbitration under this Agreement and to enforce an arbitration award. Unless prohibited by applicable law, ***should either party be forced to incur fees and/or costs to compel the other party's participation in arbitration*** as provided herein, the moving party shall be entitled to recover its fees, costs, and all other reasonable expenses of such action.

(Dkt. 193, at 125, § 11) (emphasis added.)

By its express terms, the Employee Handbook's arbitration provision permits an award of attorneys' fees *only if* a party to the agreement is "forced to incur fees and/or costs to compel the other party's participation in arbitration…"  (*Id.*)  Here, it is undisputed that Shanker was *not* "forced to incur" any such fees.  Shanker filed his Motion to Compel Arbitration while the parties were engaged in a meet and confer process regarding arbitration.  As EWB's Opposition to Defendants' Motions to Compel Arbitration noted, "on August 26, 2021, EWB notified Defendants that it would ***agree*** to arbitration…" (Dkt. 154, at 5:2.)  It is undisputed that EWB *agreed* to arbitrate its claims against Defendants Shanker and Aeldra before the American Arbitration Association ("AAA"), as acknowledged by the Court's October 20 Order:  "The ***parties do not dispute*** that this case and all of its asserted claims against Defendants are subject to arbitration…"  (Dkt. 190, at 5:4-5) (emphasis added.)

EWB thus agreed to voluntarily "participat[e] in arbitration as provided" in the Employee Handbook, *i.e.*, arbitration before AAA, with a single arbitrator, under the AAA's National Rules for the Resolution of Employment Disputes, (see Dkt. 154, at 7 n.6).  The parties' dispute as to whether the standalone Arbitration Agreement or the Employee Handbook applied (which, in turn, impacted Defendants' separate Motion for Reconsideration ) was immaterial with respect to these arbitration terms—as the Court recognized in its October 20 Order.  (Dkt. 190, at 5) ("The parties also do not dispute that the arbitration terms are materially the same in both agreements, except for

the limitation in the Second Agreement to provisional relief.").  Shanker was not "forced" to compel EWB's participation in arbitration and therefore, his request for attorneys' fees is not authorized under the Employee Handbook's arbitration provision and should be denied.

### 2. Defendant Shanker's Request For Contractual Attorneys' Fees Is Grossly Excessive.

Defendant Shanker's Motion to Compel Arbitration requested a total award of attorneys' fees in the amount of $7,400, consisting of $5,175 for the 11.5 hours expended in connection with the preparation of his Motion to Compel Arbitration and an estimated $2,225 in connection with the preparation of his reply papers.  (Dkt. 115-2, Lawson Decl., ¶ 10; Dkt. 115, at 7:5-6.) Defendant Shanker then withdrew his request for attorneys' fees.  (Dkt. 190, at 5, n.1) ("Shanker originally requested attorney fees in his motion to compel arbitration pursuant to the terms in the Second Arbitration Agreement …. EWB opposed but in the joint Defendants' reply brief, Shanker withdrew his request….").

Defendants' Fee Motion does *not* seek attorneys' fees for the preparation of the moving papers for Defendant Shanker's Motion to Compel Arbitration.  Rather, Defendants' Fee Motion is based solely upon the legal work performed by Paul Hastings.  As explained in detail below in Section III.D.2.a, Defendants' Fee Motion seeks an award of fees that is ***more than seventy times greater*** than Defendant Shanker's original fee request of $7,400.  Defendants' request for attorneys' fees is grossly excessive.

### B. Defendant Aeldra Does Not Have A Statutory Or Contractual Right to Request Attorneys' Fees In Connection With Its Motion To Compel Arbitration.

Defendants' Fee Motion asserts that Defendant Aeldra is entitled to recover attorneys' fees in connection with Defendant Aeldra's Motion to Compel Arbitration based on the following two grounds:  (1) the doctrine of equitable estoppel; and (2) Cal. Civ. Code § 1717.  (*See* Mot., at 15:3-24.)  As explained below, these arguments are meritless.  Notably, Defendant Aeldra's Motion to Compel Arbitration did *not* include a request for attorneys' fees, implicitly acknowledging that Defendant Aeldra did not have a right to seek such an award in connection with its Motion to

Compel Arbitration.[2]  The arguments to the contrary in Defendants' Fee Motion are legally

unsupported and deficient as a matter of law.

**1.      The Doctrine of Equitable Estoppel Does Not Authorize An Award of Attorneys' Fees.**

Defendants first argue "given that Aeldra undisputedly has the right to invoke the

arbitration agreement in the Employee Handbook—effectively standing in Shanker's shoes (with

Shanker)—Aeldra may invoke the arbitration provisions, including the enforcement provisions

and the attorneys' fees provision, to the same extent as Shanker."  (Mot., at 15:9-12.)  Defendants

cite no legal authority in support of their argument for Aeldra's attorneys' fees based on equitable

estoppel, nor has EWB located any.  Based on a search of all federal cases, no federal court has

applied the equitable estoppel doctrine in the arbitration context to award attorneys' fees to a non-

signatory of an arbitration agreement.

On the contrary, the relevant body of law does not support Defendants' expansive

interpretation of the equitable estoppel doctrine.  Under the Federal Arbitration Act, "a litigant

who is not a party to an arbitration agreement may invoke arbitration under the FAA if the

relevant state contract law allows the litigant to enforce the agreement."  *Kramer v. Toyota Motor*

*Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013).  "Because generally only signatories to an arbitration

agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this

context is narrowly confined."  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).  In

the Ninth Circuit, the doctrine of equitable estoppel applies only in the following two

circumstances:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Id.* (quoting *Kramer*, 705 F.3d at 1128–29; *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d

---

[2]    It is undisputed that Defendant Aeldra is not a party to the Employee Handbook.

EAST WEST BANK'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1  1042, 1046 (9th Cir. 2009) ("we see no basis for extending the concept of equitable estoppel of

2  third parties in an arbitration context beyond the very narrow confines delineated in these two

3  lines of cases.").

4        Despite the abundance of Ninth Circuit authority explaining the limited application of

5  equitable estoppel in the arbitration context, Defendants incredulously ask the Court to apply the

6  equitable estoppel doctrine in a manner that would clearly violate well-established Ninth Circuit

7  legal precedent.  Defendants' claim that Aeldra "may invoke the arbitration provisions … to the

8  same extent as Shanker" is plainly wrong.  Defendant Shanker is a signatory to the Employee

9  Handbook and, therefore, has the rights and obligations of a contracting party.  The basis for

10  Aeldra's Motion to Compel Arbitration is the "intertwined" nature of EWB's claims against

11  Defendants Shanker and Aeldra.  "The doctrine of equitable estoppel is thus predicated on the

12  unfairness of allowing a party to rely on part of a contract in asserting a claim while, at the same

13  time, disavowing another part of the same contract."  *In re Carrier IQ, Inc. Consumer Priv. Litig.*,

14  No. C-12-MD-2330 EMC, 2014 WL 1338474, at *7 (N.D. Cal. Mar. 28, 2014); *see also In re*

15  *Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) ("The theory behind equitable estoppel is that a

16  plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties

17  imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny

18  arbitration's applicability because the defendant is a non-signatory.'") (quoting *Murphy,* 724 F.3d

19  at 1229).  The doctrine of equitable estoppel, however, does not permit a third-party non-signatory

20  to claim the same rights and obligations of a contracting party.  This would violate the narrow

21  application of the equitable estoppel doctrine recognized under Ninth Circuit authority.

22        Indeed, none of the equitable estoppel cases cited by Defendant Aeldra in its Motion to

23  Compel Arbitration awarded attorneys' fees to a non-signatory, even where the action was

24  compelled to arbitration.  *See, e.g., Oren Enterprises, Inc. v. Stefanie Cove & Co.*, No. CV 17-

25  3619 PA (AFMX), 2017 WL 8220230, at *4 (C.D. Cal. June 2, 2017) (holding that "despite not

26  being a signatory to the arbitration agreements, SCC [a new company started by Oren's former

27  employees] may also compel arbitration of, at a minimum, the federal trade secret claim asserted

28  against it" under the doctrine of equitable estoppel, but not awarding attorney's fees for

compelling arbitration under equitable estoppel); *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp.*

*Inc.*, No. 819CV00642JLSJDE, 2020 WL 620294, at *8 (C.D. Cal. Jan. 9, 2020) (holding that

"estoppel allows the non-signatory Defendants to compel arbitration of all claims related to trade

secret misappropriation" because their claims were based on facts substantially intertwined with

the arbitrable claims, but not awarding attorney's fees for compelling arbitration under equitable

estoppel).

**2.    Defendant Aeldra Is Not Entitled To Attorneys' Fees Under Cal. Civ. Code § 1717.**

Defendants' second argument that Aeldra is entitled to attorneys' fees under the Employee

Handbook pursuant to Cal. Civ. Code § 1717 ("Section 1717") fails as a matter of law.  (*See* Mot.,

at 15:19-21.)

Section 1717 provides, in relevant part:

> (a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs….

> (b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.  The court may also determine that there is no party prevailing on the contract for purposes of this section….

Cal. Civ. Code § 1717.

The purpose of Section 1717 is to make reciprocal an otherwise unilateral contractual

obligation to pay attorneys' fees.  *Santisas v. Goodin,* 17 Cal. 4th 599, 610-11 (1998).

Interpreting the applicability of Section 1717, the Ninth Circuit has explained:

> Three conditions must be met before the statute applies.  First, the action in which the fees are incurred must be an action 'on a contract,' a phrase that is liberally construed.  *In re Tobacco Cases I*, 193 Cal.App.4th 1591, 124 Cal.Rptr.3d 352, 359 (2011).  Second, the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party.  And third, the party seeking fees must be the party who 'prevail[ed] on the contract,' meaning (with exceptions not relevant here) 'the party who

recovered a greater relief in the action on the contract.'  Cal. Civ. Code § 1717(b)(1).

*In re Penrod*, 802 F.3d 1084, 1087 (9th Cir. 2015).

Here, none of the conditions are met; thus, Section 1717 does not apply.  *First,* EWB's claims against Defendant Aeldra (which are for violations of the DTSA and Cal. Bus. Code § 17500) are tort-based, not contract-based.  Therefore, Aeldra cannot satisfy the first condition of Section 1717, that the case be "an action on a contract."  *See, e.g., Ashker et al. v. Cate et al.*, No. 09-CV-05796-CW (RMI), 2021 WL 4310608, at *2 (N.D. Cal. May 6, 2021) ("this case arose under federal law through the pleading of a number of federal constitutional torts, and . . . it cannot be said that this case is an action on a contract" for purposes of Section 1717.); *see also In re Point.360*, 846 F. App'x 507, 508 (9th Cir. 2021) ("An action is 'on a contract' for the purposes of Section 1717 if it involves an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement.") (internal citation and quotation marks omitted).  *Second,* the attorneys' fee provision in the Employee Handbook is bilateral, and courts have held that Section 1717 does ***not*** apply where the fee provision is already bilateral.  *See Harris v. Rojas*, 66 Cal. App. 5th 817, 823 (2021) ("This attorney fee clause was mutual, not unilateral, so Civil Code section 1717, which Harris cites, is not material.").  *Third,* it is well-settled that a party does not "prevail[] on the contract" under Section 1717 by moving a pending dispute from federal district court to arbitration.  *See Vistan Corp. v. Fadei, USA, Inc.*, No. C-10-04862 JCS, 2013 WL 1345023, at *3 (N.D. Cal. Apr. 2, 2013) ("Federal district courts appear uniform in denying fees under Section 1717 where a non-merits decision results in dismissal of the contract claim."); *Allied Pros. Ins. Co. v. Anglesey*, No. CV 14-00665 CBM, 2018 WL 6219926, at *10 (C.D. Cal. Aug. 10, 2018), *aff'd and remanded*, 952 F.3d 1131 (9th Cir. 2020) ("Because compelling arbitration is merely an interim procedural step, when a petition to compel arbitration is granted . . . the trial court cannot award attorney fees [pursuant to Section 1717] at that point.") (internal citations and quotation marks omitted).

If Section 1717 did apply—as Defendants argue in their Fee Motion—then Defendants, as a matter of law, are barred from seeking attorneys' fees at this time, because neither Aeldra nor

Shanker is a "prevailing party."  Under Civ. Code § 1717(b)(1), "the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract."  Cal. Civ. Code § 1717(b)(1).  As the California Supreme Court repeatedly has made clear, "The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.'"  *Hsu v. Abbara*, 9 Cal. 4th 863, 876 (1995) (internal citation omitted).  Defendants' request for fees under Section 1717 is thus grossly premature, and may properly be made only *after* the final resolution of EWB's contract claims against Defendants in the arbitration.

Indeed, the *only* case cited by Defendants (Mot., at 14:3-11) in support of their request for an interim fee award noted that—even as to *parties* to a contract expressly providing for an award of fees in connection with a motion to compel arbitration—"California law is unsettled as to whether attorney fees are appropriately awarded at this juncture[.]"  *Monster Cable Prod., Inc. v. Feldman*, No. C 12-0250 RS, 2013 WL 12444309, at *1 (N.D. Cal. Feb. 27, 2013).  *Monster Cable*, in turn, relied on *Acosta v. Kerrigan*, 150 Cal. App. 4th 1124, 1130 (2007), which held that a party to such a contract could seek an interim fee award.  The *Acosta* decision, however, was later repudiated in *Frog Creek Partners, LLC v. Vance Brown, Inc.*, 206 Cal. App. 4th 515, 544 (2012), where the court expressly "reject[ed] the rationale of the *Acosta* decision that specific contract language may justify a separate attorney fee award," *id*. at 544, ultimately holding:  "In sum, the rationale in *Acosta* violates the policy behind Civil Code section 1717 articulated [by the California Supreme Court] in *Santisas*."  *Id*. at 546 (citing *Santisas v. Goodin*, 17 Cal. 4th 599, 616 (1998)).  Four years later, the California Supreme Court approved this reasoning, holding that *Frog Creek*, while "not closely analogous to this case procedurally … supports the denial of fees in this case by its invocation of the general principle, equally applicable here, that fees under section 1717 are awarded to the party who prevailed on the contract overall, not to a party who prevailed only at an interim procedural step."  *DisputeSuite.com, LLC v. Scoreinc.com*, 2 Cal. 5th 968, 977 (2017).

Defendants cannot, on the one hand, seek to circumvent Section 1717's categorical bar on interim fee awards, but on the other hand, explicitly rely on Section 1717 as a purported basis for

their fee request.  Nor do the two cases cited in Defendants' Fee Motion support their claim that Aeldra is entitled to attorneys' fees under the Employee Handbook pursuant to Section 1717. (Mot., at 15:15-24.)  In *Taft v. Henley Enters., Inc*., No. SACV151658JLSJCGX, 2016 WL 9448485, at *7 (C.D. Cal. Mar. 2, 2016), the court granted defendant's motion to compel arbitration but did not award attorneys' fees.  To the contrary, the court expressly acknowledged that "Henley Pacific is the only party that may seek to recover costs associated with this Motion, given that the Motion was only brought by Henley Pacific, *the party to the Arbitration Agreement*, and not by any of the other Defendants." *Id.* (emphasis added).  The other cited case, *Bonner v. Redwood Mortg. Corp.*, No. C 10-00479 WHA, 2010 WL 2528962 (N.D. Cal. June 18, 2010), does not even involve a motion to compel arbitration.  In *Bonner*, the plaintiff brought a meritless predatory lending action pursuant to a promissory note and deed of trust.  After dismissing the action, the court held that defendants were entitled to an award of attorneys' fees under those agreements, noting "Section 1717 is to be interpreted to provide a reciprocal remedy for a nonsignatory defendant, *sued on a contract as if he were a party to it*, when the plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." *Id*, at *3 (emphasis added).  Here, unlike in *Bonner*, EWB did not sue Aeldra "as if [it] were a party to [the Employee Handbook]."  EWB's breach of contract causes of action were alleged *solely against Shanker*, not Aeldra.  Nor did EWB seek to hold Aeldra "liable" under the Employee Handbook's arbitration provision; instead, *Aeldra* sought to compel arbitration of EWB's claims based on the equitable estoppel doctrine.

   **C.      The DTSA Does Not Authorize Defendants' Request for Attorneys' Fees.**

   Defendants' request for attorneys' fees pursuant to Section 1836(b)(3)(D) is improper for the following reasons:  (1) Defendants are not a "prevailing party" as required under the DTSA; (2) the legislative history of the DTSA indicates that the "motion to terminate an injunction" scenario of the DTSA was intended to apply to misappropriators; and (3) Defendants have failed to meet their burden of proving bad faith.

   **1.      Defendants Are Not a "Prevailing Party" Under the DTSA.**

   The DTSA authorizes a court to award reasonable attorneys' fees only to a "prevailing

party." 18 U.S.C. § 1836(b)(3)(D); *see also Zeetogroup, LLC v. Fiorentino*, No. 19-CV-458 JLS (NLS), 2020 WL 886866, at *4 (S.D. Cal. Feb. 24, 2020) (denying request for attorneys' fees under Section 1836(b)(3)(D) in connection with a motion for preliminary injunction, finding plaintiffs were "not yet the prevailing party for purposes of the [DTSA]" and noting that "[u]ntil there is a 'final score in this federal lawsuit, the Defend Trade Secrets Act does not allow attorney's fees.") (internal citation omitted).

Under the DTSA, "[p]revailing party status requires that a party 'received a judgment on the merits, or obtained a court-ordered consent decree.'" *Physician's Surrogacy, Inc. v. German*, 311 F. Supp. 3d 1190, 1196 (S.D. Cal. 2018) (quoting *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)). "In addition, 'such relief must create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees.'" *Physician's Surrogacy, Inc.*, 311 F. Supp. 3d at 1196 (quoting *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 981 (9th Cir. 2008)) (internal quotations and citation omitted). "This material alteration test applies to federal fee shifting statutes that contain the phrase 'prevailing party.'" *Physician's Surrogacy, Inc.*, 311 F. Supp. 3d at 1196 (quoting *Cadkin v. Loose,* 569 F.3d 1142, 1148-49 (9th Cir. 2009)).

The Fifth Circuit's detailed analysis of the DTSA's prevailing party requirement in *Dunster Live, LLC v. LoneStar Logos Mgmt. Co., LLC.* is instructive. 908 F.3d 948 (5th Cir. 2018). In *Dunster,* Defendants filed a motion for attorneys' fees under Section 1836(b)(3)(D) following the court's denial of a preliminary injunction motion and plaintiff's dismissal of the action without prejudice. *Id.,* at 950-51. Interpreting the prevailing party requirement of the DTSA, the Fifth Circuit concluded that the DTSA "makes prevailing a necessary but not sufficient requirement for fees" and that "[e]rasing 'prevailing party' from the fee statute would be especially troubling because it is a term of art that Congress has used in numerous attorney's fees statutes." *Id.* at 952 (citing *Buckhannon,* 532 U.S. at 603 n. 4). Rejecting defendants' argument that they achieved prevailing party status when they defeated plaintiffs' preliminary injunction motion, the *Dunster* court explained that "prevailing party status ordinarily requires being ahead when the final whistle blows in a case, not at halftime." *Id.* at 953; *see also* 10 Charles Alan

1  Wright & Arthur R. Miller, Federal Practice and Procedure § 2667 (4th ed. 2021) ("a

2  determination of who is the prevailing party for purposes of awarding costs should not depend on

3  the position of the parties at each stage of the litigation but should be made when the controversy

4  is finally decided.").

5       Thus, Defendants' request for attorneys' fees under Section 1836(b)(3)(D) is improper

6  because they have failed to satisfy the prevailing party requirement of the DTSA.[3]

7           **2.    The Legislative History of the DTSA Does Not Support Defendants'
                    Request For Attorneys' Fees.**
8

9       Notably absent from Defendants' Fee Motion is any legal authority supporting their

10  request for attorneys' fees under the "motion to terminate an injunction" provision of Section

11  1836(b)(3)(D).  Based on a search of all federal cases, no federal court has awarded attorneys' fees

12  to a defendant under this provision.  Indeed, the DTSA's legislative history makes clear that the

13  "motion to terminate an injunction" provision was included in the statute to prevent "specious

14  efforts by misappropriators to terminate injunctive relief," not to victims of misappropriation.  The

15  legislative history of Section 1836 shows that Subparagraph (D) (the attorneys' fees provision) of

16  the DTSA was based on Section 4 of the Uniform Trade Secrets Act ("UTSA").[4]

17       The Uniform Law Commissioners' Comment to Section 4 of the UTSA, in turn, clarifies

18  that the provision concerning motions to terminate an injunction applies to misappropriators:

19       Section 4 allows a court to award reasonable attorney fees to a prevailing party in
         specified circumstances as a deterrent to specious claims of misappropriation, ***to***
20       ***specious efforts by a misappropriator to terminate injunctive relief***, and to willful
         and malicious misappropriation…
21

22  Unif. Trade Secrets Act § 4 cmt. (1979) (emphasis added).  Therefore, Defendants' request for

23  ───────────────────

24  [3]    Notably, Defendants' Fee Motion fails to cite *any* DTSA legal authority in support of their
       improper request for attorneys' fees under Section 1836(b)(3)(D).  Defendants blatantly disregard
25     the DTSA legal standard.

26  [4]    "Subparagraph (D) allows that attorney's fees may be awarded to the prevailing party if a
       claim of misappropriation is made in bad faith, there is willful and malicious misappropriation, or
27     a motion to terminate an injunction is made or opposed in bad faith.  ***This provision is modeled on***
       ***§ 4 of the UTSA***."  Senate Rep No. 114-220, at 9 (Mar. 7, 2016); H.R. Rep No. 114-529, at 13
28     (Apr. 26, 2016) (emphasis added).

attorneys' fees under the "motion to terminate an injunction" scenario of Section 1836(b)(3)(D) fails.

### 3.      Defendants Fail To Meet Their Burden of Proving "Bad Faith."

As explained above, the Court need not conduct a bad faith analysis, because Defendants have failed to satisfy the "prevailing party" requirement of the DTSA:  the arbitrator ultimately will determine the parties' eligibility for attorneys' fees under the DTSA.  Nonetheless, Defendants have failed to meet their burden of proving that EWB acted in bad faith.

In order to prove "bad faith" under the DTSA, a prevailing party seeking attorneys' fees must show:  (1) the objective speciousness of the claim, and (2) the subjective bad faith in bringing or maintaining the claim.  *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 4680177, at *2 (N.D. Cal. Sept. 28, 2018).  "Objective speciousness 'exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim.'"  *Id.* (quoting *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. C 08-1992 AJB (MDD), 2013 WL 410103, at *7 (S.D. Cal. Feb. 1, 2013), aff'd, 560 F. App'x 966 (Fed. Cir. 2014).)  "Subjective bad faith 'means the action was commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition.'"  *Swarmify*, 2018 WL 4680177, at *2 (quoting *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 847 (2012)).

As an initial matter, the record in this action overwhelmingly supports a finding of Defendants' liability for misappropriation of trade secrets under the DTSA.  It is undisputed that shortly prior to his termination, Defendant Shanker forwarded over forty highly confidential Velo documents to his personal email accounts.  (Dkt. 86, Shanker Am. Decl., ¶ 23) ("I emailed myself various documents and emails reflecting the progress my team and I had made on developing the Velo platform, including the Velo application itself, compliance policies, and marketing materials.").  It is further undisputed that Defendant Shanker forwarded various Velo documents to his start-up business partners, Venkat Gopalakrishnan and Rohit Mehtani, on multiple occasions while they were developing the Aeldra platform.  (*Id.,* at ¶ 56) (admitting to "five occasions on which I have used any EWB document for any purpose other than for the benefit of East West Bank").  It is likewise undisputed that Defendants accessed and used EWB's trade secret

information.  For example, Defendants' "Aeldra Product Roadmap"—used by Defendants to develop and build the Aeldra platform—includes a verbatim copy of EWB's Velo Product Roadmap (Trade Secret 1), as well as other trade secret information, including EWB's Velo Value Proposition and Roadmaps (Trade Secret 5) and EWB's Velo Product Features and Designs (Trade Secret 6).  (Dkt. 167-17, Ex. 7.)  Defendants concede that their Aeldra Product Roadmap incorporates EWB's trade secret information.  (Dkt. 86 (Shanker, Am. Decl.), ¶ 56(e)) ("I have become aware of a document entitled 'Aeldra Product Roadmap' that appears to incorporate some EWB information.").

Nonetheless, Defendants cite a variety of purportedly "bad faith" conduct by EWB, most of which is irrelevant to Defendants' Fee Motion.  Defendants argue that EWB acted in "bad faith" by contending (1) the standalone Arbitration Agreement, as opposed to the Employee Handbook, should apply; and (2) the preliminary injunction was warranted notwithstanding the publication of EWB's patent applications.  Neither argument is correct.  *First,* EWB believed, in good faith, that the arbitration provision in the Employee Handbook was unenforceable, which is why EWB requires employees to sign a separate, standalone Arbitration Agreement and has never sought to enforce the arbitration provision in the Employee Handbook.  (Dkt. 154-5 (Teitelbaum Decl.), ¶ 5.)  While the Court ruled that EWB waived its right to compel arbitration under the standalone agreement, this does not evidence objective or subjective bad faith by EWB.[5]  (Dkt. 190, at 7.)  *Second,* in opposition to Defendants' Motion for Reconsideration, EWB argued that the preliminary injunction was appropriate, notwithstanding the publication of EWB's patent applications, because EWB is entitled to possess both trade secrets and patents related to its Velo platform and the patent applications do not disclose EWB's claimed trade secrets.  The Court's October 20 Order did not make a merits-based finding that an injunction was not warranted; rather, the Court held: "Because the arbitrator should have resolved the preliminary injunction question in the first place, the arbitrator should also resolve these merits questions in light of the

---

[5]  Contrary to Defendants' claim, EWB has never taken the position that its Employee Handbook is not an enforceable contract, but rather the *arbitration provision* of the Employee Handbook was unenforceable under applicable law.  (Mot., at 17:16-18:10)

1  published patent applications." (Dkt. 190, at 12:26-28.)  The merits of EWB's claims, including

2  its entitlement to injunctive relief, will be adjudicated in arbitration.  EWB's opposition does not

3  evidence objective or subjective bad faith, both of which are required under the DTSA.

4        Defendants' Fee Motion does not cite any legal authority under the DTSA supporting an

5  award of attorneys' fees under Section 1836(b)(3)(D).  The two CUTSA cases cited by

6  Defendants' Motion are materially distinguishable.  (Mot. at 21:7-16.)  *See Gemini Aluminum*

7  *Corp. v. California Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1264 (2002) (finding objective

8  speciousness where trial jury found that plaintiff acted in bad faith in its misappropriation of trade

9  secrets claim where the alleged trade secrets had "no economic value"); *RBC Bearings Inc. v.*

10  *Caliber Aero, LLC*, No. SACV121442FMOPLAX, 2016 WL 6562068, at *5 (C.D. Cal. Aug. 1,

11  2016) (finding bad faith following dismissal of claim on summary judgment where plaintiff "had

12  no evidence to support any of its claims for trade secret misappropriation").  Thus, Defendants

13  have failed to satisfy the bad faith requirement of the DTSA.  *See, e.g., VBS Distribution, Inc. v.*

14  *Nutrivita Lab'ys, Inc.*, No. SACV1601553CJCDFMX, 2018 WL 6177245, at *4 (C.D. Cal. Oct.

15  22, 2018) (denying request for attorneys' fees under the DTSA where plaintiffs' claims against

16  former employee for theft of trade secret information were not brought in bad faith).

    **D.**     **Defendants' Request For Attorneys' Fees Fails The Reasonableness**
17                 **Requirement.**

18

        **1.**      **Defendants Have Failed To Establish That They Are Entitled To An**
19                     **Award of Attorneys' Fees.**

20        Supreme Court precedent dictates that "absent statute or enforceable contract, litigants pay

21  their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257

22  (1975); *see Buckhannon,* 532 U.S. at 602 ("In the United States, parties are ordinarily required to

23  bear their own attorney's fees…."); *San Bruno Mountain Watch v. U.S. Fish & Wildlife Serv.*, No.

24  C 00-2485 PJH, 2006 WL 2844538, at *3 (N.D. Cal. Sept. 29, 2006) ("The American Rule

25  generally provides that absent statute or enforceable contract, litigants pay their own attorneys'

26  fees."); *see also* 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

27  2675 (4th ed. 2021) ("In the United States, contrary to the practice in England, it has been the

28  custom to require litigants to assume the burden of paying for their own litigation connected legal

1   services in the absence of a rule or statute to the contrary.").

2          As a threshold matter, Defendants have failed to meet their burden of establishing a

3   statutory or contractual right to an award of attorneys' fees.  Defendants' statutory request for

4   attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) is improper because the DTSA authorizes

5   an award of reasonable attorneys' fees only to a "prevailing party."  As explained above in Section

6   III.C.1, Defendants have not achieved "prevailing party" status because EWB's claims have not

7   yet been adjudicated on the merits and therefore, the DTSA does not permit an award of attorneys'

8   fees to Defendants.  Likewise, Defendants' request for Aeldra's fees pursuant to EWB's Employee

9   Handbook is improper, because Aeldra does not have a contractual right to attorneys' fees under

10  the Employee Handbook or elsewhere.  As explained above in Section III.B.1, 2, Aeldra's claims

11  to attorneys' fees based upon the doctrine of equitable estoppel and Cal. Civ. Code § 1717 are

12  meritless.  Defendant Shanker's request for attorneys' fees pursuant to EWB's Employee

13  Handbook also should be denied, because EWB's Employee Handbook authorizes an award of

14  fees and costs *only if* a party to the agreement is "forced to incur fees … to compel the other

15  party's participation in arbitration[.]"  But, as noted in the Court's October 20 Order, EWB

16  voluntarily *agreed* to arbitrate its claims against Defendants.  The only disputed issue submitted to

17  the Court was "which of two arbitration agreements controls," which, in turn, was relevant to the

18  Court's analysis of whether the preliminary injunction should remain in place pending the

19  arbitration.  (Dkt. 190, at 1:17-18.)  Thus, Defendant Shanker's request for attorneys' fees is not

20  authorized by the Employee Handbook's arbitration provision.  Furthermore, Defendant Shanker

21  *withdrew* his request for attorneys' fees in connection with his Motion to Compel Arbitration.

22          For the foregoing reasons, Defendants' Fee Motion should be denied in its entirety.

23          **2.      Defendants' Request For Attorneys' Fees Fails To Satisfy The
                       Reasonableness Requirement.**

24

25          In the alternative, to the extent that the Court elects to consider the merits of Defendants'

26  Fee Motion, Defendants' fee request fails to satisfy the reasonableness requirement and therefore,

27  should be denied in its entirety.

28          "A party requesting fees bears the burden of establishing entitlement to the award and

1   documenting the appropriate number of hours expended and hourly rates." *Soares v. Lorono*, No.

2   12-CV-05979-WHO, 2015 WL 1743882, at *2 (N.D. Cal. Apr. 16, 2015).  An award for

3   attorneys' fees must be reasonable.  *See Hensley v. Eckerhart,* 461 U.S. 424, 440 (1983).  "A

4   request for attorney's fees should not result in a second major litigation."  *Hensley v. Eckerhart*,

5   461 U.S. 424, 437 (1983).  "The application should exercise 'billing judgment' with respect to

6   hours worked … and should maintain billing time records in a manner that will enable a reviewing

7   court to identify distinct claims."  *Id.*  "Where the documentation of hours is inadequate, the

8   district court may reduce the award accordingly."  *Id.* at 433.  Courts apply the "lodestar" method

9   of calculating attorneys' fees, by which they multiply the hourly rate by the hours reasonably

10   expended on the litigation.  *Soares*, 2015 WL 1743882, at *2.  As explained below, Defendants'

11   fee request in excess of $500,000 is outrageously unreasonable and therefore, should be denied in

12   its entirety.

13           **a.**        **Defendants' Request For Fees In Excess of $500,000 Is**

14                           **Outrageously Unreasonable And Should Be Denied In Its Entirety.**

15      "'A fee request that appears unreasonably inflated is a special circumstance permitting the

16   trial court to reduce the award or deny one altogether.'"  *Muniz v. United Parcel Serv., Inc.*, No. C

17   09-01987 CW, 2011 WL 1113492, at *1 (N.D. Cal. Mar. 25, 2011) (quoting *Serrano v. Unruh*, 32

18   Cal. 3d 621, 635 (1982)); *see also Farris v. Cox*, 508 F. Supp. 222, 227 (N.D. Cal. 1981) ("fees

19   may be denied in their entirety when petitioning lawyers are guilty of overreaching in seeking

20   outrageously unreasonable fees."); *Houston v. Inland Marine Indus.*, No. C-81-3115 RPA, 1982

21   WL 459, at *2 (N.D. Cal. June 25, 1982), aff'd sub nom. *E.E.O.C. v. Inland Marine Indus.*, 729

22   F.2d 1229 (9th Cir. 1984) ("If the petitioning lawyer is guilty of overreaching in seeking

23   outrageously unreasonable fees, the Court, in its discretion, may deny all fees.").

24      As the California Supreme Court explained:

25   [If] the Court were required to award a reasonable fee when an outrageously
    unreasonable one has been asked for, claimants would be encouraged to

26   make unreasonable demands, knowing that the only unfavorable consequence of such
    misconduct would be reduction of their fee to what they should have asked in the

27   first place. To discourage such greed, a severer reaction is needful[.]

28

1   *Serrano*, 32 Cal. 3d at 635 (quotations omitted).

2       "It is a fundamental principle in cases involving requests for attorneys' fees that the court

3   should not grant compensation for unnecessary work." *Farris,* 508 F. Supp. at 225-26.

4       The majority of Defendants' Fee Motion (and the requested fee amount) is predicated upon

5   Defendants' meritless claims that they are entitled to fees under the DTSA, 18 U.S.C. §

6   1836(b)(3)(D), and Defendant Aeldra's fees under the Employee Handbook.  As explained above,

7   these claims are legally deficient and would violate Supreme Court precedent if adopted by this

8   Court.  According to Defendants' Fee Motion, five Paul Hastings attorneys (2 partners and 3

9   associates) spent **98.4 hours** at a cost of **$86,702.98** preparing Defendants' Fee Motion, that

10  incorrectly states the legal standard for an award of attorneys' fees under the DTSA and makes

11  numerous legally unsupported arguments that contradict well-established legal authority.

12      The outrageousness of Defendants' Fee Motion is further evidenced by comparing

13  Defendants' fee request in excess of $500,000 with Defendant Shanker's original fee request of

14  $7,400.  As detailed above, Defendant Shanker's original counsel of record, Lawson & Lawson,

15  prepared and filed Defendant Shanker's Motion to Compel Arbitration on August 20, 2021.

16  Defendant Shanker incurred **$5,175** in attorneys' fees for **11.5 hours** for legal work by three

17  Lawson & Lawson attorneys in connection with the preparation of his Motion to Compel

18  Arbitration.  (Dkt. 115-2 (Lawson Decl.), ¶ 10.)  Mr. Lawson's Declaration estimated that

19  Defendant Shanker would "incur an additional $2,225" in connection with the preparation of his

20  reply papers.  (*Id.*)  Defendant Shanker's Motion to Compel Arbitration requested a total award of

21  attorneys' fees in the amount of **$7,400**.  (Dkt. 115, at 7:5-6.)

22      Paul Hastings filed Notices of Appearance on behalf of Defendant Shanker on September

23  1, 2021.  (Dkt. 143-146.)  The legal services performed by Paul Hastings in connection with

24  Defendant Shanker's Motion to Compel Arbitration consisted only of:  (1) Preparing joint 15 page

25  reply papers in support of Defendants Shanker and Aeldra's Motions to Compel Arbitration; and

26  (2) attending the September 29, 2021 hearing on the Motions.

27      The September 29, 2021 hearing was 7 minutes total.  (Dkt. 180.)  Yet, Defendants have

28  requested **$47,277.00** for attorneys' fees in connection with the September 29, 2021 hearing, for

1   five Paul Hastings attorneys (two partners, three associates) for **53.7 hours**, despite the fact that

2   only two Paul Hastings attorneys appeared at the hearing.

3        Despite the limited legal services performed by Paul Hastings in connection with

4   Defendant Shanker's Motion to Compel Arbitration, Defendants' Fee Motion outrageously

5   requests $427,742.98 in attorneys' fees, an additional $86,702.98 in connection with the Fee

6   Motion itself, and an unspecified amount of additional attorneys' fees to be supplemented by

7   Defendants in further submissions to the Court.  Notably, Defendants' Fee Motion does not even

8   seek the attorneys' fees incurred in the preparation of the moving papers for Defendant Shanker's

9   Motion to Compel Arbitration and instead, is based solely on the billable hours of Paul Hastings.[6]

10       Defendants' Fee Motion seeks an award of fees that is ***more than seventy times greater***

11  than Defendant Shanker's original fee request of $7,400.  This is exactly the kind of outrageous

12  fee request that courts have denied as unreasonable.  *See Farris,* 508 F. Supp. at 227 (denying 76.1

13  hours billed for work on fee petition "[t]o discourage such overreaching and curb the practice of

14  padding fee requests"); *Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd.*, No. CV 11-303 PSG

15  (PLAX), 2012 WL 12883819, at *5 (C.D. Cal. June 12, 2012) (denying "fees on fees" request in

16  light of party's "excessive" fee request and "wasteful litigation tactics").

17       Defendants' fee request in excess of $500,000 is outrageously unreasonable and excessive

18  and should be denied in its entirety.

19            **b.      Defendants' Claimed Hours Are Unreasonable.**

20       The fee applicant bears the burden of documenting the appropriate hours expended and

21  must submit evidence in support of those hours worked.  *See Gates v. Deukmejian*, 987 F.2d 1392,

22  1397 (9th Cir.1992); *see also Hensley*, 461 U.S. at 434 (describing the court's duty to eliminate

23  hours that are "excessive, redundant, or otherwise unnecessary").  If the requested number of

24  hours is greater than the number of hours reasonably competent counsel would have billed, then

25  the court should reduce the requested number of hours accordingly.  *Artext, Inc. v. Angelica Corp.*,

26

---

27  [6]   As the Court noted in its October 20 Order, Defendant Shanker withdrew his request for

28  attorneys' fees.  (Dkt. 190, at 5 n.1.)

No. CV 12-6050 FMO (RZX), 2014 WL 12883275, at *7 (C.D. Cal. Dec. 30, 2014).

The attorney declaration submitted with Defendants' Fee Motion and the attached billing statements clearly establish that Defendants' counsel, Paul Hastings, billed excessive hours, the majority of which was for legal work that Defendants, as a matter of law, are not entitled to recover.  For example, Line Entries **1-79** and **108-135** in Defendants' billing statements submitted to the Court as Exhibit J seek to recover attorneys' fees from August 9, 2021 through August 31, 2021, for legal work performed exclusively on behalf of Defendant Aeldra.  (Dkt. 194-11 (LeGolvan Decl., Ex. J) at 2-7, 9-12.)  Paul Hastings did not file their Notices of Appearance on behalf of Defendant Shanker until September 1, 2021, and therefore, Defendants' request for attorneys' fees in connection with Paul Hastings' legal work on behalf of Defendant Aeldra is improper and should have been excluded from Defendants' Fee Motion.  Similarly, Line Entries **108-200** in Defendants' billing statements seek to recover attorneys' fees in connection with Defendants' Motion for Reconsideration of the Preliminary Injunction Order pursuant to 18 U.S.C. § 1836(b)(3)(D), none of which Defendants are allowed to seek at this time under the DTSA.  (*See id.,* at 9-16.)

Defendants' billing statements also include numerous improper entries relating to Defendant Venkat Gopalakrishan's Joinder as well as other unrelated entries, none of which Defendants are entitled to recover in their Fee Motion.  (*See* Dkt. 194-11.)  The following are representative examples of Defendants' improper entries for which they seek a fee award:

| Line Entry | Date | Hours Billed | Fees Incurred | Narrative |
|---|---|---|---|---|
| 90 | 9/8/21 | 1.2 | $1,167.90 | Draft notice of joinder for newly added defendants for stay of action pending arbitration |
| 94 | 9/9/21 | 1.1 | $1,070.58 | Further draft notice of joinder for newly added defendants for stay of action pending arbitration, and email correspondence with joint defense group regarding same |
| 100 | 9/10/21 | 0.4 | $389.30 | Review and finalize notice of joinder to stay of action pending arbitration |
| 105 | 9/10/21 | 0.3 | $121.13 | Coordinate with team members for purpose of preparing Gopalakrishnan's joinder to motion to compel for finalization and court e-filing |

| 205 | 9/28/21 | 0.90 | $363.38 | Prepare filed copies of client's response in support of motion for reconsideration for deliver to chambers, service on opposing counsel and for use in preparation for upcoming hearing |
| 207 | 9/28/21 | 1.2 | $1,479 | Prepare for and attend mediation (.5); analyze issued patent to EWB (.7) |
| 219 | 10/5/21 | 0.8 | $778.60 | Attend weekly strategy call with B. Pearl, D. Fox, and B. Lubarsky (0.8) |

As discussed above in Section III.D.2.a., Defendants have failed to show that the **98.4 hours** spent by Defendants' counsel to prepare Defendants' Fee Motion were "reasonably expended." *Cancio v. Fin. Credit Network, Inc.*, No. C04-03755 TEH, 2005 WL 1629809, at *5 (N.D. Cal. July 6, 2005) ("the hours must be reasonably expended to be compensable") (citing *Jordan,* 815 F.2d at 1263).  The issues raised by Defendant Shanker's Motion to Compel Arbitration were not novel or difficult.  Defendant Shanker's fee request should have been resolved at the same time as Defendants' Motions to Compel Arbitration.  Instead, Defendants' counsel *withdrew* Defendant Shanker's fee request for the improper purpose of submitting a second fee request that is grossly inflated and seeks fees that Defendants are not entitled to.

Defendants' billing statements indicate that Defendants' counsel spent **20.5 hours**[7] conducting legal research for Defendants' Fee Motion.  Yet, despite the 20.5 hours of legal research by three Paul Hastings attorneys, Defendants' Fee Motion misstates the legal standard for an award of attorneys' fees under the DTSA and makes numerous legally unsupported arguments that contradict well-established legal authority.  Defendants' billing statements similarly indicate that Defendants' counsel spent **35.4 hours**[8] preparing Defendants' Fee Request, the majority of which is dedicated to Defendants' baseless claims for attorneys' fees under the DTSA and on behalf of Defendant Aeldra.  By comparison, Defendant Shanker's original counsel, Lawson & Lawson, spent **11.5 hours total** at a cost of **$4,200** researching and preparing Shanker's Motion to Compel Arbitration (including the original fee request).

---

[7]   Line Entries 214, 216, 217, 219, 224, 227, 232, 237, 240, 252.  (Dkt. 194-11, at 17-19.)

[8]   Line Entries 225, 229, 230, 231, 235, 242, 246, 248, 251, 253, 255, 256, 259, 261, 262, 263. (Dkt. 194-11, at 18-20.)

Defendants' billing statements also reveal that Defendants' counsel spent excessive amounts of attorney time preparing the summary table of timekeepers and attorneys' fees attached as Exhibit I to the LeGolvan Declaration (Dkt. 194-10) and the billing statements attached as Exhibit J to the LeGolvan Declaration (Dkt. 194-11).  With regard to Exhibit I, Defendants' billing statements indicate that a Paul Hastings associate, David M. Fox, spent **14.3 hours**[9] at a cost of **$9,602.45** to prepare the summary table submitted as Exhibit I.  With regard to Exhibit J, Defendants' billing statements indicate that two Paul Hastings associates, Andy LeGolvan and Mr. Fox, spent **3.5 hours**[10] at a cost of **$3,074.26** to prepare the billing statements submitted as Exhibit J.  In addition to the foregoing, Defendants have claimed *an additional* **4.2 hours**[11] by Mr. Fox at a cost of **$2,820.30** for Mr. Fox to "collect" and "organize" the attorneys' fees statements.  These are clerical tasks for which Defendants are not entitled to recover fees.  *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."); *Keith v. Volpe,* 644 F. Supp. 1312, 1215-16 (C.D. Cal. 1986) (disallowing recovery for time spent on filing, document organization and other clerical matters).

Defendants' billing statements also improperly include numerous time entries that are block billed.[12]  Courts routinely do not allow recovery of fees for block billing.  *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 967 (N.D. Cal. 2014) ("because of block-billing, it is impossible to determine whether the time requested for any one task was reasonable."); *Yeager v. Bowlin*, No. CIV 2:08-102 WBS JFM, 2010 WL 1689225, at *1 (E.D. Cal. Apr. 26, 2010) ("The usage of block billing is fundamentally inconsistent with the lodestar method because it 'render[s] it virtually impossible to break down hours,' leaving the court without the ability to accurately determine whether a reasonable amount of time was spent by counsel on a discrete task.") (internal

---

[9]   Line Entries 228, 238, 243, 247, 260, 264.  (Dkt. 194-11, at 18-20.)

[10]   Line Entries 244, 249, 254.  (Dkt. 194-11, at 19.)

[11]   Line Entries 222, 223, 226.  (Dkt. 194-11, at 18.)

[12]   Line Entries 95, 98, 101, 202, 208, 214, 215, 217, 221, 224, 227, 229, 232, 237, 240, 245, 252, 255.  (Dkt. 194-11, at 8, 9, 16-19.)

citation omitted).

### c.     Defendants' Attorneys' Billing Rates Are Unreasonable.

Defendants' claimed billing rates are some of the highest billing rates for IP litigators nationwide, ranging from $671.50 (for a second-year associate) to $1,232.50 (for a partner) per hour.  (Mot. at 22-23.)  These claimed rates are unreasonably high and do not reflect the market rate of Bay Area attorneys for similar work.

*First,* Defendants' claimed rates are dramatically higher than those reflected in their own surveys submitted to the Court in connection with their Fee Motion.  The AIPLA survey (attached as Exhibit K to the LeGolvan Declaration) shows *an average Bay Area IP partner billing rate of $665*, roughly half of the partner billing rates claimed by Defendants in their Fee Motion, ranging from **$1,100** to **$1,232.50**.  (*Compare* Dkt. 194-12, at I-37 *with* Dkt. 194-1, at ¶¶ 4(a), (b).)  The Valeo report (attached as Exhibit L to the LeGolvan Declaration) similarly shows that the partner billing rates claimed by Defendants *greatly exceed the partner billing rates of every other Big Law IP partner in the Bay Area*, with the sole exception of one Kirkland & Ellis IP partner. (*Compare* Dkt. 194-13, at 1-3 *with* Dkt. 194-1, at ¶¶ 4(a), (b).)  Defendants' associate billing rates are likewise inflated and do not reflect the market rate of associate attorneys in the Bay Area for similar work:  $790 for a second-year associate (vs. $230-$770 in the Valeo report); $880 for a third-year associate (vs. $300-$695 in the Valeo report); and $973.25 for an eighth-year associate (vs. $225-$795 in the Valeo report).  (*Compare* Dkt. 194-13, at 5-6 *with* Dkt. 194-1, at ¶¶ 4(c)-(e).)[13]

*Second,* neither of these surveys nor Defendants' claimed rates reflect the work performed by Defendants' counsel—preparing a joint reply to a Motion to Compel Arbitration that did not involve novel or complex issues and attending a 7 minute hearing.  "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community *for similar services* of lawyers

---

[13]   Associate year determined by subtracting the "Bar Yr." from the "Rate Yr." shown in the Valeo report.

of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987) (emphasis added).  In fact, Defendant Shanker's Motion to Compel Arbitration was prepared and filed by his original counsel, Lawson & Lawson, at hourly rates ranging from **$350 - $550**, which Shanker himself argued were reasonable in his Motion to Compel Arbitration. (Dkt. 115-2, at ¶ 10.)  While Shanker was free to retain new counsel, this election does not and cannot justify the unreasonably high billing rates claimed by Defendants' counsel.  *See VMG Salsoul, LLC v. Ciccone*, No. CV1205967BROCWX, 2014 WL 12585798, at *8 (C.D. Cal. Apr. 28, 2014) (reducing claimed hourly rates, holding "[t]he Proskauer Clients were free to select the quality and level of advocacy for their case, but they may not impose their own approach on a losing adversary.") (simplified).  As noted, Defendants are (improperly) seeking an interim award of attorney's fees; they are not seeking fees, at the conclusion of a successful trial on the merits. *See id.*, at *8 (distinguishing reasonableness of claimed rates in case that "was litigated from jury verdict all the way to the Supreme Court").  The nature of the work performed at this interim stage does not justify Defendants' counsel's excessively high billing rates.  *See, e.g., Kranson v. Fed. Express Corp.*, No. 11-CV-05826-YGR, 2013 WL 6503308, at *8 (N.D. Cal. Dec. 11, 2013) ("While the various cases cited by Messrs. Wallace and Pearl provide some basis of comparison of reasonable rates for attorneys with 30+ years of experience, *these rates do not take into account whether the work performed was similar in nature*.") (emphasis added.)

## IV.    CONCLUSION

For the foregoing reasons, EWB respectfully requests that the Court deny Defendants' Motion for Attorneys' Fees in its entirety.

1

DATED:  November 17, 2021

2

3

4

5

6

7

8

Ekwan E. Rhow
Paul S. Chan
Grace W. Kang
Jonathan M. Jackson
Aharon B. Kaslow
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:      */s/ Grace W. Kang*
_____
Grace W. Kang
Attorneys for Plaintiff East West Bank

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EAST WEST BANK'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES