UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EAST WEST BANK,<br><br>           Plaintiff,<br><br>    v.<br><br>SUKEERT SHANKER, et al.,<br><br>           Defendants. | Case No. 20-cv-07364-WHO<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 194, 198 |

Defendants Sukeert Shanker and Aeldra Financial, Inc. ("Aeldra") move for attorneys' fees from plaintiff East West Bank ("EWB") under the terms of the EWB Employee Handbook and the Defend Trade Secrets Act ("DTSA"). The motion is GRANTED.[1] Under the terms of the Employee Handbook, Shanker is entitled to reasonable fees that he incurred compelling EWB to arbitration. So is Aeldra, a company that Shanker founded once he stopped working for EWB. In this litigation, EWB has sought to hold Aeldra liable for breaching various provisions of the Employee Handbook and has conceded that Aeldra could compel EWB to arbitration. While Aeldra is not a signatory to the Employee Handbook, equitable estoppel entitles it to fees. That said, the amount of attorneys' fees and costs sought by the defendants is unreasonable. It will be reduced to $467,013.40 .

**BACKGROUND**

I start with the procedural background. In October 2020, EWB filed this lawsuit against Shanker, a former employee, alleging that he had, among other things, misappropriated EWB's

---

[1] Pursuant to Civil Local Rule 7-1(b), this matter is appropriate for resolution without oral argument.

trade secrets to create Aeldra, a direct competitor to EWB's mobile banking platform, "Velo."[2] Compl. [Dkt. No. 1] ¶¶ 39-43. On May 12, 2021, EWB filed its First Amended Complaint ("FAC"), also alleging violations of the DTSA and California's Unfair Competition Law by Aeldra. Dkt. No. 45.

A week later, EWB filed a motion for a preliminary injunction, seeking to prevent the defendants from using, disclosing, distributing, or retaining any of EWB's confidential, proprietary, or trade secret information obtained by Shanker from or by virtue of his employment with EWB. Dkt. No. 51. I granted that motion on July 22, 2021, enjoining the defendants from doing so. *See* Preliminary Injunction Order [Dkt. No. 101] 34. But in less than a month, Shanker and Aeldra separately filed motions to compel EWB to arbitration, and shortly thereafter moved for leave to seek reconsideration of my preliminary injunction order. Dkt. Nos. 115, 117, 153. I granted them leave and ordered EWB to show cause why the injunction should not be dissolved. Dkt. No. 166. And on October 20, 2021, after a hearing, I dissolved the preliminary injunction, granted the motions to compel arbitration, and stayed the case. Arbitration Order [Dkt. No. 190] 1.

Central to my decision were "new material facts that were not previously disclosed by EWB:" an EWB Employee Handbook signed by Shanker that included a three-page arbitration agreement and EWB's published patent application materials. *Id*. at 4:8-11. As I noted, "had EWB disclosed the arbitration agreements and the published patent applications I would not have issued the preliminary injunction in its current form, if at all." *Id*. at 1-2. Here is what happened.

On December 22, 2017, Shanker's first day of employment for EWB, at 10:42 a.m., he signed a document titled "Binding Arbitration Agreement and Waiver of Jury Trial." Dkt. No. 154-6 ("First Agreement") at 1, 3; *see also* Second Am. Compl. ("SAC") [Dkt. No. 108] ¶ 32. Thirteen minutes later, at 10:55 a.m., he signed the Employee Handbook, which included an arbitration agreement. Dkt. No. 116-14 ("Employee Handbook") at 123-28; Dkt. No. 154-7 at 3.

---

[2] A more detailed description of the factual background can be found in my prior Orders, which I incorporate by reference here. Dkt. Nos. 101, 190.

2

The material terms of the agreements were similar.  *Compare* First Agreement *with* Employee Handbook.  Both include provisions for attorneys' fees.  *See* First Agreement at 2; Employee Handbook at 125.  The arbitration agreement found within the Employee Handbook includes the following language:

> Either party may bring an action in court to compel arbitration under this Agreement and to enforce an arbitration award.  Unless prohibited by applicable law, should either party be forced to incur fees and/or costs to compel the other party's participation in arbitration as provided herein, the moving party shall be entitled to recover its fees, costs, and all other reasonable expenses of such action.

Employee Handbook at 125.  The primary difference between the agreements is that the first allows a party to seek injunctive relief in federal court, while the second allows a party to seek provisional relief only "upon the ground that the award to which the party may be entitled may be rendered ineffectual without provisional relief."  *Compare* First Agreement at 2 *with* Employee Handbook at 124.

On May 7, 2021, EWB made a document production to Shanker related to this litigation that included the Employee Handbook containing the second arbitration agreement.  Dkt. No. 117-1 ¶ 3; Dkt. No. 114-6 ¶ 2.  Five days later, it filed its FAC.  Dkt. No. 45.  A week after that, it filed the motion for a preliminary injunction.  Dkt. No. 51.

On August 9, 2021, Shanker's former counsel discovered the second arbitration agreement while reviewing EWB's document production; two days later he informed EWB's counsel.  Dkt. No. 114-6 ¶¶ 4-5.  Two days after that, EWB's counsel responded that they had been unaware of this agreement.  Dkt. No. 115-5.  On August 18, 2021, EWB produced the Employee Handbook to Aeldra's counsel for the first time.  Dkt. No. 116-4 at 12:24-13:2.  Two days later, the defendants filed motions to compel arbitration.  Dkt. Nos. 115, 117.  A week after that, EWB notified the defendants that it would agree to arbitration under the first arbitration agreement, which it produced then for the first time.  *See* Dkt. No. 153-13.

The parties agreed that the claims were subject to arbitration and that Aeldra, despite being a non-signatory, could compel arbitration of the claims brought against it.  *See* Arbitration Order at 5.  They also conceded that the terms were materially the same in both arbitration agreements,

3

except for second agreement's limitation to provisional relief. *Id*. The only dispute was which arbitration agreement governed. *Id*. I held that the agreement found within the Employee Handbook controlled because it superseded the first agreement and that EWB was estopped from arguing that the first agreement applied. *Id*. at 1.

Shanker and Aeldra now seek attorneys' fees incurred in connection with their motions to compel arbitration. Dkt. No. 194. They ask for $427,742.98 for prevailing on the underlying motions, along with $171,394.52 in fees for work on this motion.[3] *Id*. at 25; Dkt. No. 198.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 54(d)(2)(A) provides that a party may file a claim "for attorney's fees and related nontaxable expenses." A motion seeking attorneys' fees must: (1) be filed no later than 14 days after judgment is entered; (2) "specify the judgment and the statute, rule, or other grounds entitling the movant to the award;" (3) "state the amount sought or provide a fair estimate of it;" and (4) if ordered by the court, disclose the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B)(i)-(iv).

While Rule 54(d) sets forth a procedure for recovering attorneys' fees, it does not establish a right to do so. *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1280 (9th Cir. 1999). "[T]here must be another source of authority for such an award." *Id*. at 1281. (internal citation omitted). This requirement of an "independent source of authority . . . gives effect to the 'American Rule' that each party must bear its own attorneys' fees in the absence of a rule, statute, or contract authorizing such an award." *Id*. (internal citation omitted).

When a party seeks costs other than attorneys' fees, Rule 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise," such costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

District courts typically employ the "lodestar method" to calculate an appropriate amount

---

[3] The defendants first sought $86,702.98 in fees related to their motion for attorneys' fees. *See* Dkt. No. 194 at 25:18. On December 7, 2021, they filed an administrative motion for leave to file a declaration supplementing that number to include an additional $84,691.54 for work performed in November 2021. *See* Dkt. No. 198. EWB opposed. Dkt. No. 199. Having considered the papers, the defendants' motion is GRANTED and the submitted declaration now considered.

4

of attorneys' fees. *Vargas v. Berkeley Unified Sch. Dist.*, No. 16-CV-06634-WHO, 2017 WL 5991857, at *1 (N.D. Cal. Dec. 4, 2017). This calls for the court to multiply "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

The party seeking attorneys' fees must establish its entitlement to the award and submit evidence supporting the hours worked and rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although fee awards calculated under the lodestar method are generally presumed to be reasonable, the court may adjust this figure "if circumstances warrant . . . to account for other factors which are not subsumed within it." *Gonzalez*, 729 F.3d at 1202; *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). A district court may exclude "hours that are excessive, redundant, or otherwise unnecessary." *See Hensley*, 461 U.S. at 434.

Plaintiffs may also recover attorneys' fees for time "reasonably expended on a motion for attorney fees and costs." *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1008 (N.D. Cal. 2012).

## DISCUSSION

### I.  ATTORNEYS' FEES FOR SHANKER

As the defendants argue, under the plain language of the Employee Handbook, Shanker has a right to attorneys' fees. Mot. for Att'ys Fees ("Mot.") [Dkt. No. 194] at 15:1-3. The fee provision could not be more clear: "should either party be forced to incur fees and/or costs to compel the other party's participation in arbitration as provided herein, the moving party shall be entitled to recover its fees, costs, and all other reasonable expenses of such action." *See* Employee Handbook at 125.

EWB responds that Shanker was not "forced to incur" any such fees to compel arbitration because EWB voluntarily agreed to arbitrate the claims. Oppo. at 4:13-22. It argues that the dispute over which arbitration agreement applied was "immaterial" regarding the material terms: "arbitration before [the American Arbitration Association], with a single arbitrator, under the AAA's National Rules for the Resolution of Employment Disputes." *Id*. at 4:22-24. In support, EWB cites my prior Order, which recognized that the "parties do not dispute that this case and all

5

of its asserted claims against Defendants are subject to arbitration" and that "the arbitration terms are materially the same in both agreements." *See id*. at 4:17-5:3 (citing Arbitration Order at 5).

By disputing that the Employee Handbook governed arbitration, EWB did not agree to participate in arbitration "as provided herein." Throughout this litigation, EWB "acted inconsistently with its purported right to compel arbitration." *See* Arbitration Order at 6:13. As I previously noted: "Instead of seeking arbitration, it filed a complaint in federal court, sought damages demanding a jury trial, represented to the court that the action was not appropriate for arbitration, sought discovery, and delayed for eleven months before now arguing that the case should be subject to arbitration." *Id*. at 6:14-17. Describing these actions as "voluntarily" participating in arbitration is disingenuous. *See* Oppo. at 4:22.

Moreover, once EWB eventually agreed to arbitrate its claims, it sought arbitration under an entirely different agreement: the first one that Shanker signed. *See* Dkt. No. 153-13. It opposed arbitration under the Employee Handbook, arguing that it was not enforceable under California law. *See* Arbitration Order at 7:3-8:1. It did not agree to arbitration "as provided herein" per the terms of the Employee Handbook.

For these reasons, I find that Shanker was forced to incur fees and costs to compel EWB's participation in arbitration as provided in the Employee Handbook. Accordingly, he is entitled to recover his fees, costs, and all other reasonable expenses of such action under its plain terms.

## II. ATTORNEYS' FEES FOR AELDRA

Shanker argues that Aeldra is not entitled to fees because it is a non-signatory to the Employee Handbook. In some ways, this is a minor issue: The same law firm represents both Shanker and Aeldra, and most of the arguments that the parties make are substantively the same. But given EWB's conduct of the litigation, equitable estoppel entitles Aeldra to its fees.

Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (citation omitted). When the dispute is between a signatory and a non-signatory, "the signatory cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration

6

provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009) (citation omitted). "The linchpin for equitable estoppel is equity—fairness." *Id*.

Although Aeldra is not a signatory to the Employee Handbook, it may invoke the arbitration agreement and its terms—including the enforcement provisions and the attorneys' fees provision—under equitable estoppel to the same extent as Shanker. As I found in my prior Order, "the parties do not dispute . . . that Aeldra, despite being a non-signatory, can compel arbitration of the trade secret and UCL claims against it." Arbitration Order at 5:4-6.

EWB argues that awarding Aeldra attorneys' fees on these grounds would cut against the Ninth Circuit's "limited application of equitable estoppel in the arbitration context." Oppo. at 7:4-7. It cites *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013), which held that "[b]ecause generally only signatories to an arbitration agreement are obligated to submit to binding arbitration, equitable estoppel of third parties in this context is narrowly defined." The court stated that:

> Where a non-signatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Id*. at 1229. This, EWB contends, "does not permit a third-party non-signatory to claim the same rights and obligations of a contracting party." Oppo. at 7:19-20.

As I have previously noted, during the preliminary injunction briefing EWB "relied extensively on the Employee Handbook to support its claims against defendants," including Aeldra. *See* Arbitration Order at 8:28-9:1. I held that EWB was "prohibited from seeking to hold defendants liable under the confidentiality and trade secret provisions in the Employee Handbook while at the same time denying the applicability of the arbitration provision in the same agreement." *Id*. at 9:5-7. The same is true for the terms of the arbitration provision. Allowing EWB to seek the benefits of the Employee Handbook (using it as the foundation of its claims

7

against Aeldra) yet avoid the specific burdens of the arbitration clause (dodging the payment of attorneys' fees to Aeldra) would be inequitable.

This reading is supported by the most relevant of the cases cited by the parties, where after deciding that a party was compelled to arbitrate under equitable estoppel, the courts looked to the language of the arbitration agreements in determining whether to award attorneys' fees. In *Allied Prof'ls Ins. Co. v. Miller*, No. CV-14-1671, 2015 WL 12747654 (C.D. Cal. Jan. 29, 2015), the court awarded attorneys' fees under equitable estoppel to a signatory who compelled arbitration against a non-signatory. The court considered the terms of the arbitration agreement in deciding whether attorneys' fees were permissible. *See Allied Prof'ls*, 2015 WL 12747654, at *10 ("Having found that the arbitration provision is enforceable as to [the non-signatory], the Court must now only determine whether the legal fees and costs in bringing the Motion to Compel are reasonable."). And in *Barreto v. JEC II, LLC*, No. 16-CV-9729, 2017 WL 3172827, at *5-6 (S.D.N.Y. July 25, 2017), the court held that under equitable estoppel, non-signatories could compel a signatory to arbitration, and awarded attorneys' fees to those non-signatories. In granting the motion for attorneys' fees, the court noted that "the plain text of the arbitration agreements provide for attorneys' fees here." *Barreto*, 2017 WL 3172827, at *6. According to these cases, if equitable estoppel allows a party to compel another to arbitrate its claims, then it also allows for the recovery of attorneys' fees per the terms of that arbitration agreement.

This is also consistent with the Ninth Circuit's decision in *Murphy*. EWB has alleged that there was substantially interdependent and concerted misconduct by the non-signatory (Aeldra) and another signatory (Shanker) and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement (the Employee Handbook). Aeldra is entitled to enforce the terms of the agreement that equitable estoppel already allows it to invoke.

Awarding Aeldra attorneys' fees is also consistent with an issue central to this case: Aeldra's potential liability is closely bound to Shanker's, who is its founder and chief executive officer. He purportedly used the information from EWB to create Aeldra. When seeking leave to amend its complaint and add Aeldra as a defendant, EWB noted that Shanker and Aeldra "are

8

closely related." *See* Dkt. No. 34 at 7:16.  The same holds true on the issue of attorneys' fees.

For these reasons, Aeldra also can recover attorneys' fees under the Employee Handbook.[4]

### III. REASONABLENESS OF FEES

An analysis of the reasonableness of attorneys' fees begins with the lodestar method—"multiplying a reasonable number of hours by a reasonable rate." *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020).  When considering the hourly rate, courts consider: (1) the "prevailing market rates in the relevant community;" (2) "the experience, skill, and reputation of the attorney:" (3) "the novelty and complexity of the issues;" (4) "the special skill and experience of counsel;" (5) "the quality of representation;" and (6) the results obtained." *Vargas*, 2017 WL 5991857, at *1 (citing *Gonzalez*, 729 F.3d at 1205-06; *Digital Reg of Texas, LLC v. Adobe Sys., Inc*, No. C-12-1971-CW, 2015 WL 1968388, at *3 (N.D. Cal. May 1, 2015)).

The Ninth Circuit has drawn sometimes-thin lines between what a court may or may not considering in determining the reasonableness of fees.  For example, although the court "may permissibly look to the hourly rates charged by comparable attorneys for similar work," it "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008).  Rather, the "difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys—must drive the district court's decision." *Id*.

The Ninth Circuit has also held that when considering a request for attorneys' fees, district courts may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Id*. at 1112.  A "significant reduction," however, "requires a more thorough explanation." *Vargas*, 949 F.3d at 1197.

The defendants seek $427,742.98 in attorneys' fees, along with $171,394.52 in fees for time spent on this motion.  *See* Mot. at 25:4, 18; Dkt. No. 198.  The result achieved warrants the

---

[4] Because Aeldra may recover attorneys' fees under equitable estoppel, I need not address the defendants' arguments that Aeldra was also entitled to fees under California Civil Code section 1717, although the outcome would have been the same.  I also need not reach the arguments that the defendants were entitled to fees under the DTSA.

United States District Court
Northern District of California

award of fees. But the amount sought, $599,137.50, is unreasonable given the lack of complexity of the issues.

In this case, once the defendants identified the arbitration provision in the Employee Handbook and recognized that Shanker signed the Handbook after he signed the earlier agreement, they were going to win the motion to compel arbitration. Dissolution of the preliminary injunction took more work, but EWB's concealment of the patents and the arbitration agreement did the heavy lifting.

Given that lack of complexity, the fees are too high. Throughout the litigation of the motions at issue, defendants were represented by two partners with over 20 years of experience, three associates, and one paralegal. *See* Dkt. No. 194-1 ¶ 4. While the higher-than-average billing rates of counsel are reasonable given the super-charged rates of large firms in the Bay Area that clients pay, with such high rates comes an expectation of greater efficiency in production. And while I do not question how defendants decided to staff their case, the more people who work on a case, the more duplication of effort and billed communication within the litigation team occurs. Plaintiff also identifies numerous excessive entries in its Opposition in a chart on page 21 and 22, and in the first paragraph on page 23, with which I agree. Given the lack of difficulty of the motion work, the amount requested is excessive.

The defendants have identified four primary areas of work for which they seek attorneys' fees: compelling arbitration ($168,072.78), dissolving the injunction ($212,393.20), preparing for and arguing at the hearing related to those motions ($47,277), and pursuing this motion for attorneys' fees ($171,394.52). *See* Dkt. No. 194-10 at 2. After reviewing the billing entries, I conclude that defendants seek excessive amounts in each area—some more than others. For compelling arbitration and dissolving the injunction, I will apply the 10% "haircut" allowed by *Moreno* in light of lack of complexity and the issues raised by plaintiff. For the hearing—which was held by Zoom so no travel was involved, and which lasted for seven minutes—I will allow a total of $15,000. Defendants' lawyers had recently completed their replies to the motions and were intimately familiar with the arguments that would need to be made. Allowing a partner more than 11 hours, or an associate more than 15 hours, to develop the argument would be excessive

10

and unreasonable. And I will reduce the amount sought for this fees motion to the amount billed by the senior associate and paralegal ($109,593.98), not because the work of the others was worthless but because in total the amount billed far exceeds the reasonableness of the fee requested. The excessive amount sought is clear on its face—it is higher than the amount sought for the substantive motion on which it is based (compelling arbitration). This reduction reflects the relative lack of complexity of defendants' motion in light of the plain language of the Employee Handbook and my finding that plaintiff had conceded that Aeldra could compel arbitration, as well as the other billing matters described in the previous paragraph.

Defendants' litigation team succeeded in compelling this matter to arbitration and dissolving the injunction. Whether they will have similar success in the arbitration itself is yet to be answered. They deserve a substantial award of attorneys' fees, but for the reasons described above the total amount sought is simply unreasonable. I have reduced the request by $132,124.10 to $467,013.40, which is reasonable in light of the work performed.

## CONCLUSION

For these reasons, the motion for attorneys' fees for Shanker and Aeldra is GRANTED. They are awarded $467,013.40.

**IT IS SO ORDERED.**

Dated: December 20, 2021

William H. Orrick
United States District Judge